**Official Form 1 (1/08)**

| United States Bankruptcy Court | Voluntary Petition |
|---|---|
| DISTRICT OF *SOUTH CAROLINA* | |

| Name of Debtor (if individual, enter Last, First, Middle): *INLET RETAIL ASSOCIATES, LLC, a South Carolina LLC* | Name of Joint Debtor (Spouse)(Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names): *NONE* | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all): *59-3801582* | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, and State): *10125 Hwy 17 Bypass* *Murrells Inlet SC*  ZIPCODE *29576* | Street Address of Joint Debtor (No. & Street, City, and State):  ZIPCODE |
| County of Residence or of the Principal Place of Business: *Horry* | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): *4199 Campus Drive, Ste 550* *Irvine CA*  ZIPCODE *92612* | Mailing Address of Joint Debtor (if different from street address):  ZIPCODE |
| Location of Principal Assets of Business Debtor (if different from street address above): *10125 Hwy 17 Bypass*  ZIPCODE *29576* | |

**Type of Debtor** (Form of organization)
(Check **one** box.)
- [ ] Individual (includes Joint Debtors) *See Exhibit D on page 2 of this form.*
- [x] Corporation (includes LLC and LLP)
- [ ] Partnership
- [ ] Other (if debtor is not one of the above entities, check this box and state type of entity below

**Nature of Business**
(Check **one** box.)
- [ ] Health Care Business
- [x] Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)
- [ ] Railroad
- [ ] Stockbroker
- [ ] Commodity Broker
- [ ] Clearing Bank
- [ ] Other

**Tax-Exempt Entity**
(Check box, if applicable.)
- [ ] Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

**Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box)
- [ ] Chapter 7
- [ ] Chapter 9
- [x] Chapter 11
- [ ] Chapter 12
- [ ] Chapter 13
- [ ] Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- [ ] Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Nature of Debts** (Check one box)
- [ ] Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose"
- [x] Debts are primarily business debts.

**Chapter 11 Debtors:**
Check one box:
- [ ] Debtor is a small business as defined in 11 U.S.C. § 101(51D).
- [x] Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
- [x] Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Check all applicable boxes:
- [ ] A plan is being filed with this petition
- [ ] Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

**Filing Fee** (Check one box)
- [x] Full Filing Fee attached
- [ ] Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- [ ] Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Offi cial Form 3B.

**Statistical/Administrative Information**
- [x] Debtor estimates that funds will be available for distribution to unsecured creditors.
- [ ] Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|
| [ ] | [ ] | [x] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |

Estimated Assets
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| [ ] | [ ] | [ ] | [ ] | [ ] | [x] | [ ] | [ ] | [ ] | [ ] |

Estimated Liabilities
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| [ ] | [ ] | [ ] | [ ] | [ ] | [x] | [ ] | [ ] | [ ] | [ ] |

Official Form 1 (1/08)                                                                                            FORM B1, Page   2

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**INLET RETAIL ASSOCIATES, LLC,**<br>**a South Carolina LLC** |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years**  (If more than two, attach additional sheet) |||
|---|---|---|
| Location Where Filed:<br>**NONE** | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor**  (If more than one, attach additional sheet) |||
|---|---|---|
| Name of Debtor:<br>**NONE** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

<table>
<tr><td align="center"><b>Exhibit A</b><br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under Chapter 11)</td><td align="center"><b>Exhibit B</b><br>(To be completed if debtor is an individual whose debts are primarily consumer debts)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. §342(b).</td></tr>
<tr><td>☒ Exhibit A is attached and made a part of this petition</td><td><b>X</b> _____  *3/16/2009*<br>Signature of Attorney for Debtor(s)                Date</td></tr>
</table>

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and exhibit C is attached and made a part of this petition.
☒ No

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D completed and signed by the debtor is attached and made part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box)

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

Official Form 1 (1/08)                                                                                      FORM B1, Page  3

| Voluntary Petition | Name of Debtor(s): |
| (This page must be completed and filed in every case) | *INLET RETAIL ASSOCIATES, LLC,* |
| | *a South Carolina LLC* |

## Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b)

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

**X** _____
Signature of Debtor

**X** _____
Signature of Joint Debtor

_____
Telephone Number (if not represented by attorney)

_____
Date

### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
(Signature of Foreign Representative)

_____
(Printed name of Foreign Representative)

3/16/2009
(Date)

### Signature of Attorney*

**X** */s/ Ivan N. Nossokoff*
Signature of Attorney for Debtor(s)

*Ivan N. Nossokoff 2556*
Printed Name of Attorney for Debtor(s)

*Ivan N. Nossokoff, LLC*
Firm Name

*1470 Tobias Gadson Blvd*
Address

*Suite 107*

*Charleston SC  29407*

*843-571-5442*
Telephone Number

*3/16/2009*
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.

**X** */s/ Nathan P Fishkin*
Signature of Authorized Individual

*Nathan P Fishkin*
Printed Name of Authorized Individual

*Manager*
Title of Authorized Individual

*3/16/2009*
Date

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

The above named debtor, or attorney for the debtor if applicable, does hereby certify that the master mailing list of creditors submitted either on computer diskette or by a typed hardcopy in a scannable format has been compared to, and contains identical information to, the debtor's schedules, statements and lists pursuant to SC LBR 1007-1.

Master mailing list of creditors submitted via:

(a) _____ computer diskette

(b) ___X___ scannable hard copy ___10___ (number of sheets submitted)

Date: _3/16/2009_____

Signature _/s/ Ivan N. Nossokoff_____
*Ivan N. Nossokoff, Attorney for Debtor*
*1470 Tobias Gadson Blvd*
*Suite 107*
*Charleston, SC  29407*
*843-571-5442*
*District Court I.D. Number: 2556*

BAKER ROOFING COMPANY
517 MERCURY ST
RALEIGH  NC  27603


CAROLINA COOLING & PLUMBING
C/O SCOTT B UMSTEAD PA
4226 MAYFAIR ST  STE 100
MYRTLE BEACH  SC  29577


CUPKOVIC ARCHITECTURE LLC
1500 HAMILTON AVE
PO BOX 1509
CLEVELAND  OH  44114


MB KAHN CONSTRUCTION CO   INC
PO BOX 1745
CONWAY   SC  29526


PARKER POE ADAMS & BERNSTEIN
PO BOX 1509
COLUMBIA  SC  29202


PRECISION WALLS INC
C/O ROBINSON MCFADDEN MOORE
PO BOX 944
COLUMBIA  SC  29292


RAIT PARTNERSHIP  LP
ATTN  MIKE BEATTY
2929 ARCH ST  17TH FLOOR
PHILADELPHIA  PA  19104


THOMPSON & HENRY PA
PO BOX 129
MYRTLE BEACH  SC  29578


THOMPSON & HENRY PA
PO BOX 1290
MYRTLE BEACH  SC  29578

VRATSINAS CONSTRUCTION COMPANY
1000 ABERNATHY RD NE
GEORGETOWN   SC   29442


ANN M ARCHER
C/O WILLIAM A BRYAN
PO BOX 14860
MYRTLE BEACH   SC   29587


CHARLIE JAMES SING
134 NORTH ALABAMA AVE
DELAND   FL   32720


CLAIRE'S BOUTIQUES   INC
ATT RENT DEPT
3 SOUTHWEST 129TH AVE
PEMBROKE PINES   FL   33027


CYBERGRAPH ADVERTISING
610 N PERSON ST
RALEIGH   NC   27604


DOROTHY MASON JORDAN
558 S CREEKSIDE DR
MURRELLS INLET   SC   29576


DOROTHY MASON JORDAN
INDIV   TRUSTEE   JT JORDANTRUST
1405 LAUREL ST
CONWAY   SC   29526


ELLIS LESEMANN   ESQ
PARKER POE ADAMS & BERNSTEIN L
200 MEETING ST   STE 301
CHARLESTON   SC   29401


ESTATE MANAGEMENT SERVICES INC
305 INDIGO DRI
BRUNSWICK   GA   31525

```
GEORGETOWN COMMUNICATIONS
615 FRONT STREET
GEORGETOWN  SC  29442


INLET PRINTING CO
POB 369
MURRELLS INLET  SC  29576


J JACKSON THOMAS ESQ
THOMPSON & HENRY PA
PO BOX 1290
MYRTLE BEACH  SC  29578


JEFFCOAT PIKE NAPPIER LLC
2024 CORPORATE CENTRE DRIVE
STE 206
MYRTLE BEACH  SC  29578


LADIES CHOICE FITNESS CNTR
606 OLD TROLLEY RD  STE 10
SUMMERVILLE  SC  29485


LINDA DREYFUS RON DREYFUS
C/O MCCUTCHEN MUMFORD VAUGHT
4610 OLEANDER DR STE 203
MYRTLE BEACH  SC  29577


MALL MEDIA
PMB 4416
250 H ST
BLAINE  WA  98230


MEAGMEL WISHING WELLS
4499 SOUTHWOOD PL
MONTCLAIR  VA  22025


STEVEN T JORDAN
C/O J JACKSON THOMAS ESQ
PO BOX 1290
MYRTLE BEACH  SC  29578
```

```
THE LIMITED  INC
THREE LIMITED PARKWAY
P O  BOX 16000
COLUMBUS  OH  43216


THEISEN VENDING CO
2335 NEVADA AVE NORTH
GOLDEN VALLEY  MN  55427


BATH & BODY WORKS  INC
LIMITED REAL ESTATE SERVICES
P O  BOX 182799
COLUMBUS  OH  43218


BELKS STORE JACKSONVILLE NC
2801 WEST TYVOLA RD
CHARLOTTE  NC  28217-4500


BON WORTH INC
40 FRANCIS RD
HENDERSONVILLE  NC  28792


BOOKS-A-MILLION INC
ATTN  TAMMY MOUNTAIN
402 INDUSTRIAL LANE
BIRMINGHAM  AL  35211


CLAIRE'S BOUTIQUES  INC
ATT RENT DEPT
3 SOUTHWEST 129TH AVE
HOLLYWOOD  FL  33027


COLLECT THIS & RACEWAY LLC
841 KINGS RIVER RD
PAWLEYS ISLAND  SC  29585


CORRADO'S PIZZA SHOPPES  INC
PO BOX 487
BROOMALL  PA  19008
```

```
DAVID GILL ARTWORK
704 8TH AVE NORTH
MYRTLE BEACH  SC  29578


DOLLAR TREE STORES INC
500 VOLVO PARKWAY
CHESAPEAKE  VA  23320


FIRST VENDING
1869 BEST DR
WALLED LAKE  MI  48390


HALLMARK SPECIALTY RETAIL GRP
JAYDEEP INC/JAY'S HALLMARK
21520 G1 YORBALINDA BLVD #555
YORBA LINDA  CA  92887


JC PENNEY COMPANY INC
ATTN  REAL ESTATE DEPT
6501 LEGACY DR
PLANO  TX  75024


JLC LEASING INC
6105 YUCCA DR
DOUGLASVILLE  GA  30135


K MART SEARS HOLDING CO
3333 BEVERLY RD
HOFFMAN ESTATES  IL  60179


LADIES CHOICE FITNESS CNTR
10055 DORCHESTER ROAD
SUMMERVILLE  SC  29485


MEAGMEL WISHING WELLS
4499 SOUTHWOOD PL
DUMFRIES  VA  22025


NOBLE JEWELERS
POB 8775
MYRTLE BEACH  SC  29578
```

PEPSI COLA BOTTLING
2380 HIGHWAY 501
CONWAY   SC   29528


PROTOCOL LLC
2110 CHESHIRE WAY   STE A
GREENSBORO   NC   27405


RACK ROOM SHOES
ATTN LEASE ADMIN
8310 TECHNOLOGY DR
CHARLOTTE   NC   28262


REGAL CINEMAS   INC
INLET SQUARE CINEMAS
7132 REGAL LN
KNOXVILLE   TN   37918


REGIS CORP (MASTERCUTS)
ATTN   MALL REAL ESTATE OFFICER
7201 METRO BOULEVARD
MINNEAPOLIS   MN   55439


SMARTLITE COMPANY
1700 MAIN STREET NE
PALM BAY   FL   32905


STEIN MART   INC
1200 RIVERPLACE BOULEVARD
JACKSONVILLE   FL   32207


SUPER NAILS
3685 KINGSLEY DR
MYRTLE BEACH   SC   29588


TADS LAND & DEVELOPMENT CO
GERALD A TADLOCK
RT 1 BOX 23A
MURRELLS INLET   SC   29576

```
THE CATO CORP
8100 DENMARK ROAD
CHARLOTTE   NC  28273-5975


THEISEN VENDING CO
2335 NEVADA AVE NORTH
MINNEAPOLIS  MN  55427


URBAN RETAIL PROPERTIES INC
900 NORTH MICHIGAN AVENUE
STE 900
CHICAGO   IL  60611


WEST C STREET HOLDINGS LLC
JOHN GRIMES  ESQ
1112 HIGHMARKET ST
GEORGETOWN   SC  29440
```

DDC ENGINEERS INC
1298 PROFESSIONAL DR
MYRTLE BEACH  SC  29577


GENERAL LANDSCAPE MAINTENANCE
119 WINDING CREEK DR
PAWLEYS ISLAND  SC  29585


HARVEST RECOVERY SERVICES
FOR ECK SUPPLY CO
794 PENLLYN PIKE #130
BLUE BELL  PA  19422


IPC INTERNATIONAL CORP
2111 WAUKEGAN RD
DEERFIELD  IL  60015


JONES LANG LASALLE
PO BOX 95661
CHICAGO  IL  60694


NEXT MEDIA RADIO OPERATIONS
PO BOX 643579
CINCINNATI  OH  45264


SERVICE MANAGEMENT SYSTEMS
POB 643768
CINCINNATI  OH  45264


SITESTUFF INC
POB 671033
BLDG D  STE 550
DALLAS  TX  75267


SUN PUBLISHING/SUN NEWS
914 FRONTAGE RD
MYRTLE BEACH  SC  29577


THORSON BAKER & ASSOCIATES
3030 WEST STREETSBORO ROAD
RICHFIELD  OH  44286

```
VOSS COOK & THEL LLP
895 DOVE STREET   STE 450
NEWPORT BEACH   CA   92660


WE SWEEP
PO BOX 919
PAWLEYS ISLAND   SC   29585
```

CHARLES E FANCHER  JR
4199 CAMPUS DRIVE  STE 550
IRVINE  CA  92612


NATHAN P FISHKIN
4663 KENMORE DRIVE
WASHINGTON  DC  20007


WESTMINSTER INLET  LLC
9665 WILSHIRE BLVD
SUITE M-10
BEVERLY HILLS  CA  90212

B4 (Official Form 4) (12/07)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

In re   *INLET RETAIL ASSOCIATES, LLC*                                        Case No.
    *a South Carolina LLC*                                                 Chapter   *11*

_____ ,
                   Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Name of Creditor and Complete Mailing Address Including Zip Code | Name, Telephone Number and Complete Mailing Address, Including Zip Code, of Employee, Agent, or Department of Creditor Familiar with Claim Who May Be Contacted | Nature of Claim (Trade Debt, Bank Loan, Government Contract, etc.) | Indicate if Claim is Contingent, Unliquidated, Disputed, or Subject to Setoff | Amount of Claim (If Secured Also State Value of Security) |
|---|---|---|---|---|
| *1*<br>*RAIT PARTNERSHIP, LP*<br>*Attn: Mike Beatty*<br>*2929 Arch St, 17th Floor*<br>*Philadelphia PA  19104* | Phone: *215-243-9078*<br>*RAIT PARTNERSHIP, LP*<br>*Attn: Mike Beatty*<br>*2929 Arch St, 17th Floor*<br>*Philadelphia PA  19104* | *Mortgage, UCCs*<br><br>Value:<br>Net Unsecured: | | $ 18,667,377.00<br>$ 280,991.40<br>$ 18,386,385.60 |
| *2*<br>Vratsinas Construction Company<br>*1000 Abernathy Rd NE*<br>*Georgetown SC  29442* | Phone: *770-225-1900*<br>Vratsinas Construction Company<br>*1000 Abernathy Rd NE*<br>*Georgetown SC  29442* | *Mechanics Lien f/Jan 4 2008*<br><br>*Value:*<br>Net Unsecured:<br>*Prior Liens Exist* | C<br>U<br>D | $ 4,590,441.00<br>$ 0.00<br>$ 4,590,441.00 |
| *3*<br>*Baker Roofing Company*<br>*517 Mercury St*<br>*Raleigh NC  27603* | Phone: *919-828-2975*<br>*Thompson & Henry PA*<br>*PO Box 129*<br>*Myrtle Beach SC  29578* | *Mechanics Lien f/Apr 15-17 '08*<br><br>*Value:*<br>Net Unsecured:<br>*Prior Liens Exist* | C<br>U<br>D | $ 554,183.70<br>$ 0.00<br>$ 554,183.70 |
| *4*<br>*Precision Walls Inc.*<br>*c/o Robinson McFadden Moore*<br>*PO Box 944*<br>*Columbia SC  29292* | Phone: *919-832-0380*<br>*Precision Walls Inc.*<br>*c/o Robinson McFadden Moore*<br>*PO Box 944*<br>*Columbia SC  29292* | *Mechanics Lien f/Dec 14 2007*<br><br>*Value:*<br>Net Unsecured:<br>*Prior Liens Exist* | C<br>U | $ 189,053.00<br>$ 0.00<br>$ 189,053.00 |
| *5*<br>*Jones Lang LaSalle*<br>*PO Box 95661*<br>*Chicago IL  60694* | Phone: *312-782-5800*<br>*Jones Lang LaSalle*<br>*PO Box 95661*<br>*Chicago IL  60694* | *Mgmt Fees, Lease Commissions* | | $ 185,612.85 |

Debtor(s)

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

| Name of Creditor and Complete Mailing Address Including Zip Code | Name, Telephone Number and Complete Mailing Address, Including Zip Code, of Employee, Agent, or Department of Creditor Familiar with Claim Who May Be Contacted | Nature of Claim (Trade Debt, Bank Loan, Government Contract, etc.) | Indicate if Claim is Contingent, Unliquidated, Disputed, or Subject to Setoff | Amount of Claim (If Secured Also State Value of Security) |
|---|---|---|---|---|
| 6<br>Service Management Systems<br>POB 643768<br>Cincinnati OH  45264 | Phone: 615-399-1839<br>Service Management Systems<br>POB 643768<br>Cincinnati OH  45264 | Housekeeping Services | | $ 98,950.00 |
| 7<br>Cupkovic Architecture LLC<br>1500 Hamilton Ave<br>PO Box 1509<br>Cleveland OH  44114 | Phone: 216-802-0047<br>Cupkovic Architecture LLC<br>1500 Hamilton Ave<br>PO Box 1509<br>Cleveland OH  44114 | Mechanics Lien f/Mar 12 2008<br>*Value:<br>Net Unsecured:<br>*Prior Liens Exist | C<br>U | $ 84,189.48<br>$ 0.00<br>$ 84,189.48 |
| 8<br>IPC International Corp<br>2111 Waukegan Rd<br>Deerfield IL  60015 | Phone: 847-444-2000<br>IPC International Corp<br>2111 Waukegan Rd<br>Deerfield IL  60015 | Security Services | | $ 78,627.53 |
| 9<br>Voss Cook & Thel LLP<br>895 Dove Street, Ste 450<br>Newport Beach CA  92660 | Phone: 949-435-0225<br>Voss Cook & Thel LLP<br>895 Dove Street, Ste 450<br>Newport Beach CA  92660 | | | $ 49,824.01 |
| 10<br>Thorson Baker & Associates<br>3030 West Streetsboro Road<br>Richfield OH  44286 | Phone: 330-659-6688<br>Thorson Baker & Associates<br>3030 West Streetsboro Road<br>Richfield OH  44286 | | | $ 30,814.75 |
| 11<br>MB Kahn Construction Co., Inc.<br>PO Box 1745<br>Conway SC  29526 | Phone: 843-234-6490<br>MB Kahn Construction Co., Inc.<br>PO Box 1745<br>Conway SC  29526 | Mechanics Lien f/Jun 4 2008<br>*Value:<br>Net Unsecured:<br>*Prior Liens Exist | C<br>U | $ 25,235.50<br>$ 0.00<br>$ 25,235.50 |
| 12<br>General Landscape Maintenance<br>119 Winding Creek Dr<br>Pawleys Island SC  29585 | Phone: 843-222-9597<br>General Landscape Maintenance<br>119 Winding Creek Dr<br>Pawleys Island SC  29585 | | | $ 18,750.00 |
| 13<br>DDC Engineers Inc<br>1298 Professional Dr<br>Myrtle Beach SC  29577 | Phone: 843-692-3200<br>DDC Engineers Inc<br>1298 Professional Dr<br>Myrtle Beach SC  29577 | | | $ 15,976.25 |

Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

| Name of Creditor and Complete Mailing Address Including Zip Code | Name, Telephone Number and Complete Mailing Address, Including Zip Code, of Employee, Agent, or Department of Creditor Familiar with Claim Who May Be Contacted | Nature of Claim (Trade Debt, Bank Loan, Government Contract, etc.) | Indicate if Claim is Contingent, Unliquidated, Disputed, or Subject to Setoff | Amount of Claim (If Secured Also State Value of Security) |
|---|---|---|---|---|
| 14<br>Sun Publishing/Sun News<br>914 Frontage Rd<br>Myrtle Beach SC  29577 | Phone: 800-568-1800<br>Sun Publishing/Sun News<br>914 Frontage Rd<br>Myrtle Beach SC  29577 | | | $ 7,458.33 |
| 15<br>Nathan P Fishkin<br>4663 Kenmore Drive<br>Washington DC  20007 | Phone:<br>Nathan P Fishkin<br>4663 Kenmore Drive<br>Washington DC  20007 | Unreimbursed expenses | | $ 6,957.72 |
| 16<br>Charles E Fancher, Jr.<br>4199 Campus Drive, Ste 550<br>Irvine CA  92612 | Phone:<br>Charles E Fancher, Jr.<br>4199 Campus Drive, Ste 550<br>Irvine CA  92612 | Unreimbursed expenses | | $ 4,234.44 |
| 17<br>Harvest Recovery Services<br>for ECK Supply Co<br>794 Penllyn Pike #130<br>Blue Bell PA  19422 | Phone: 267-419-1950<br>Harvest Recovery Services<br>for ECK Supply Co<br>794 Penllyn Pike #130<br>Blue Bell PA  19422 | | | $ 4,041.53 |
| 18<br>SiteStuff Inc<br>POB 671033<br>Bldg D, Ste 550<br>Dallas TX  75267 | Phone: 800-720-1419<br>SiteStuff Inc<br>POB 671033<br>Bldg D, Ste 550<br>Dallas TX  75267 | | | $ 3,115.45 |
| 19<br>We Sweep<br>PO Box 919<br>Pawleys Island SC  29585 | Phone: 843-237-5080<br>We Sweep<br>PO Box 919<br>Pawleys Island SC  29585 | Parking Lot Sweeping | | $ 2,950.00 |
| 20<br>Next Media Radio Operations<br>PO Box 643579<br>Cincinnati OH  45264 | Phone: 843-448-1041<br>Next Media Radio Operations<br>PO Box 643579<br>Cincinnati OH  45264 | | | $ 1,881.00 |

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A CORPORATION

I, *Nathan P Fishkin* , *Manager* of the *Corporation* named as debtor in this case, declare under penalty of perjury that I have read the foregoing List of Creditors Holding Twenty Largest Unsecured Claims and that they are true and correct to the best of my knowledge, information and belief.


Date: *3/16/2009*          Signature */s/ Nathan P Fishkin*

                    Name: *Nathan P Fishkin*

                    Title: *Manager*

**B6 Declaration (Official Form 6 - Declaration) (12/07)**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

In re *INLET RETAIL ASSOCIATES, LLC, a South Carolina LLC*

Case No.

Chapter  *11*

_____ / Debtor

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's  liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data"if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | Attached (Yes/No) | No. of Sheets | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A-Real Property | *Yes* | *1* | $         *0.00* | | |
| B-Personal Property | *Yes* | *3* | $    *280,991.40* | | |
| C-Property Claimed as     Exempt | *No* | *0* | | | |
| D-Creditors Holding Secured     Claims | *Yes* | *3* | | $  *24,110,479.68* | |
| E-Creditors Holding     Unsecured Priority Claims     (Total of Claims on Schedule E) | *Yes* | *1* | | $         *0.00* | |
| F-Creditors Holding     Unsecured Nonpriority Claims | *Yes* | *9* | | $    *773,927.56* | |
| G-Executory Contracts and     Unexpired Leases | *Yes* | *6* | | | |
| H-Codebtors | *Yes* | *1* | | | |
| I-Current Income of Individual     Debtor(s) | *No* | *0* | | | $      *0.00* |
| J-Current Expenditures of     Individual Debtor(s) | *No* | *0* | | | $      *0.00* |
| TOTAL | | *24* | $    *280,991.40* | $  *24,884,407.24* | |

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

In re *INLET RETAIL ASSOCIATES, LLC, a South Carolina LLC*

Case No.

Chapter  *11*

_____ / Debtor

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C. § 101(8), filing a case under chapter 7, 11, or 13, you must report all information requested below.

☒ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

This information is for statistical purposes only under 28 U.S.C. § 159.

Summarize the following types of liabilities, as reported in the Schedules, and total them.

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | $ |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | $ |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | $ |
| Student Loan Obligations (from Schedule F) | $ |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | $ |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | $ |
| TOTAL | $ |

State the following:

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | $ |
| Average Expenses (from Schedule J, Line 18) | $ |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20) | $ |

State the following:

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | $ |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | $ | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | $ |
| 4. Total from Schedule F | | $ |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | $ |

**B6 Declaration (Official Form 6 - Declaration) (12/07)**

In re _INLET RETAIL ASSOCIATES, LLC, a South Carolina LLC_                    Case No. _____
                                    Debtor                                                        (if known)

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

## DECLARATION UNDER PENALTY ON BEHALF OF A CORPORATION

I, _Nathan P Fishkin_____, _Manager_____ of the _Corporation_____
named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of ___25___ sheets,
and that they are true and correct to the best of my knowledge, information, and belief.


Date: _3/16/2009_____          Signature _/s/ Nathan P Fishkin_____
                                        Name: _Nathan P Fishkin_
                                        Title: _Manager_


[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]


Penalty for making a false statement or concealing property: Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

FORM B6A (Official Form 6A) (12/07)

In re _INLET RETAIL ASSOCIATES, LLC_____ ,    Case No._____
            Debtor(s)                                                                                      (if known)

# SCHEDULE A-REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G-Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband--H Wife--W Joint--J Community--C | Current Value of Debtor's Interest, in Property Without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| *Ground Lease-Inlet Square Mall-with improvements, c. 433,129 sqft* <br> *-See attached* <br> *-Reference TMS #s 1940004013, 1940004019, 1940004020, 1940004049* | | | *TBD* | *$ 0.00* |
| *Ground Lease for Signs* <br> *-See attached* <br> *-Reference TMS # 1940004060 (No value, info and belief, if detached from Ground Lease)* | | | *TBD* | *$ 0.00* |
| No continuation sheets attached | **TOTAL $** <br> **(Report also on Summary of Schedules.)** | | *0.00* | |

## EXHIBIT "A"

### Ground Lease

"Ground Lease." The leasehold estate created by that certain Ground Lease entered into by and between Tad's Land and Development Company, Inc., a South Carolina corporation, and Gerald A. Tadlock, collectively as "Landlord" and Coastal Limited Partnership ("Coastal") as "Tenant" dated January 21, 1988, a Memorandum of which was recorded in R.M.C. Office for Horry County, South Carolina in Deed Book 1193, at page 250 on January 21, 1988, and amended by First Amended Memorandum of Lease dated November 4, 1988 entered into by and between Tad's Land and Development Company, Inc., a South Carolina Corporation, and Gerald A. Tadlock, collectively referred to as "Landlord" and Coastal, as "Tenant" and recorded in the R.M.C. Office for Horry County, South Carolina in Deed Book 1266, at page 695 on November 18, 1988, and further amended by Estoppel, Modification of Ground Lease and Clarification of Landlord's Non-Disturbance Agreement entered into by and between Charlie Sing and Charlie James Sing, Tad's Land and Development Company, Inc., a South Carolina corporation, and Gerald A. Tadlock, and Coastal, dated April 27, 1990, and recorded in said R.M.C. Office in Deed Book 1393, at page 528 (the "Sing Estoppel"), as further amended by Estoppel Certificate and Second Clarification of Landlord's Non-Disturbance Agreement dated on or about the date hereof (the "Second Sing Estoppel"), and also further amended by Estoppel and Clarification of Landlord's Non-Disturbance Agreement entered into by and between Jim T. Jordan, Dorothy Mason Jordan, Marian J. Thomson, Connie J. Koloditch, and Steven T. Jordan, Tad's Land and Development Company, Inc., a South Carolina corporation, and Gerald A. Tadlock, and Coastal dated April 26, 1990, and recorded in said R.M.C. Office in Deed Book 1393, at page 512 (the "Jordan Estoppel") as further amended by Estoppel Certificate and Second Clarification of Landlord's Non-Disturbance Agreement dated as of December 1995 (the "Second Jordan Estoppel").

"Sing Lease." Said Ground Lease is a sublease of a portion of the leasehold estate created by that certain Lease Agreement made and entered into by and between Charlie Sing, Carrie W. Sing, and Charlie James Sing, as "Lessor" and Kenneth D. Anderson, as "Lessee" dated July 1, 1983, and recorded in the Office of the Clerk of Court for Horry County, South Carolina in Deed Book 815 at page 249 on August 23, 1983 (hereinafter referred to as the "Sing Lease") and assigned by Assignment of Leases entered into by and between Kenneth D. Anderson as "Assignor" and Gerald A. Tadlock, as "Assignee" dated January 15, 1987 and recorded in the Office of the Clerk of the Court for Horry County, South Carolina in Deed Book 1109 at page 738 on January 16, 1987, said Sing Lease amended by Amendment of Lease Agreement dated September 15, 1987 and recorded in the Office of the Clerk of the Court for Horry County, South Carolina in Deed Book 1173 at page 341 on October 30, 1987, said Sing Lease being modified by Landlord's Non-Disturbance Agreement entered into by and between Charlie Sing and Charlie James Sing as "Fee Owner," Gerald A. Tadlock as "Groundlessee" and Coastal, as "Sublessee" dated September 15, 1987 and recorded in the Office of the Clerk of the Court for Horry County, South Carolina n Deed Book 1193 at page 296 on January 21, 1988, said Sing Lease being further modified by the Sing Estoppel and the Second Sing Estoppel.

"Jordan Lease.' Said Ground Lease is a sublease of a portion of the leasehold estate created by that certain Lease Agreement made and entered into by and between Jim T. Jordan, Dorothy Mason Jordon, Marian J. Thomson, Connie J. Koloditch and Steven T. Jordan as "Lessor" and Tad's Land and Development Company, Inc., as "Lessee" dated January 27, 1983 and recorded in the Office of the Clerk of the Court for Horry County, South Carolina in Deed Book 793 at page 776, (hereinafter referred to as the "Jordan Lease") as amended by First Amendment to Lease Agreement dated July 8, 1987 and recorded in the Office of the Clerk of the Court for Horry County, South Carolina in Deed Book 1153 at page 201 on August 6, 1987, said Jordan Lease being amended by Landlord's Non-Disturbance Agreement entered into by and between Jim T. Jordan, et al. as "Fee Owner," Tad's Land and Development Company, Inc., as "Groundlessee," and Coastal, as "Sublessee" dated September 18, 1987 and recorded in Office of the Clerk of the Court for Horry County, South Carolina in Deed Book 1193 at page 286 on January 21, 1988, said Jordan Lease being further amended by Jordan Estoppel and the Second Jordan Estoppel.

A-2

## LEASE AGREEMENT

TAD'S LAND AND DEVELOPMENT COMPANY, INC.

TO

SC FUND VI PROPERTIES L. P.

THIS LEASE is entered into by and between **TAD'S LAND AND DEVELOPMENT COMPANY, INC.**, a South Carolina Corporation ("LANDLORD") and SC FUND VI PROPERTIES L.P., ("TENANT").

### ARTICLE I - GRANT AND TERM

1.1 **LEASED PREMISES.** In consideration of the rents, covenants, and agreements herein set forth, **LANDLORD** hereby leases to **TENANT** and **TENANT** hereby rents from **LANDLORD** that certain lot of land containing 0.08 acres, and being delineated as parcel "E-1" on **EXHIBIT A**, attached hereto (the "Premises"), for the specific purpose of operating and maintaining an existing Pylon Sign, for advertisement and identification for the Inlet Square Mall, and its tenants; together with all easements, rights and privileges appurtenant for that specific purpose; **RESERVING, HOWEVER**, to the **LANDLORD**, to benefit and be appurtenant to the adjoining parcel E as shown on Exhibit A, an exclusive parking easement, with non-exclusive rights of access, ingress and egress over and across the premises for the benefit of the patrons, customers and invitees of the **TENANT** of parcel E and a non-exclusive easement over and across the Premises for utility lines and other facilities as necessary to serve parcel E.

1.2 **QUIET ENJOYMENT.** **TENANT** shall have the right of quiet enjoyment of the Premises subject to the terms, conditions, and covenants of this Lease.

1.3 **TERM.** The term of this Lease shall be deemed to have commenced on November 1, 1998, hereinafter (the "Commencement Date") and shall end on midnight, July 14, 2047.

### ARTICLE II - RENT

2.1 **BASE RENT.** During the first five (5) years of this Lease, (from the "Commencement Date"), **TENANT** agrees to pay to **LANDLORD** as "Base Rent" for the Premises, Annual Base Rent in the amount of **THREE THOUSAND ($3,000.00) DOLLARS** per year, and thereafter, beginning five (5) years from the Commencement Date and on the same

date each and every five (5) years thereafter (the "Adjustment Dates") the annual rent shall be increased by **Ten (10%) percent** over and above the amount of the amount of the annual rent for the preceding five year period.

2.2 **ADDITIONAL RENT.** **TENANT** shall pay as "Additional Rent" (a) all Real Estate Taxes directly to the Office of the Horry County Treasurer and (b) all premiums directly to **TENANT's** insurance agent for insurance, including liability, fire and casualty, flood and vandalism and malicious mischief for the Premises. The term "Additional Rent" shall also include all other sums and charges required to be paid by **TENANT** pursuant to the terms of this Lease. **LANDLORD** agrees to promptly forward to the **TENANT** all tax notices received by the **LANDLORD** which pertain to the Premises.

2.3 **OTHER CHARGES.** **TENANT** shall pay all sales, excise, rental and use taxes imposed by law on the Base Rent, Additional Rent and all other rental charges, costs, exactions and expenses provided for in this Lease, whether payable in money or otherwise, as well as all sales, use or excise taxes due as a result of any work performed by **TENANT** on the Premises.

2.5 **PAYMENT OF RENT.** The Annual Base Rent shall be paid in monthly installments in the initial amount of $250.00, subject to adjustment thereafter in accordance with Section 2.1, which shall be due on the first day of each month. Any and all rent payments as provided herein shall be mailed or delivered to the attention of the **LANDLORD** at 863 Bellamy Drive, Murrells Inlet, SC 29576.

2.6 **LATE PAYMENT PENALTY.** Any and all rent payments as provided herein shall be paid no later than ten (10) days of the due date of such payment and any payments not received by the **LANDLORD** within ten (10) days of its due date shall be subject to, and include, a late penalty equal to five (5%) percent of the amount of the rent payment.

### ARTICLE III - UTILITIES

**TENANT** shall contract in its own name for all electric and other utilities furnished to the Premises. The Premises shall be separately metered for such services.

### ARTICLE IV - CONDUCT AND ACTIVITIES BY TENANT

4.1 **USE OF LEASED PREMISES.** **TENANT** shall only use the premises for the purposes specified in ARTICLE 1.1, above and shall

keep the Premises neat, clean, sanitary and reasonably free from dirt, rubbish, and pests at all times. **TENANT** additionally covenants not to perform any act on or about the Premises prohibited by law nor omit to perform any act required by law in connection with the use or operation of the Premises; nor to use or maintain the Premises in such a manner as to constitute an actionable nuisance to **LANDLORD** or any third party; and not to commit or permit waste of the Premises.

**TENANT** shall comply with and observe all easements and all restrictive covenants and conditions that may affect or apply to the Premises, or any portion thereof, from time to time; provided such easements, covenants and conditions do not conflict with or abridge **TENANT's** rights under this Lease or unreasonably interfere with **TENANT's** operations.

4.2 **GOVERNMENTAL REGULATION.** **TENANT**, shall, at its expense, substantially comply with all Federal, State and local laws, ordinances, orders, rules and regulations pertaining to the operation of the Premises for its Permitted Use, now or hereafter in force.

### ARTICLE V - SECURITY INTEREST AND LIENS

5.1 **LIENS.** **TENANT** shall have no power to subject **LANDLORD'S** interest in the Premises to mechanic's or materialmen's liens of any kind nor shall **LANDLORD** have the power to subject **TENANT'S** interest in the Premises to any lien of any kind. All persons performing work, labor or supplying materials at the Premises on behalf of **TENANT** or **LANDLORD** shall look solely to the interest of such party and not to that of the other party for any legal fees and court costs. **TENANT** and **LANDLORD** shall have the right, but not the obligation to discharge or transfer to bond any lien filed against the Premises by the other party's contractor that has not been discharged or transferred to bond within thirty (30) days from the filing thereof and any reasonable cost or expense, including reasonable attorney's fees, incurred by **TENANT** or **LANDLORD** as a result thereof shall immediately be due and payable.

### ARTICLE VI- OWNERSHIP OF IMPROVEMENTS

6.1 **OWNERSHIP OF IMPROVEMENTS.** During the term of this Lease, **TENANT** shall be considered for all purposes to be the owner of the improvements on the Premises by **TENANT**, and **TENANT** alone shall be entitled to take tax deductions on its federal and state income tax returns for the depreciation and other expenses related

to same. Upon termination of this Lease, the ownership of all improvements on the Premises by **TENANT** shall belong to **LANDLORD**.

### ARTICLE VII - INSURANCE AND INDEMNITY

7.1 **GENERAL LIABILITY INSURANCE.** **TENANT** will keep in force at its own expense, throughout the term of this Lease, general commercial liability insurance with respect to the Premises and any construction performed by **TENANT** in such companies and in such form as are reasonably acceptable to **LANDLORD**, coverage of not less than One Million and No/100 Dollars ($1,000,000.00) per occurrence. **TENANT** shall have all such public liability policies endorsed to show **LANDLORD** as an additional insured with respect to occurrences upon the Premises.

7.2 **GENERAL.** All of **TENANT's** liability insurance policy(ies) will provide for at least thirty (30) days notice to **LANDLORD** before substantial reduction of policy limits, cancellation or any other policy changes adverse to **LANDLORD'S** interest. **TENANT** will furnish **LANDLORD** with certificates of such insurance within ten (10) business days after written request by **LANDLORD**. If **TENANT** shall not comply with the provisions of this Article, **LANDLORD** may, at its option, cause insurance as aforesaid to be issued and, in such event, **TENANT** agrees to pay the premium for such insurance promptly upon **LANDLORD'S** demand. Nothing herein shall be deemed to make **LANDLORD** liable for any loss occasioned by fire or other casualty to personal property or fixtures of **TENANT**, or any other person, firm or corporation upon any part of the Premises.

7.3 **INDEMNITY BY TENANT.** **TENANT** shall indemnify, save harmless and defend **LANDLORD** from and against any and all costs, claims, actions, damages, liability and expense (including reasonable attorneys' fees) in connection with loss of life, personal injury and/or damage to property arising from or out of the occupancy or use by **TENANT** of the Premises or occasioned wholly or in part by the acts or omissions of **TENANT**, its officers, contractors, agents or employees (acting within the scope of their office, contract, agency or employment).

### ARTICLE XIII - ASSIGNMENT AND SUBLETTING

8.1 **CONSENT REQUIRED.** **TENANT** shall not assign this Lease, or any right or privilege granted hereunder, or sublet any portion of the Premises, or permit any use of the Premises for any other purpose other than those permitted under ARTICLE 1.1. Provided, however, the rights under this Lease may be wholly assigned in

connection with the actual sale or refinance of the Mall.

## ARTICLE IX - DEFAULT OF TENANT OR LANDLORD

9.1 **DEFAULT OF TENANT.** **TENANT** shall be deemed in default of its obligations under this Lease upon the occurrence of any of the following:

(a) **TENANT'S** failure to pay any rent payment as provided herein within ten (10) days after written notification, notification to be sufficient if the same is made in accordance with this Article XVII.

(b) **TENANT'S** continued failure to perform any other covenant, promise, or obligation of this Lease for a period of more than thirty (30) days after written notification in accordance with Article XVII below, except that this thirty (30) day period shall be extended for a reasonable period of time if the alleged default is not reasonably capable of cure within said thirty (30) day period and **TENANT** proceeds to diligently cure the default.

9.2 **LANDLORD'S REMEDIES.** Upon **TENANT'S** default hereunder (subject to **TENANT'S** right to cure as set forth herein), **LANDLORD** may exercise any and all rights, remedies and privileges that **LANDLORD** may have under applicable law, or this Lease, including the absolute right and privilege to terminate this Lease and **TENANT'S** right of possession hereunder. Further, **LANDLORD** may accelerate any and all amounts owed for the remaining Demised Term, subject to discounting the balance of rents owed based upon "present value of money" as reasonably determined by **LANDLORD** and the obligation of the **LANDLORD** to mitigate its damages. In addition to the above, the **TENANT** expressly acknowledges, covenants and agrees that upon default as stated above, the **LANDLORD** shall have the absolute and immediate right to reenter and retake possession of the Premises with or without process of law and the **TENANT** covenants and agrees to likewise peacefully surrender the Premises without process of law.

9.3 **DEFAULT OF LANDLORD.** **LANDLORD** shall be in default under this Lease if **LANDLORD** fails to perform any of its obligations hereunder and said failure continues for a period of thirty (30) days after written notice from **TENANT** to **LANDLORD** (unless such failure cannot reasonably be cured within thirty (30) days and, in that event, **LANDLORD** shall commence to cure said failure within the thirty (30) day period and thereafter diligently continue to cure the failure.

## ARTICLE X - LANDLORD'S RESPONSIBILITY

Nothing herein contained shall be deemed or construed to impose upon **LANDLORD** any obligation, responsibility or liability whatsoever for the care, maintenance or repair of the Premises, nor any part thereof.

## ARTICLE XI - TENANT'S PROPERTY

11.1 **TAXES ON TENANT'S PROPERTY.** **TENANT** shall be responsible for and shall pay before delinquency all municipal, county, state and federal taxes assessed during the term of this Lease against real and personal property of any kind owned by or placed in, upon or about the Premises by the **TENANT.** **LANDLORD** will be responsible for recording a plat and requiring the Horry County Tax Assessor's Office to separately tax this parcel.

11.2 **LOSS OR DAMAGE.** Except as provided herein, **LANDLORD** shall not be liable for any loss or damage to property of **TENANT** or of others located on the Premises, by theft or otherwise, unless such damage or loss is caused by acts or omissions of the **LANDLORD** or **LANDLORD'S** agents, employees or contractors. **LANDLORD** shall not be liable for any claims arising from damage to property located in or on the Premises resulting from fire, explosion, gas or electrical malfunction, water damage or leakage, unless said damage results from the acts or omissions of **LANDLORD,** or **LANDLORD'S** its agents, employees or contractors (acting within the scope of their agency, employment or contract). **LANDLORD** shall not be liable to **TENANT** for any damages caused by other persons in the Premises, or by public or quasi-public work on adjacent property, unless such damage is caused by the **LANDLORD.**

## ARTICLE XII - SURRENDER OF PREMISES, HOLDING OVER

12.1 **SURRENDER OF PREMISES.** At the expiration of this Lease, **TENANT** shall immediately surrender the Premises to **LANDLORD.**

12.2 **HOLDING OVER.** This Lease and the tenancy created shall cease and terminate at the end of the term hereof without the necessity of notice, and **TENANT** hereby waives notice and agrees that **LANDLORD** shall be entitled to summary recovery of the Premises.

## ARTICLE XIII - CONDEMNATION

If during the term of this Lease, the whole of the Premises are condemned or taken in any manner for public use, or if a portion of the Premises is condemned or taken in any manner for public use to an extent that constitutes an unreasonable interference with **TENANT'S** use of the premises (as determined by **TENANT,** in its reasonable discretion), then in either event **TENANT** may elect to terminate this Lease as of the date of the vesting of title in such public authority. **LANDLORD** shall be entitled to that portion of condemnation award attributable to **LANDLORD'S** interest in the Premises. **TENANT** shall be entitled to that portion of the condemnation award attributable to **TENANT'S** leasehold interest in the Premises, the loss of all improvements and other personal property on the Premises, all business losses and relocation costs.

## ARTICLE XIV - DESTRUCTION OF PREMISES

14.1 **PARTIAL/TOTAL DESTRUCTION.** In the event of fire or other casualty which destroys **TENANT'S** improvements, in whole or in part, there shall be no abatement, whatsoever, of the rent due **LANDLORD** by reason of fire or other casualty occurring to the Premises unless such damage is caused by the **LANDLORD.**

14.2 **NON-LIABILITY.** **LANDLORD** shall not be liable for any inconvenience or interruption of business to **TENANT** occasioned by fire or other casualty.

## ARTICLE XV - DESIGN OF SIGN

**TENANT** shall not substantially modify or change physical appearance, design or size of the existing sign without the express written consent of the **LANDLORD,** which consent will not be unreasonably withheld.

## ARTICLE XVI - REPRESENTATIONS AND WARRANTIES

16.1 **TENANT.** **TENANT** hereby represents and warrants to **LANDLORD** that: (a) **TENANT** has the full right and authority to enter into this Lease and (b) this Lease constitutes a valid and legally binding obligation of **TENANT,** enforceable in accordance with its terms.

16.2 **LANDLORD.** **LANDLORD** represents and warrants to **TENANT** that: (a) **LANDLORD** is a duly authorized and existing South

Carolina Corporation and the owner of the leasehold interest in the Premises; (b) there are no agreements, contracts, covenants, conditions or exclusions which would, if exercised, prohibit the operation of the Premises for the Permitted Use; (c) **LANDLORD** has the full right and authority to enter into this Lease; (d) this Lease constitutes a valid and legally binding obligation on **LANDLORD,** enforceable in accordance with its terms; and (e) that to the best of the **LANDLORD'S** information, knowledge and belief (after reasonable and diligent investigation), there are no plats, deeds, or recorded restrictions or other restrictions or agreements of any kind, recorded or unrecorded, that would prevent the **TENANT** from using the Premises for the intended use.

## ARTICLE XVII - NOTICES

Any notice, demand, request or other instrument which may be or is required to be given under this Lease shall be deemed to be delivered (a) whether or not actually received, three (3) days after deposited in the United States mail, postage prepaid, certified or registered mail, return receipt requested, or (b) if personally delivered or sent by a nationally recognized overnight courier, all charges prepaid, at the addresses of **LANDLORD** and **TENANT** as set forth in this Section. Such address may be changed by written notice to the other party in accordance with this Section.

**If to LANDLORD:**                          **If to TENANT:**

Tad's Land and Development          Oaktree Capital Management
863 Bellamy Avenue                  333 South Grand Ave, 28th Floor
Murrells Inlet, SC  29576           Los Angeles, CA  90071
Phone (843)651-6000                 Attention: Scott Chernoff
Fax (843) 651-8061

## ARTICLE XVIII - ESTOPPEL CERTIFICATE, SUBORDINATION, NON-DISTURBANCE

18.1 **ESTOPPEL CERTIFICATE.** At any time and from time to time either party, upon request of the other party, will execute, acknowledge and deliver an instrument, stating, if the same be true, that this Lease is a true and exact copy of this Lease between the parties hereto, that there are no amendments hereof (or stating what amendments there may be), that the same is then in full force and effect and that, to the best of its knowledge, there are no offsets, defenses or counterclaims with respect to the payment of Rent reserved hereunder or in the performance of the other terms, covenants and conditions hereof on the part of **TENANT**

or **LANDLORD**, as the case may be, to be performed, and that as of such date no default has been declared hereunder by either party or if not, specifying the same. Such instrument will be executed by the other party and delivered to the requesting party within fifteen (15) days of receipt.

18.2 **SUBORDINATION, NON-DISTURBANCE**. **LANDLORD** will provide appropriate subordinations as to all mortgages liens affecting the leasehold title of the **TENANT**.

### ARTICLE XIX - FORCE MAJEURE

In the event that either party hereto shall be delayed or hindered in or prevented from the performance required hereunder by reason of strikes, lockouts, labor troubles, failure of power, riots, insurrection, war, acts of God, or other reason of like nature not the fault of the party delayed in performing work or doing acts (hereinafter "Permitted Delay"), such party shall be excused for the period of time equivalent to the delay caused by such Permitted Delay. Notwithstanding the foregoing, any extension of time for a Permitted Delay shall be conditioned upon the party seeking an extension of time delivering written notice of the event causing the Permitting Delay to the other party within ten (10) days of the event causing the Permitted Delay, and the maximum period of time which a party may delay any act of performance of work due to a Permitted Delay shall be sixty (60) days.

### ARTICLE XX - MISCELLANEOUS

20.1 **WAIVER**. The waiver by **LANDLORD** and **TENANT** of any breach or default of any term, covenant or condition shall not be deemed to be a waiver of any subsequent breach or default of the same or any other term, covenant or condition, nor shall the acceptance of Rent be deemed to be a waiver of any such breach or default of such Rent. No term, covenant or condition of this Lease shall be deemed to have been waived by **LANDLORD** or **TENANT**, unless such waiver is in writing.

20.2 **ACCORD AND SATISFACTION**. No payment by **TENANT** or acceptance by **LANDLORD** of a lesser amount than sums herein stipulated shall be deemed to be other than on account of the due sums, nor shall any endorsement or statement on any check or in any letter accompanying any check or payment prejudice **LANDLORD'S** right to recover the balance or such rent or pursue any other remedy provided in this Lease, unless otherwise agreed to by **LANDLORD**.

JPG/Ted/mailsign.le2 1/30/01                                                    9

protecting their interest in any bankruptcy, receivership, or insolvency, it shall be entitled to recover all reasonable costs and expenses incurred, including reasonable attorneys' and legal assistants' fees prior to trial, at trial, and on appeal.

20.10 **CONSENT**. Wherever in this Lease **LANDLORD** or **TENANT** is required to give its consent or approval, such consent or approval shall not be unreasonably withheld, conditioned or delayed.

20.11 **TRANSFER OF LANDLORD'S INTEREST**. In the event the transfer by **LANDLORD** of his interest in the Premises, then notwithstanding anything to the contrary contained herein, he shall thereupon automatically be released and discharged from all covenants and obligations of the **LANDLORD** thereafter accruing, however, such covenants and obligations shall be binding during the term of this Lease upon each assignee for the duration of such assignee's ownership.

20.12 **SUCCESSORS**. All rights and liabilities herein given to or imposed upon the parties hereto shall inure to the benefit of and be binding upon their respective heirs, executors, administrators, successors and assigns and, except as may be otherwise set forth herein.

20.13 **EFFECTIVE DATE**. Notwithstanding the date of execution of this lease, the "Effective Date" of this Lease shall be November 1, 1998.

20.14 **LEASEHOLD FINANCING**.

A. **TENANT** shall have the right at all times during the term of this Lease, without the consent of **LANDLORD**, to encumber the leasehold estate created by this Lease or any sublease by one or more mortgages, deeds of trust or other security instruments, including, without limitation, assignments of the leases, rents, issues and profits from the premises, to secure repayment of any loans, and associated obligations made to **TENANT** for the purpose of interim and long-term financing. Any such mortgage, deed of trust, or other security instrument, including without limitation, assignments of the leases, rents, issues and profits from the premises, and all rights of the respective mortgagee, beneficiary or security holder thereunder, shall be subject to all terms, covenants and conditions of this Lease, and to all rights and interests of **LANDLORD** under this Lease.

B. As used herein, "Leasehold Mortgage" shall mean any mortgage, deed of trust or other security instrument, including, without limitation, an assignment of the leases, rents, issues and

JPG/Ted/mailsign.le2 1/30/01                                                    11

20.3 **CAPTIONS AND SECTION NUMBERS**. The captions and section numbers appearing in this Lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of such sections.

20.4 **ENTIRE AGREEMENT**. This Lease and any attachments hereto and forming a part hereof set forth all the covenants, promises, agreements, conditions, and understandings between **LANDLORD** and **TENANT** concerning the Premises and there are no covenants, promises, agreements, conditions or understandings, either oral or written, other than as herein set forth. No subsequent alteration, amendment, change or addition to this Lease shall be binding upon **LANDLORD** or **TENANT** until reduced to writing and signed by **LANDLORD** and **TENANT**.

20.5 **TENANT AND LANDLORD DEFINED, USE OF PRONOUN**. The words "**TENANT**" and "**LANDLORD**" shall mean each party mentioned as **TENANT** and **LANDLORD** herein, whether one or more, and if more than one, all liability hereunder shall be joint and several. If there is more than one party any notice required or permitted may be given to any one thereof, and such notice to one shall be deemed notice to all. The use of the singular pronoun to refer to **TENANT** or **LANDLORD** shall be deemed proper regardless of the number of parties.

20.6 **PARTIAL INVALIDITY**. If any term, covenant or condition of this Lease, or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease or the application of such term, covenant, or condition to persons or circumstances other than those as to which it was held invalid or unenforceable, shall not be affected thereby and each term, covenant, or condition of this Lease shall be valid and be enforced to the fullest extent permitted by law.

20.7 **APPLICABLE LAW**. The parties hereto shall be bound by and this Lease shall be construed according to the laws of the State of South Carolina.

20.8 **RECORDING**. A Memorandum of this Lease in the form of **EXHIBIT B** attached hereto may be recorded by **LANDLORD** and **TENANT** in the public records at the recording party's expense.

20.9 **COSTS OF ENFORCEMENT**. In the event that **LANDLORD** or **TENANT** shall bring an action to recover any sum due hereunder or for any breach hereunder and shall obtain a judgement in its favor, or in the event that **LANDLORD** or **TENANT** retain an attorney for the purpose of collecting any sum due hereunder after an event of default or enforcing any of the terms or conditions hereof of

JPG/Ted/mailsign.le2 1/30/01                                                    10

profits from the premises, which constitutes a lien on the leasehold estate created by this Lease, or the sub-leasehold estate created by any sublease, and "Lender" shall mean the holder of a Leasehold Mortgage as well as any holder of a Leasehold Mortgage who advises Landlord in writing of an assignment of the Leasehold Mortgage.

C. During the continuance of any Leasehold Mortgage and until such time as the lien of any Leasehold Mortgage has been extinguished:

(i) **LANDLORD** shall not agree to any mutual termination nor accept any surrender of this Lease, nor shall **LANDLORD** consent to any amendment or modification of this Lease, without the prior written consent of Lender.

(ii) Notwithstanding any default by **TENANT** in the performance or observance of any agreement, covenant or condition of this Lease on the part of **TENANT** to be performed or observed, **LANDLORD** shall have no right to terminate this Lease unless (a) an event of default shall have occurred and be continuing, (b) **LANDLORD** shall have complied with Section 20.14 of the Lease, by giving Lender written notice of such event of default, and (c) Lender shall have failed to remedy such default or acquire **TENANT'S** leasehold estate created hereby or commence foreclosure or other appropriate proceedings in the nature thereof, all as set forth in, and within the time specified by Section 20.14.

(iii) Lender includes a holder of a Leasehold Mortgage of the Lease or any sublease and shall have the right, but not the obligation, at any time prior to termination of this Lease, and without payment of any penalty, to pay all of the rents due hereunder, to effect any insurance, to pay any taxes and assessments, to make any repairs and improvements, to do any other act or thing required of **TENANT** hereunder, and to do any act or thing which may be necessary and proper to be done in the performance and observance of the agreements, covenants and conditions hereof to prevent termination of this Lease. All payments so made and all things so done and performed by Lender shall be as effective to prevent a termination of this Lease as the same would have been if made, done and performed by **TENANT** instead of by such Lender (or sub-tenant as the case may be). Any subtenant of the premises and any subtenant of such subtenant, and their possession and use, shall not be disturbed by Landlord in the event of any default hereunder or termination of this Lease so long as (A) such subtenant performs all obligations binding upon it under its sublease, and (B) such subtenant attornes to **LANDLORD**.

JPG/Ted/mailsign.le2 1/30/01                                                    12

(iv) Should any event of default under this Lease occur, Lender shall have sixty (60) days after receipt of notice from **LANDLORD**, pursuant to subparagraph (vii) of this paragraph (C) of Section 20.14, setting forth the nature of such event of default, and, if the default is such that possession of the premises may be reasonably necessary to remedy the default, a reasonable time after the expiration of such sixty (60) day period, within which to remedy such default, provided that (A) the Lender shall have fully cured any default in the payment of any monetary obligations of **TENANT** under this Lease within such sixty (60) day period and shall continue to pay currently such monetary obligations as and when the same are due and (B) the Lender (but only a Lender holding a Leasehold Mortgage upon the leasehold estate created by and arising under this Lease) shall have acquired **TENANT'S** leasehold estate created hereby or commenced foreclosure or other appropriate proceeding in the nature thereof within such period, or prior thereto, and is diligently prosecuting any such proceedings. All rights of **LANDLORD** to terminate this Lease as the result of the occurrence of any such event of default shall be subject to, and conditioned upon, Lender, subject to paragraph (C) of this Section 20.14, having first given Lender written notice of such default and Lender having failed to remedy such default or, in the case of a Lender holding a Leasehold Mortgage upon the leasehold estate created by and arising under this Lease, acquire **TENANT'S** leasehold estate created hereby or commence foreclosure or other appropriate proceeding in the nature thereof as set forth in and within the time specified by this paragraph (C).

(v) Any event of default under this Lease which in the nature thereof cannot be remedied by a Lender shall be deemed to be remedied if (A) within sixty (60) days after receiving written notice from **LANDLORD** subject to subparagraph (vii) of paragraph (C) of Section 20.14, setting forth the nature of such event of default, or prior thereto, the Lender shall have acquired **TENANT'S** leasehold estate created hereby or shall have commenced foreclosure or other appropriate proceedings in the nature thereof, (B) the Lender shall diligently prosecute any such proceedings to completion, (C) the Lender shall have fully cured any default in the payment of any monetary obligations of **TENANT** hereunder which do not require possession of the premises within such sixty (60) day period and shall thereafter continue to faithfully perform all such monetary obligations which do not require possession of the premises, and (D) after gaining possession of the premises the Lender performs all other obligations of **TENANT** hereunder (excepting however the cure or remedy of such event or events of defaults which in the nature thereof cannot be remedied by a Lender) as and when the same are due.

(vi) If a Lender is prohibited by any process or injunction issued by any court or by reason of any action by any court having jurisdiction of any bankruptcy or insolvency proceeding involving **TENANT** from commencing or prosecuting foreclosure or other appropriate proceedings in the nature thereof, the times specified in paragraph (C)(iv) and (C)(v) above for commencing or prosecuting such foreclosure or other proceedings shall be extended for the period of such prohibition; provided that the Lender shall have fully cured, within the 60-day time periods set forth in paragraphs (C)(iv) and (C)(v) above, any default in the payment of any monetary obligations of **TENANT** under this Lease and shall continue to pay currently such monetary obligations as and when the same fall due.

(vii) **LANDLORD** shall mail and deliver to Lender a duplicate copy of any and all notices which **LANDLORD** may from time to time give to or serve upon **TENANT** pursuant to the provisions of this Lease, and such copy shall be mailed or delivered to Lender simultaneously with the mailing or delivery of the same to **TENANT**. No notice by **LANDLORD** hereunder shall be deemed to have been given unless and until a copy thereof shall have been mailed, delivered and received by Lender as herein set forth. Receipt shall be deemed four (4) business days after depositing such notice with the United States Postal Service on the second business day if sent by overnight courier. **TENANT** shall provide **LANDLORD** with written notice of the name, mailing address, street address and telephone number of Lender. Lender may directly provide such information to Landlord. Upon receipt of such information (unless otherwise actually known to **LANDLORD**), **LANDLORD** shall thereupon become and thereafter shall be bound to mail or deliver a duplicate copy of all notices to **TENANT** hereunder to Lender.

(vii) Notwithstanding anything to the contrary contained herein, foreclosure of a Leasehold Mortgage, or any sale thereunder, whether by judicial proceedings or by virtue of any power of sale contained in the Leasehold Mortgage, or any conveyance of the leasehold estate created hereby from **TENANT** to a Lender through, or in lieu of, foreclosure or other appropriate proceedings in the nature thereof, shall not require the consent or approval of **LANDLORD** or constitute a breach of any provision of or a default under this Lease, and upon such foreclosure, sale or conveyance, **LANDLORD** shall recognize the Lender, or any other foreclosure sale purchaser, as **TENANT** hereunder. In the event Lender becomes **TENANT** under this Lease or any new lease obtained pursuant to this paragraph (C), or in the event the leasehold estate hereunder is purchased by any other party at a foreclosure sale, Lender, or such other foreclosure sale purchaser, shall be bound to perform and satisfy the obligations of **TENANT** under this

Lease or such new lease; provided, however, that the personal liability of Lender, or such foreclosure sale purchaser, for the obligations of **TENANT** under this Lease or such new lease shall exist only with respect to obligations arising during the period of time that Lender or such other foreclosure sale purchaser remains lessee thereunder and all such liabilities and obligations of Lender shall cease and terminate provided that the assignee and/or purchaser shall have assumed in writing all of **TENANT'S** obligations under the Lease, and Lender's or such foreclosure sale purchaser's right thereafter to assign this Lease or such new lease shall not be subject to any restriction. In the event Lender subsequently assigns or transfers its interest under this Lease after acquiring the same by foreclosure or deed in lieu of foreclosure, or subsequently assigns or transfers its interest under any new lease obtained pursuant to paragraph (C)(ix) below, and in connection with any such assignment or transfer Lender takes back a mortgage or deed of trust encumbering such leasehold interest to secure a portion of the purchase price given to Lender for such assignment or transfer, then such mortgage or deed of trust shall be considered a Leasehold Mortgage as contemplated under paragraphs (A) through (C) inclusive of Section 20.14 of the Lease and Lender shall be entitled to receive the benefit of and enforce the provisions of paragraphs (A) through (C) inclusive of Section 20.14 of the Lease, and any other provisions of this Lease intended for the benefit of the holder of a Leasehold Mortgage.

(ix) Should **LANDLORD** terminate this Lease by reason of any default by **TENANT** hereunder (including, without limitation, upon rejection by the **TENANT'S** trustee in bankruptcy or similar proceeding), **LANDLORD** shall, upon written request by Lender given within sixty (60) days after such termination (or within thirty (30) days after such termination by any Lender which has previously received notice from **LANDLORD** of any uncured and uncontested monetary default by **TENANT** hereunder and not elected, at its option, to effect a cure thereof within the time periods set forth in this paragraph (C) of Section 20.14 of the Lease), immediately execute and deliver a new lease of the premises to such Lender or its nominee, purchaser, assignee or transferee, for the remainder of the term of this Lease with the same agreements, covenants and conditions (except for any requirements which have been fulfilled by **TENANT** prior to termination) as are contained herein and with priority equal to that thereof; provided, however, that Lender shall promptly cure any defaults of **TENANT** susceptible to cure by Lender; and provided, further, however, that if more than one Lender requests such new lease, the Lender holding the most senior Leasehold Mortgage shall prevail; and, provided, further that if Lender and the holder of the sub-leasehold estate both request such new lease, the Lender shall prevail unless said sub-lessee

concurrently grants a lien upon the new leasehold estate in such manner as may be requested by the Lender in its sole discretion. Upon execution and delivery of such new lease, the Lender may at its expense take such action as shall be necessary to cancel this Lease and to remove **TENANT** and remove herein from the premises.

**IN WITNESS WHEREOF, LANDLORD AND TENANT** have executed this Lease Agreement this _1st_ day of _February_, 2001.

**WITNESS:**

**"LANDLORD"**

**TAD'S LAND AND DEVELOPMENT COMPANY, INC.**

By: _Gerald C. Tadlock_

Title: _Pres._

*(signatures)*

**"TENANT"**

**SC FUND VI PROPERTIES L.P.**

By: S C Fund VI Properties L.L.C., its General Partner

By: TCW Asset Management Company, its Manager

By: _Marc Porosoff_
Marc Porosoff, Its Authorized Signatory

By: _Russel S. Bernard_
Russel S. Bernard, Its Authorized Signatory

## EXHIBIT A

ALL THAT CERTAIN lot of land located in Horry County, State of South Carolina, containing 0.08 acres, being a portion of Horry County TM# 194-00-04-060 and delineated as **PARCEL "E-1"** on that certain **"REVISED PLAT OF OUT PARCEL "E" AT INLET SQUARE MALL PREPARED FOR GERALD A. TADLOCK"**, prepared by Powers and Associates Surveyors, Inc., dated January 17, 1996, last revised January 30, 1998 to show Parcel E-1 to be combined with the Inlet Square Mall Tract and to be recorded in the R. M.C. Office for Horry County; a copy of said plat attached hereto and incorporated herein by reference.

JPG/Tad/mallsign.le2 1/30/01                                      17

---

### EXHIBIT B

## MEMORANDUM OF LEASE AGREEMENT

### BY AND BETWEEN

**TAD'S LAND AND DEVELOPMENT COMPANY, INC.**
**AND**
**SC FUND VI PROPERTIES L.P.**

**THIS MEMORANDUM LEASE** is entered into by and between **TAD'S LAND AND DEVELOPMENT COMPANY, INC.**, a South Carolina Corporation ("**LANDLORD**") and **SC FUND VI PROPERTIES L.P.**, ("**TENANT**") evidencing that certain Lease Agreement by and between the parties dated _____ February 1, 2001, covering certain real property located in Horry County, South Carolina more fully described below.

1) **LEASED PREMISES.** In consideration of the rents, covenants, and agreements set forth in said Lease Agreement, **LANDLORD** hereby leases to **TENANT** and **TENANT** hereby rents from **LANDLORD** that certain lot of land containing 0.08 acres, and being delineated as Parcel "E-1" on **EXHIBIT A**, attached hereto (the "Premises"), for the specific purpose of, operating and maintaining an existing Pylon Sign, for advertisement and identification for the Inlet Square Mall, and its tenants; together with all easements, rights and privileges appurtenant for that specific purpose; **RESERVING, HOWEVER**, to the **LANDLORD**, to benefit and be appurtenant to the adjoining parcel E as shown on Exhibit A, an exclusive parking easement, with non-exclusive rights of access, ingress and egress, over and across the premises for the benefit of the patrons, customers and invitees of the **TENANT** of parcel E and a non-exclusive easement over and across the Premises for utility lines and other facilities as necessary to serve parcel E.

JPG/Tad/mallsign.le# 1/30/0                                          18

---

2) **QUIET ENJOYMENT.** **TENANT** shall have the right of quiet enjoyment of the Premises subject to the terms, conditions, and covenants of this Lease.

3) **TERM.** The term of this Lease shall be deemed to have commenced on November 1, 1998, hereinafter (the "Commencement Date"); and shall end on midnight, July 14, 2047.

4) **LIENS.** **TENANT** shall have no power to subject **LANDLORD'S** interest in the Premises to mechanic's or materialmen's liens of any kind nor shall **LANDLORD** have the power to subject **TENANT'S** interest in the Premises to any lien of any kind. All persons performing work, labor or supplying materials at the Premises on behalf of **TENANT** or **LANDLORD** shall look solely to the interest of such party and not to that of the other party for any legal fees and court costs.

5) **NOTICES** Any notice, demand, request or other instrument which may be or is required to be given under this Lease shall be deemed to be delivered (a) whether or not actually received, three (3) days after deposited in the United States mail, postage prepaid, certified or registered mail, return receipt requested, or (b) if personally delivered or sent by a nationally recognized overnight courier, all charges prepaid, at the addresses of **LANDLORD** and **TENANT** as set forth in this Section. Such address may be changed by written notice to the other party in accordance with this Section.

**If to LANDLORD:**

Tad's Land and Development
863 Bellamy Avenue
Murrells Inlet, SC  29576
Phone (843)651-6000
Fax (843) 651-8061 20.12

**If to TENANT:**

Oaktree Capital Management
333 South Grand Ave. 28th Floor
Los Angeles, CA  90071
Attention: Scott Chernoff

6) **SUCCESSORS.** All rights and liabilities herein given to or imposed upon the parties hereto shall inure to the benefit of and

JPG/Tad/mallsign.le2 1/30/01                                      19

---

be binding upon their respective heirs, executors, administrators, successors and assigns and, except as may be otherwise set forth herein.

**IN WITNESS WHEREOF, LANDLORD AND TENANT** have executed this Lease Agreement this 1ST Day of _February_, 2001.

**WITNESS:**

_Dapley W. Whites_
First Witness

_____
Second Witness (Notary)

**"LANDLORD"**

**TAD'S LAND AND DEVELOPMENT COMPANY, INC.**

By: _Gerald A. Tadlock_
      Gerald A. Tadlock

Title: ___President___

* * * * * * * * *

**STATE OF SOUTH CAROLINA**        )
                                    )          **ACKNOWLEDGMENT**
**COUNTY OF GEORGETOWN**           )

THE DUE execution and delivery of the foregoing instrument was acknowledged before me this 1st day of _February_, 2001 by **TAD'S LAND AND DEVELOPMENT COMPANY, INC.**, by its duly authorized President, **Gerald A. Tadlock.**

_____
Notary Public for South Carolina
My Commission Expires: 11-04-2008

JPG/Tad/mallsign.le2 1/30/01                                      20

WITNESS:

## "TENANT"

### SC FUND VI PROPERTIES L.P.

*Sretta O' Sullivan*
First witness

By:    S C Fund VI Properties L.L.C.,
       its General Partner

By:    TCW Asset Management Company,
       its Manager

*Marlo M. Salerno*
Second Witness (Notary)

By:    *[signature]*
       Marc Porosoff, Its Authorized
       Signatory

By:    *[signature]*
       Russel S. Bernard, Its Authorized
       Signatory

* * * * * * *

STATE OF NEW YORK      )
                       )      ACKNOWLEDGMENT
COUNTY OF NEW YORK     )

THE DUE execution and delivery of the foregoing instrument was acknowledged before me this _13_ day of _February_, 2001 by **SC FUND VI PROPERTIES L.P.**, by its General Partner, SC Fund VI Properties L.L.C., by TCW Asset Management Company, its Manager, by its duly Authorized Signatories, Marc Porosoff and Russel S. Bernard.

*Marlo M. Salerno*
Notary Public for _____
My Commission Expires:_____

MARLO M. SALERNO
Notary Public, State of New York
Registration 00MA5048091
Qualified in Onondaga County
My Commission Expires July 10, 2003

## EXHIBIT A

ALL THAT CERTAIN lot of land located in Horry County, State of South Carolina, containing 0.08 acres, being a portion of Horry County TM# 194-00-04-060 and delineated as **PARCEL "E-1"** on that certain **"REVISED PLAT OF OUT PARCEL "E" AT INLET SQUARE MALL PREPARED FOR GERALD A. TADLOCK"**, prepared by Powers and Associates Surveyors, Inc., dated January 17, 1996, last revised January 30, 1998 to show Parcel E-1 to be combined with the Inlet Square Mall Tract and recorded March 17, 1998 in the R.M.C. Office for Horry County in Plat Book 154 at page 39; said plat incorporated herein by reference.

## SECOND FORMAL AMENDMENT TO GROUND LEASE

This SECOND FORMAL AMENDMENT TO GROUND LEASE (this "Amendment") is entered into as of _December 28_, 2006 (the "Effective Date"), by and between TAD'S LAND AND DEVELOPMENT COMPANY, INC., a South Carolina corporation ("Tad's Land"), and GERALD A. TADLOCK, an individual ("Tadlock"; together with Tad's Land, "Landlord"), on the one hand, and INLET RETAIL ASSOCIATES, LLC, a South Carolina limited liability company ("Tenant"), on the other hand, with reference to the following facts:

A.    Landlord and Tenant, as successor-in-interest by mesne assignments to (i) SC Fund VI Properties, L.P., a Delaware limited partnership, (ii) Inlet Square Properties, L.L.C., (iii) Metropolitan Life Insurance Company, and (iv) Coastal Limited Partnership, a South Carolina limited partnership, are parties to that certain Ground Lease dated January 21, 1988, a Memorandum of which was recorded in the R.M.C. Office for Horry County, South Carolina in Deed Book 1193, at Page 250 on January 21, 1988, as amended by that certain (a) Ground Lease Modification Agreement No 1 dated November 4, 1988 (the "First Formal Amendment"), in connection with which a First Amended Memorandum of Lease dated November 4, 1988, was recorded in the R.M.C. Office for Horry County, South Carolina, in Book 1266, at page 695 on November 18, 1988, (b) Estoppel, Modification of Ground Lease and Clarification of Landlord's Non-Disturbance Agreement dated April 27, 1990 (the "Sing Estoppel"), (c) Estoppel Certificate and Second Clarification of Landlord's Non-Disturbance Agreement (the "Second Sing Estoppel"), (d) Estoppel and Clarification of Landlord's Non-Disturbance Agreement dated April 26, 1990 (the "Jordan Estoppel"), and (e) Estoppel Certificate and Second Clarification of Landlord's Non-Disturbance Agreement dated as of December, 1995 (the "Second Jordan Estoppel"). Such Ground Lease, as amended by the First Formal Amendment, the Sing Estoppel, the Second Sing Estoppel, the Jordan Estoppel and the Second Jordan Estoppel, is referred to herein as the "Ground Lease." Pursuant to the Ground Lease, Tenant leases certain real property located in Murrells Inlet, State of South Carolina, known as "Inlet Square Mall" (the "Premises").

B.    The Ground Lease is, in part, a sublease of Landlord's rights, as "Lessee," under that certain (i) Lease Agreement dated July 1, 1983, between Charlie Sing, an individual, Carrie W. Sing, an individual, and Charlie James Sing, an individual, on the one hand, as the "Lessor" thereunder, and Landlord, as successor-in-interest to Kenneth D. Anderson, as the "Lessee" thereunder, as the same has been amended by that certain (a) Amendment of Lease Agreement dated September 15, 1987, (b) Landlord's Non-Disturbance Agreement dated September 15, 1987, and (c) Estoppel Certificate and Agreement dated October 3, 2005 (as amended, the "Sing Master Lease"), and (ii) Lease Agreement dated January 27, 1983, between Jim T Jordan, an individual, Dorothy

1

Mason Jordan, an individual, Marion J. Thomson, an individual, Connie J. Koloditch, an individual, and Steven T Jordan, an individual, on the one hand, as the "Lessor" thereunder, and Tad's Land, on the other hand, as the "Lessee" thereunder, as the same has been amended by that certain (a) First Amendment of Lease Agreement dated July 8, 1987, (b) Landlord's Non-Disturbance Agreement dated September 18, 1987, and (c) Estoppel Certificate and Agreement dated October 3, 2005 (as amended, the "Jordan Master Lease"). Charlie James Sing, an individual (the "Sing Master Lessor"), is currently the sole "Lessor" under the Sing Master Lease, and Dorothy Mason Jordan and Steven T. Jordan, as Trustees under the Jim T. Jordan Trust under Item V of the Last Will and Testament of Jim T Jordan dated December 17, 1996, Dorothy Mason Jordan, an individual, Marion J. Thomson, an individual, Connie J. Koloditch, an individual, and Steven T Jordan, an individual (collectively, the "Jordan Master Lessors"), are currently the sole "Lessors" under the Jordan Master Lease. The term of the Sing Master Lease currently expires on December 31, 2047, and the term of the Jordan Master Lease currently expires on July 14, 2047. The Sing Master Lease and the Jordan Master Lease are collectively referred to herein as the "Master Leases " The Sing Master Lessor and the Jordan Master Lessors are collectively referred to herein as the "Master Lessors "

C.    The term of the Ground Lease currently expires on July 14, 2047 (the "Original Term")

D    Landlord and Tenant now desire to amend the Ground Lease to provide that Tenant shall have the option, but not the obligation, to extend the expiration date of the term of the Ground Lease to July 14, 2067, on the terms and conditions set forth herein (the "Extension Option").

NOW, THEREFORE, in consideration of the foregoing facts and the mutual covenants and conditions set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto hereby agree as follows

1.    Extension Option    Tenant shall have the right, at Tenant's option, to extend the term of the Ground Lease (that is, the Extension Option) for one (1) option term of twenty (20) years (the "Option Term"), commencing on July 15, 2047 (the "Option Term Commencement Date") and expiring on July 14, 2067, upon and subject to the terms and conditions set forth herein. Tenant shall have the right, but not the obligation, to exercise the Extension Option by delivering written notice thereof to Landlord in the manner specified in Section 5 below by no later than July 14, 2045, subject to extension as provided in this Amendment (the "Option Exercise Deadline"), stating that Tenant is exercising the Extension Option. Notwithstanding the foregoing, if for any reason the "Initial Base Rent Figure" (as defined in Section 3 1 below), or the

2

"Subsequent Base Rent Figure" (as defined in Section 3.2 below), as applicable, has not been determined prior to the Option Exercise Deadline, the Option Exercise Deadline shall be extended to a date ninety (90) days after the date the Initial Base Rent Figure or the Subsequent Base Rent Figure, as applicable, has been determined.  In the event Tenant exercises the Extension Option, each of the terms, covenants and conditions of the Ground Lease (as amended by this Amendment and as may be further amended from time to time) shall apply during the Option Term as though the expiration date of the Option Term was the date originally set forth in the Ground Lease as the expiration date of the term thereof, except that the minimum rent and net overage rentals payable by Tenant to Landlord under the Ground Lease during the Option Term shall be determined in accordance with Section 3 below.  Notwithstanding the foregoing, in the event Tenant fails to exercise the Extension Option by the Option Exercise Deadline, Landlord shall give Tenant notice thereof and Tenant shall have until thirty (30) days after Tenant's receipt of Landlord's notice to exercise the Extension Option  In no event shall the Extension Option terminate under this Section until Landlord has provided Tenant with the notice provided in the immediately preceding sentence and the foregoing thirty (30) day period has expired; provided, however, that the Extension Option shall terminate if for any reason the same has not been exercised by no later than the end of the Original Term.

2    Extension Option Payments. In consideration of Landlord granting to Tenant the Extension Option described above and in consideration for the Extension Option remaining in effect, and provided Landlord has obtained the "Master Leases Extensions" (as defined in Section 4.1 below) by no later than the "Contingency Deadline" (also as defined in Section 4.1 below), Tenant shall be required to pay to Landlord on or before January 12, 2007, the sum of Five Hundred Thousand U.S. Dollars (U.S. $500,000.00) in immediately available federal funds (the "Initial Option Payment"), and (b) on July 15, 2007, and on each July 15 thereafter throughout the remainder of the Original Term (the last such payment to be made on July 15, 2046), annual payments of One Hundred Thousand U.S. Dollars (U.S. $100,000.00) each in immediately available federal funds, for an aggregate of forty (40) annual payments of One Hundred Thousand U.S. Dollars (U.S. $100,000.00) each (collectively, the "Option Payments" and individually an "Option Payment").  Except as to the Initial Option Payment, if Tenant fails to make any Option Payment when due hereunder, Landlord shall notify Tenant thereof in writing at Tenant's then current address for notice purposes and in the manner set forth in Section 6 below, and Tenant shall have fifteen (15) days after Tenant's receipt of Landlord's notice to pay the same. If Tenant fails to make such Option Payment within the foregoing fifteen (15) day period, Tenant shall not be in default under the Ground Lease; however, the Extension Option shall automatically terminate and be of no further force or effect whatsoever.

3

Provided Landlord has obtained the Master Leases Extensions by no later than the Contingency Deadline, Tenant acknowledges and agrees that the Initial Option Payment has been earned by Landlord and shall be due and payable to Landlord by no later than January 12, 2007  Should Tenant fail to pay the Initial Option Payment to Landlord by no later than January 12, 2007, TIME BEING OF THE ESSENCE, the Extension Option shall terminate and be of no further force or effect whatsoever and, in addition, Tenant shall remain liable to Landlord for the Initial Option Payment plus all of Landlord's actual and reasonable costs and expenses of collecting the same, including reasonable attorneys' fees

3    Determination of Minimum Rent and Net Overage Rentals.

3.1    Determination of Initial Base Rent Figure.  On or before January 15, 2037, each of Landlord and Tenant shall submit to the other such party's determination of the "fair market rental value" (as described below) of the Premises as of July 15, 2037 (the "Initial Determination Date").  Landlord and Tenant shall thereafter meet and use their best good faith efforts to agree upon the fair market rental value of the Premises (as of the Initial Determination Date) by the Initial Determination Date. If either party fails to submit in writing to the other party its initial determination of the fair market rental value of the Premises by the later to occur of (i) the date sixty (60) days after such party's receipt of the other party's determination of the fair market rental value of the Premises as of the Initial Determination Date, or (ii) January 15, 2037, then the other party's submitted determination of fair market rental value shall be the fair market rental value of the Premises for purposes of this Section 3 1. If, by no later than the Initial Determination Date, Landlord and Tenant cannot agree on the fair market rental value of the Premises as of the Initial Determination Date, or the same is not otherwise determined in accordance with the foregoing provisions, the same shall be submitted to arbitration in accordance with the provisions of Section 3.5 below. The fair market rental value of the Premises as of the Initial Determination Date, as determined in accordance with this Section 3.1, is hereinafter referred to as the "Initial Base Rent Figure "  As used in this Amendment, the term "fair market rental value" shall mean the rental rate per year at which, as of the applicable determination date, landlords are leasing raw land comparable in size, quality and location to the Premises (excluding all improvements on the Premises, it being acknowledged and agreed that there have been no improvements to the Premises made by Landlord), as if such comparable land were then made available for rent to the general public for the uses permitted under the Ground Lease, assuming, however, that such land is unencumbered by the Ground Lease or the Master Leases (or similar leases), for a term comparable to the Option Term, taking into consideration all monetary concessions being granted in connection with such comparable land including, without limitation, the following  (a) rental abatement concessions, (b) improvements or allowances being

4

given in connection with such comparable land, and (c) all other monetary concessions being granted in connection with such land.

3.2   Redetermination of Base Rent Figure.   Notwithstanding the provisions of Section 3.1 hereof, either Landlord or Tenant (as applicable, the "Electing Party") may, by providing written notice ("Redetermination Notice") to the other party by no earlier than July 15, 2043, and by no later than January 15, 2044, elect to have the Initial Base Rent Figure redetermined as of July 15, 2044.  The Electing Party shall submit with such party's Redetermination Notice, such Electing Party's determination of the fair market rental value of the Premises as of July 15, 2044 (the "Subsequent Determination Date").  Following the non-Electing Party's receipt of the Electing Party's Redetermination Notice and the Electing Party's determination of the fair market rental value of the Premises as of the Subsequent Determination Date, the non-Electing Party shall, by no later than the later to occur of (i) sixty (60) days after the non-Electing Party's receipt of the Redetermination Notice, or (ii) March 15, 2044, submit such non-Electing Party's determination of the fair market rental value of the Premises as of the Subsequent Determination Date.  Landlord and Tenant shall thereafter meet and use their best good faith efforts to agree upon the fair market rental value of the Premises (as of the Subsequent Determination Date) by no later than the Subsequent Determination Date.  If the non-Electing Party fails to submit its determination of the fair market rental value of the Premises as of the Subsequent Determination Date by the applicable date set forth in this Section 3.2, then the Electing Party's submitted determination of the fair market rental value of the Premises shall be the fair market rental value of the Premises for purposes of this Section 3.2.  If, by no later than the Subsequent Determination Date, Landlord and Tenant cannot agree on the fair market rental value of the Premises as of the Subsequent Determination Date, or the same is not otherwise determined in accordance with the foregoing provisions, the same shall be submitted to arbitration in accordance with Section 3.5 below.  The fair market rental value of the Premises as of the Subsequent Determination Date, as determined in accordance with this Section 3.2, is hereinafter referred to as the "Subsequent Base Rent Figure."

3.3   CPI Increase in Base Rent Figure; Determination of Minimum Rent.  The amount of the minimum rent payable by Tenant to Landlord during the Option Term shall be determined by multiplying the Initial Base Rent Figure determined in accordance with Section 3.1 above or, if an election is made pursuant to Section 3.2 above, the Subsequent Base Rent Figure determined in accordance with Section 3.2 above (as applicable, the "Established Base Rent Figure"), by a fraction, the denominator of which shall be the Consumer Price Index figure published for the month and year in which the applicable Determination Date occurs (the "Base Index Number"), as the case may be, and the numerator of which shall be the Consumer Price Index figure published for April, 2047 (the "Current Index Number"), provided, however, that notwithstanding any redetermination of the Initial Base Rent Figure

5

reach agreement by no later than the applicable determination date specified in Section 3.1 above, with respect to the determination of the Initial Base Rent Figure, Section 3.2 above, with respect to the determination of the Subsequent Base Rent Figure, or Section 3.4 above, with respect to the determination of the Per Acre Valuation of the Premises, then such determination shall be forthwith submitted to "Night Baseball" arbitration under the rules of the American Arbitration Association and in accordance with the following provisions:

(a)   Landlord and Tenant shall each appoint one arbitrator who shall by profession be a certified real estate appraiser who shall have been active over the five (5) year period ending on the date of such appointment in the appraisal of unimproved land in the South Strand area of Myrtle Beach.  Neither Landlord nor Tenant shall disclose to such arbitrators any party's (that is, either Landlord's or Tenant's) determination of the applicable Base Rent Figure or Per Acre Valuation.  The determination of the arbitrators shall be limited solely to the issue of what is the actual fair market rental value or Per Acre Valuation of the Premises, as applicable, taking into account the requirements of this Section 3 above.  Each arbitrator shall be appointed within thirty (30) days after the applicable determination date.

(b)   The two arbitrators so appointed shall within fifteen (15) days of the date of the appointment of the last appointed arbitrator agree upon and appoint a third arbitrator who shall be qualified under the same criteria set forth hereinabove for qualification of the initial two arbitrators.

(c)   The three arbitrators shall within thirty (30) days of the appointment of the third arbitrator reach a decision as to the actual fair market rental value or Per Acre Valuation of the Premises, as applicable, and shall notify Landlord and Tenant thereof.  The determination of the arbitrators shall be limited solely to the issue of what is the actual fair market rental value or Per Acre Valuation of the Premises, as applicable, taking into account the requirements of this Section 3 above.

(d)   The decision of the majority of the three arbitrators shall be binding upon Landlord and Tenant.

(e)   If either Landlord or Tenant fails to appoint an arbitrator within thirty (30) days after the applicable determination date, the arbitrator appointed by one of them shall reach a decision, notify Landlord and Tenant thereof, and such arbitrator's decision shall be binding upon Landlord and Tenant.

(f)   The party's determination of fair market rental value or Per Acre Valuation of the Premises that is closest to that determined by the arbitrators shall

7

under Section 3.2 hereof and notwithstanding any such "Index" (as defined below) adjustment under this Section 3.3, in no event shall the minimum rent payable during the Option Term exceed one hundred thirty percent (130%) of the Initial Base Rent Figure determined in accordance with Section 3.1 above.  As used herein, the term "Consumer Price Index" or "Index" shall mean the Consumer Price Index For All Urban Consumers (South Region All Items) as published by the United States Department of Labor, Bureau of Labor Statistics (1982-1984=100).  If for any reason the minimum rent payable for the Option Term has not been determined prior to the Option Term Commencement Date, Tenant shall continue to pay minimum rent in the amount payable immediately prior to such date.  As soon as the minimum rent has been determined, Tenant shall thereafter pay minimum rent to Landlord in the amount so determined.  Should the minimum rent for the period following such adjustment date up to the date of determination exceed the amount previously paid by Tenant for such period, Tenant shall within fifteen (15) calendar days pay the difference to Landlord.  If the Consumer Price Index is discontinued or revised during the Term, such other government index or computation with which it is replaced shall be used in order to obtain substantially the same results as would be obtained if the Consumer Price Index had not been discontinued or revised

3.4   Determination of Per Acre Valuation of Premises  On or before January 15, 2045, each of Landlord and Tenant shall submit to the other such party's determination of the per acre valuation of the land comprising the Premises (excluding all improvements on the Premises, it being acknowledged and agreed that there have been no improvements to the Premises made by Landlord) as of the original Option Exercise Deadline without extension (the "Per Acre Valuation").  Landlord and Tenant shall thereafter meet and use their best good faith efforts to agree upon the Per Acre Valuation of the Premises by no later than the Option Exercise Deadline.  If either party fails to submit in writing to the other party its initial determination of the Per Acre Valuation of the Premises by the later to occur of (i) the date sixty (60) days after such party's receipt of the other party's determination of the Per Acre Valuation of the Premises, or (ii) January 15, 2045, then the other party's submitted determination of the Per Acre Valuation of the Premises shall be the Per Acre Valuation of the Premises used for purposes of this Section 3.4.  If, by no later than the Option Exercise Deadline, Landlord and Tenant cannot agree on the Per Acre Valuation of the Premises as of the original Option Exercise Deadline, or the same is not otherwise determined in accordance with the foregoing provisions, the same shall be submitted to arbitration in accordance with the provisions of Section 3.5 below.

3.5   Arbitration of Determination of Base Rent Figures/Per Acre Valuation.  As provided above, Landlord and Tenant shall attempt to agree upon the applicable Base Rent Figure and Per Acre Valuation of the Premises using their best good faith efforts by the applicable determination date  If Landlord and Tenant fail to

6

be the fair market rental value or Per Acre Valuation of the Premises, as applicable, hereunder

(g)   Landlord shall be responsible for the cost of the arbitrator appointed by Landlord, Tenant shall be responsible for the cost of the arbitrator appointed by Tenant, and Landlord and Tenant shall equally share the cost of the third arbitrator and all other costs of the arbitration proceeding.

3.6   Net Overage Rentals.  As of the Option Term Commencement Date, Section 3(b) of the Ground Lease is hereby amended to provide that (a) the minimum threshold amount set forth in clause (i) thereof (that is, $1,100), shall instead be an amount equal to one percent (1%) of the Per Acre Valuation of the Premises as of the original Option Exercise Deadline, without extension, and (b) the five-year periods described therein shall commence on the Option Term Commencement Date rather than the commencement of the Original Term.  In furtherance of the foregoing, as of the Option Term Commencement Date, Section 3(b) of the Ground Lease shall be amended and restated to read in its entirety as follows:

"(b)   In addition to the minimum rent referred to above, Tenant shall pay to Landlord as additional rent hereunder, twenty percent (20%) of net overage rentals (as hereinafter defined) received by Tenant from the mall constructed on the Premises, such net overage rentals to be determined on an annual basis for each lease year of the Option Term, hereinafter called the "percentage rent year."  Tenant shall submit to Landlord within ninety (90) days after the end of each percentage rent year, a report showing the amount of any net overage rentals certified or attested to by an officer of Tenant, and Tenant shall accompany said report with payment to Landlord of all percentage rent then due and owing.  Landlord may upon fifteen (15) days' written notice, examine Tenant's books and records for the purpose of verifying any statements submitted within one year prior to such inspection.  Any dispute between the parties as to the calculation of net overage rentals shall be determined by arbitration

The term "net overage rentals" as used herein shall mean all rentals paid by tenants or lessees of Tenant occupying the aforesaid mall on the Premises in excess of the minimum annual rentals set forth in their leases, except that payments provided for common area maintenance costs, insurance premiums, real property taxes, security deposits, merchants' association, advertising and marketing contributions, sprinklering charges, music charges, energy, heating, ventilating and air-conditioning charges, and opening promotion fund contributions, and other similar charges shall be excluded from any such excess rentals.

8

At the end of each fifth year of the Option Term, an accounting shall be made with respect to the aforesaid additional rent. In the event the aggregate amount of net overage rentals paid by Tenant to Landlord is less than the "Minimum Threshold Overage Rental Amount" (as defined below in this Amendment) multiplied by the number of five (5) year periods of the Option Term which have elapsed, multiplied by the acreage of the Premises occupied by the mall site, then Tenant shall pay any such difference to Landlord within ninety (90) days after the end of each fifth year of the Option Term."

Landlord and Tenant acknowledge and agree that the "outparcels" described in the Ground Lease are no longer a part of the Premises leased under the Ground Lease. Accordingly, the Ground Lease is hereby amended in all respects necessary to provide that it shall no longer apply to such "outparcels." In furtherance of the foregoing, items (ii), (iii) and (iv) of Subsection 3(b) of the Ground Lease are hereby deleted in their entirety.

As used above, the "Minimum Threshold Overage Rental Amount" shall mean an amount equal to one percent (1%) of the per acre fair market value of the Premises as of the original Option Exercise Deadline, without extension.

4.    **Conditions to Effectiveness of Amendment**.

4.1    **Extension of Master Leases**. The effectiveness of this Amendment is subject to the condition, for the benefit of Tenant, that the Master Leases shall have been amended to provide for the extension of the terms thereof (or to provide for an option to extend the terms thereof) to no earlier than the expiration date of the Option Term (that is, July 14, 2067) (the "Master Leases Extensions"). In furtherance of the foregoing, Landlord hereby agrees to use Landlord's commercially reasonable best efforts to obtain extensions of the terms of the Master Leases (or options to extend the terms thereof) by no later than January 1, 2007 (the "Contingency Deadline") by (a) executing and having the Sing Master Lessor execute that certain Second Amendment to Lease attached hereto as Exhibit "B" and incorporated herein by this reference (the "Sing Lease Extension"), and (b) executing and having the Jordan Master Lessor execute that certain Agreement to Extend Lease attached hereto as Exhibit "C" and incorporated herein by this reference (the "Jordan Lease Extension"). In the event such Master Leases Extensions are not obtained by the Contingency Deadline, this Amendment shall terminate and be of no further force or effect whatsoever. Upon Landlord's receipt of the Master Leases Extensions, Landlord shall promptly provide written notice thereof, together with a true, correct and complete photocopy of the Sing Lease Extension and the Jordan Lease Extension to Tenant.

9

4.2    **Lenders' Consent to Extensions**. The effectiveness of this Amendment is subject to the condition that each of Landlord's lender(s) and Tenant's lender(s), in each case having a lien or other encumbrance on Landlord's or Tenant's interest in the Premises, respectively, consent to this Amendment and the Master Leases Extensions by no later than the Contingency Deadline. In the event the consent of all such lenders is not received by the Contingency Deadline, this Amendment shall terminate and be of no further force or effect whatsoever. Upon receipt of a party's lender's consent to this Amendment and the Master Leases Extensions, such party shall promptly provide written notice thereof, together with a copy of such consent, to the other party.

5.    **Notices**. Landlord and Tenant hereby agree that any notice, demand, request, consent, certificate, waiver and other communication to be given by one party to the other, either hereunder or under the Ground Lease, shall be given by personal service, express mail, Federal Express, DHL or any other form of nationally-recognized airborne/overnight delivery service, or mailing in the United States mail (certified mail, return receipt requested). In furtherance of the foregoing, Section 23 of the Ground Lease is hereby amended and restated to read in its entirety as follows:

"23.    Notices; Payment of Rent. All notices, demands, requests, consents, certificates, waivers and other communications from either party to the other shall be in writing and shall be given by personal service, express mail, Federal Express, DHL, or any other form of nationally-recognized airborne/overnight delivery service, or mailing in the United States mail (certified mail, return receipt requested), addressed as follows:

Landlord:

Tad's Land and Development Company, Inc. and
Gerald A. Tadlock
863 Bellamy Avenue
Murrells Inlet, SC 29576

Tenant:

Inlet Retail Associates, LLC
4199 Campus Drive, Suite 550
Irvine, CA 92612
Attn: Mr. Charles E. Fancher, Jr.

10

and to

Inlet Retail Associates LLC
4663 Kenmore Drive
Washington, D.C. 20007
Attn: Mr. Nathan P. Fishkin

or to such other address as the party to receive the notice, demand, request, consent, certificate, waiver or other communication may hereafter designate in writing to the other. All payments of rent hereunder shall be made to Landlord at the address from time to time designated as aforesaid for the giving of notice. All notices, demands, requests, consents, certificates, waivers and other communications shall be deemed to have been given (i) upon delivery, if personally delivered or delivered by any nationally-recognized form of airborne/overnight delivery service, or (ii) upon receipt or the expiration of three (3) business days, whichever is earlier, if mailed. Both parties agree that if the holder of any mortgage upon any leasehold interest therein notifies each or both of them in writing that such mortgage desires to receive copies of the notices, demands, requests, consents, certificates, waivers and other communications, the party or parties so notified shall, at the time it sends such document to the other party, send a copy of such document to such mortgagee in the manner specified above, addressed to the mortgagee at the address designated in writing by it."

6.    **Short Form of Amendment**. Concurrently with the execution of this Amendment, the parties shall execute a memorandum of this Amendment, in form suitable for recording, in the form attached hereto as Exhibit "A" and incorporated herein by this reference (the "Memorandum of Amendment"). Such Memorandum of Amendment shall be recorded in the R.M.C. Office for Horry County, South Carolina, promptly following the execution thereof.

7.    **Miscellaneous**. In the event there is any conflict or inconsistency between the terms and conditions of this Amendment and the terms and conditions of the Ground Lease, the terms and conditions of this Amendment shall govern and control the rights and obligations of the parties. Any term commencing with an initial capital letter which is not otherwise defined herein shall have the same meaning in this Amendment as such term has in the Ground Lease. This Amendment shall be

11

governed by and construed in accordance with the laws of the State of South Carolina. Except as modified herein, all other terms and conditions of the Ground Lease shall remain unmodified and in full force and effect. This Amendment shall be binding upon and shall inure to the benefit of the successors, assigns, heirs, legatees, devisees and personal representatives of the parties. This Amendment may be executed in counterparts, each of which shall constitute an original and all of which, together, shall constitute one and the same instrument. Facsimile signatures to this Amendment shall count the same as originals.

IN WITNESS WHEREOF, the parties have executed this Second Formal Amendment to Ground Lease as of the Effective Date.

LANDLORD:                          "Tad's Land"

                                   TAD'S LAND AND DEVELOPMENT
                                   COMPANY, INC., a South Carolina
                                   corporation

                                   By: _Gerald A. Tadlock_
                                   Gerald A. Tadlock, President

                                   "Tadlock"

                                   _Gerald A. Tadlock_
                                   GERALD A. TADLOCK, an individual

TENANT                             "Tenant"

                                   INLET RETAIL ASSOCIATES, LLC,
                                   a limited liability company

                                   By: _____
                                   Name: Charles E. Fancher Jr.
                                   Title: Manager Member

12

governed by and construed in accordance with the laws of the State of South Carolina Except as modified herein, all other terms and conditions of the Ground Lease shall remain unmodified and in full force and effect  This Amendment shall be binding upon and shall inure to the benefit of the successors, assigns, heirs, legatees, devisees and personal representatives of the parties.  This Amendment may be executed in counterparts, each of which shall constitute an original and all of which, together, shall constitute one and the same instrument.  Facsimile signatures to this Amendment shall count the same as originals.

IN WITNESS WHEREOF, the parties have executed this Second Formal Amendment to Ground Lease as of the Effective Date.

LANDLORD:               "Tad's Land"

                        TAD'S LAND AND DEVELOPMENT
                        COMPANY, INC , a South Carolina
                        corporation

                        By: _____
                            Gerald A. Tadlock, President

                        "Tadlock"

                        _____
                        GERALD A. TADLOCK, an individual

TENANT                  "Tenant"

                        INLET RETAIL ASSOCIATES, LLC,
                        a limited liability company

                        By _____
                        Name: Charles D. Faxxxxxxix
                        Title: Manager Member

12

STATE OF California )
                    ) ss.
COUNTY OF Orange )

On December 1, 2006 before me, Anne L Bettinger, the undersigned, a Notary Public, personally appeared Charles E Faxxxxxx personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal.



                                        Notary Public

                                        Anne L Bettinger
                                        Name (typed or printed)

STATE OF South Carolina )
                        ) ss.
COUNTY OF Georgetown )

On December 27th, 2006 before me, Tony P Grimes, the undersigned, a Notary Public, personally appeared Gerald A Tadlock, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                        Notary Public

                                        John P. Grimes
                                        Name (typed or printed)
                                        My Commission Expires
                                        11-04-2008

STATE OF California )
                    ) ss.
COUNTY OF Orange )

On December 1, 2006 before me, Anne L Bettinger the undersigned, a Notary Public, personally appeared Charles E Faxxxxxx personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

                                        Anne L Bettinger
                                        Notary Public

                                        Anne L Bettinger
                                        Name (typed or printed)

AFFIX SEAL (Impressed Seal Only)

STATE OF _____ )
                  ) ss.
COUNTY OF _____ )

On _____, 200_, before me, _____, the undersigned, a Notary Public, personally appeared _____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and offical seal

                                        Notary Public

                                        Name (typed or printed)

AFFIX SEAL (Impressed Seal Only)

EXHIBIT "A"

MEMORANDUM OF AMENDMENT

[TO COME]

A-1

STATE OF SOUTH CAROLINA )
                        )   MEMORANDUM OF LEASE AMENDMENT
COUNTY OF HORRY         )

THIS MEMORANDUM OF LEASE AMENDMENT (this "Memorandum") is entered into by and between TAD'S LAND AND DEVELOPMENT COMPANY, INC., a South Carolina corporation, and GERALD A. TADLOCK, an individual, on the one hand (collectively, "Landlord"), and INLET RETAIL ASSOCIATES, LLC, a South Carolina limited liability company ("Tenant"), on the other hand, in order to evidence that certain Second Formal Amendment to Ground Lease by and between the parties dated December 29, 2006, covering certain real property located in Horry County, South Carolina more fully described on Exhibit "A" attached hereto and incorporated herein by this reference (the "Premises").

1)   ORIGINAL LEASE.   Landlord and Tenant (as successor-in-interest by mesne assignments to (i) SC Fund Properties, L.P., a Delaware limited partnership, (ii) Inlet Square Properties, L.L.C., (iii) Metropolitan Life Insurance Company, and (iv) Coastal Limited Partnership, a South Carolina limited partnership) are parties to that certain Ground Lease dated January 21, 1988, a Memorandum of which was recorded in the R.M.C. Office for Horry County, South Carolina in Deed Book 1193, at Page 250 on January 21, 1988, as amended by that certain (a) Ground Lease Modification Agreement No. 1 dated November 4, 1988 (the "First Formal Amendment"), in connection with which a First Amended Memorandum of Lease dated November 4, 1988, was recorded in the R.M.C. Office for Horry County, South Carolina, in Book 1266, at page 695 on November 18, 1988, (b) Estoppel, Modification of Ground Lease and Clarification of Landlord's Non-Disturbance Agreement dated April 27, 1990 (the "Sing Estoppel"), (c) Estoppel Certificate and Second Clarification of Landlord's Non-Disturbance Agreement (the "Second Sing Estoppel"), (d) Estoppel and Clarification of Landlord's Non-Disturbance Agreement dated April 26, 1990 (the "Jordan Estoppel"), and (e) Estoppel Certificate and Second Clarification of Landlord's Non-Disturbance Agreement dated as of December, 1995 (the "Second Jordan Estoppel"). Such Ground Lease, as amended by the First Formal Amendment, the Sing Estoppel, the Second Sing Estoppel, the Jordan Estoppel and the Second Jordan Estoppel, is referred to herein as the "Ground Lease." Unless otherwise defined, all capitalized terms used herein shall have the meanings specified in the Ground Lease. Concurrently herewith, Landlord and Tenant have entered into that certain Second Formal Amendment to Ground Lease to provide for the granting to Tenant of an option to extend the term of the Ground Lease (the "Amendment"). Landlord and Tenant now desire to enter into and record this Memorandum to put the public on notice of Tenant's rights to extend the term of the Ground Lease and in certain other respects.

2)   EXTENSION OPTION.   Tenant shall have the right, at Tenant's option, to extend the term of the Ground Lease for one (1) option term of twenty (20) years (the "Option Term"), commencing on July 15, 2047 (the "Option Term Commencement Date"), and expiring on July 14, 2067, upon and subject to the terms and conditions set forth in the Amendment.

-1-

3)   NOTICES.   Any notice, demand, request or other instrument to be delivered by one party to the other under the Ground Lease or the Amendment shall be addressed as follows

If to Landlord:                  If to Tenant:

Tad's Land and Development       Inlet Retail Associates LLC
Company, Inc.                    4199 Campus Drive, Suite 550
863 Bellamy Avenue               Irvine, CA 92612
Murrells Inlet, SC 29576         Attn: Mr. Charles E. Fancher, Jr.

                                 and to

                                 Inlet Retail Associates, LLC
                                 4663 Kenmore Drive
                                 Washington, D.C. 20007
                                 Attn: Mr. Nathan P. Fishkin

4)   SUCCESSORS.   All rights and liabilities herein given to or imposed upon the parties hereto shall inure to the benefit of and be binding upon their respective heirs, executors, administrators, successors and assigns.

IN WITNESS WHEREOF, Landlord and Tenant have executed this Memorandum of Lease Amendment this _____ day of February, 2007.

WITNESS:                         "LANDLORD"

                                 TAD'S LAND AND DEVELOPMENT
                                 COMPANY, INC.
_____
First Witness

                                 By: _____
_____             Gerald A. Tadlock
Second Witness (Notary)
                                 Title: _____ President

* * * * * * * * *

-2-

STATE OF SOUTH CAROLINA )
                        )   ACKNOWLEDGMENT
COUNTY OF GEORGETOWN    )

THE DUE execution and delivery of the foregoing instrument was acknowl- edged before me this _____ day of _____, 2007 by TAD'S LAND AND DEVELOPMENT COMPANY, INC., by its duly authorized President, Gerald A. Tadlock.

_____
Notary Public for South Carolina
My Commission Expires:_____

WITNESS:                         "TENANT"

                                 INLET RETAIL ASSOCIATES, LLC,
                                 a South Carolina limited liability company
_____
First Witness

                                 By: _____
_____             Charles E. Fancher, Jr.,
Second Witness (Notary)              Manager

* * * * * * * * *

STATE OF CALIFORNIA  )
                     ) ss.
COUNTY OF ORANGE     )

On _____, 2007, before me, _____, personally appeared CHARLES E. FANCHER, JR., personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

                                 _____
                                          Notary Public

                                 _____
                                   Name (typed or printed)
[Notarial Seal]

-3-                              -4-

**EXHIBIT A**

See attached.

ALL AND SINGULAR, ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND WITH ANY IMPROVEMNETS THEREON; SITUATE, LYING AND BEING IN SOCASTEE TOWNSHIP, COUNTY OF HORRY, STATE OF SOUTH CAROLINA; BEING BOUNDED ON THE NORTH BY WATERS INVESTMENTS, INC. AND LONNIE B. JORDAN ET AL, ON THE EAST BY DOROTHY MASON JORDAN ET AL, EAST COAST PROPERTIES PARTNERSHIP, TAD'S LAND & DEVELOPMENT COMPANY, INC., CARRIE W. SING ET AL AND INLET CROSSING MANAGEMENT, ON THE SOUTH BY INLET CROSSING MANAGEMENT, RAYMOND E. CLEARY II, EAST COAST PROPERTIES PARTNERSHIP AND TADLOCK DRIVE (66' PRIVATE EASEMENT), ON THE WEST BY U.S. HIGHWAY 17 BYPASS (PUBLIC R/W VARIES) AND P & L ENTERPRISES OF MURRELLS INLET, LLC AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS

BEGINNING AT A PK NAIL FOUND, LOCATED ON THE EASTERN EDGE OF RIGHT-OF-WAY OF U.S. HIGHWAY 17 BYPASS (PUBLIC R/W VARIES), BEING THE NORTHWEST CORNER OF THE HEREIN DESCRIBED TRACT, HAVING A SOUTH CAROLINA STATE PLANE COORDINATE SYSTEM VALUE OF NORTHING=642,226.70 FEET EASTING=2,600,622.39 FEET NAD 1983(86); THENCE LEAVING SAID EASTERN EDGE OF RIGHT-OF-WAY OF U.S. HIGHWAY 17 BYPASS, ALONG THE LANDS OF WATERS INVESTMENTS, INC., ET AL, A BEARING OF S 86°05'08" E, A DISTANCE OF 493.15 FEET TO A 5/8" REBAR FOUND; THENCE A BEARING OF S 87°29'07" E, A DISTANCE OF 123.77 FEET TO A 5/8" REBAR FOUND; THENCE A BEARING OF S 86°50'03" E, A DISTANCE OF 43.64 FEET TO A 1/2" IRON PIPE FOUND; THENCE A BEARING OF S 84°14'44" E, A DISTANCE OF 436.60 FEET TO A 3/4" IRON PIPE FOUND; THENCE ALONG THE LANDS OF DOROTHY MASON JORDAN ET AL, A BEARING OF S 34°45'33" W, A DISTANCE OF 196.83 FEET TO A 5/8" REBAR FOUND; THENCE A BEARING OF S 58°09'55" E, A DISTANCE OF 465.70 FEET TO A 1/2" IRON PIPE FOUND; THENCE ALONG THE LANDS OF EAST COAST PROPERTIES PARTNERSHIP, A BEARING OF S 34°01'12" W, A DISTANCE OF 9.03 FEET TO A 5/8" REBAR FOUND; THENCE A BEARING OF S 58°07'20" E, A DISTANCE OF 30.88 FEET TO A 5/8" REBAR FOUND; THENCE ALONG A CURVE TO THE RIGHT, A CHORD BEARING OF S 22°03'59" E, A CHORD DISTANCE OF 118.83 FEET (DELTA=72°06'43", RADIUS=100.93 FEET, ARC=127.05 FEET) TO A 5/8" REBAR FOUND; THENCE ALONG THE LANDS OF TAD'S LAND & DEVELOPMENT COMPANY, INC., A BEARING OF S 13°59'23" W, A DISTANCE OF 52.03 FEET TO A 1/2" IRON PIPE FOUND; THENCE ALONG THE LANDS OF DOROTHY MASON JORDAN ET AL, A BEARING OF S 13°59'23" E, A DISTANCE OF 207.32 FEET TO A 5/8" REBAR FOUND; THENCE A BEARING OF S 41°38'18" E, A DISTANCE OF 44.17 FEET TO A 5/8" REBAR FOUND; THENCE A BEARING OF S 74°36'33" E, A DISTANCE OF 44.90 FEET TO A 5/8" REBAR FOUND; THENCE A BEARING OF N 63°13'45" E, A DISTANCE OF 56.54 FEET TO A PK NAIL SET; THENCE A BEARING OF S 18°25'27" W, A DISTANCE OF 130.58 FEET TO A PK NAIL SET; THENCE A BEARING OF N 48°43'46" W, A DISTANCE OF 43.48 FEET TO A 5/8" REBAR SET, THENCE A BEARING OF N 74°43'46" W, A DISTANCE OF 39.48 FEET TO A 5/8" REBAR FOUND; THENCE A BEARING OF S 70°35'18" W, A DISTANCE OF 43.63 FEET TO A PUNCH MARK FOUND; THENCE A BEARING OF S 13°58'18" W, A DISTANCE OF 109.19 FEET TO A PK NAIL SET; THENCE A BEARING OF S 58°58'18" W, A DISTANCE OF 129.99 FEET TO A POINT; THENCE A BEARING OF S 58°58'18" W, A DISTANCE OF 173.28 FEET TO A 1/2" IRON PIPE FOUND; THENCE A BEARING OF S 58°58'18" W, A DISTANCE OF 3.02 FEET TO A 1/2" IRON PIPE FOUND; THENCE ALONG THE LANDS OF CARRIE W. SING ET AL, A BEARING OF S 58°58'18" W, A DISTANCE OF 484.67 FEET TO A PK NAIL SET; THENCE A BEARING OF S 18°59'42" E, A DISTANCE OF 13.70 FEET TO A PK NAIL SET; THENCE ALONG THE LANDS OF INLET CROSSING MANAGEMENT, A BEARING OF S 53°31'18" W, A DISTANCE OF 162.01 FEET TO A 5/8" REBAR FOUND, THENCE A BEARING OF N 84°31'36" W, A DISTANCE OF 239.94 FEET TO A 5/8" REBAR FOUND, THENCE ALONG THE LANDS OF RAYMOND E. CLEARY II, A

BEARING OF N 84°34'25" W, A DISTANCE OF 351.64 FEET TO A 1/2" CRIMPED IRON PIPE FOUND; THENCE ALONG A CURVE TO THE RIGHT, A CHORD BEARING OF S 15°35'27" W, A CHORD DISTANCE OF 137.36 FEET (DELTA=02°42'48", RADIUS=2,900.79 FEET, ARC=137.38 FEET) TO A POINT; THENCE ALONG THE LANDS OF EAST COAST PROPERTIES PARTNERSHIP, ALONG A CURVE TO THE RIGHT, A CHORD BEARING OF S 17°47'59" W, A CHORD DISTANCE OF 86.30 FEET (DELTA=01°42'17", RADIUS=2900.79 FEET, ARC=86.31 FEET) TO A 5/8" REBAR FOUND; THENCE A BEARING OF S 18°34'18" W, A DISTANCE OF 73.98 FEET TO A 5/8" REBAR FOUND; THENCE ALONG A CURVE TO THE LEFT, A CHORD BEARING OF S 16°17'49" W, A CHORD DISTANCE OF 112.90 FEET (DELTA=04°38'02", RADIUS=1,396.39 FEET, ARC=112.93 FEET) TO A PK NAIL FOUND; THENCE A BEARING OF S 13°23'59" W, A DISTANCE OF 26.44 FEET TO A PK NAIL SET; THENCE ALONG THE NORTHERN MARGIN OF TADLOCK DRIVE (66' PRIVATE EASEMENT), ALONG A CURVE TO THE LEFT, A CHORD BEARING OF N 74°09'30" W, A CHORD DISTANCE OF 63.94 FEET (DELTA= 03°41'01", RADIUS=994.75 FEET, ARC=63.95 FEET) TO A 5/8" REBAR FOUND; THENCE A BEARING OF N 77°27'31" W, A DISTANCE OF 188.09 FEET TO A 1/2" CRIMPED IRON PIPE FOUND, LOCATED ON THE EASTERN EDGE OF RIGHT-OF-WAY OF U. S HIGHWAY 17 BYPASS (PUBLIC R/W VARIES), BEING THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT; THENCE CONTINUING ALONG SAID EASTERN EDGE OF RIGHT-OF-WAY OF U. S. HIGHWAY 17 BYPASS, A BEARING OF N 13°59'35" E, A DISTANCE OF 509.90 FEET TO A 1/2" CRIMPED IRON PIPE FOUND, THENCE LEAVING SAID EDGE OF RIGHT-OF-WAY, ALONG THE LANDS OF P & L ENTERPRISES OF MURRELLS INLET, LLC, A BEARING OF S 75°58'56" E, A DISTANCE OF 199.18 FEET TO A PK NAIL FOUND; THENCE A BEARING OF N 13°57'49" E, A DISTANCE OF 114.35 FEET TO A 1/2" IRON PIPE FOUND; THENCE ALONG A CURVE TO THE LEFT, A CHORD BEARING OF N 08°29'36" W, A CHORD DISTANCE OF 37.51 FEET (DELTA= 44°54'51, RADIUS=49.10 FEET,ARC=38.49 FEET) TO A PK NAIL FOUND; THENCE A BEARING OF N 30°57'02" W, A DISTANCE OF 260.90 FEET TO A 5/8" REBAR FOUND, LOCATED ON THE EASTERN EDGE OF RIGHT-OF-WAY OF U.S. HIGHWAY 17 BYPASS; THENCE CONTINUING ALONG SAID EASTERN EDGE OF RIGHT-OF-WAY OF U.S. HIGHWAY 17 BYPASS, A BEARING OF N 14°01'22" E, A DISTANCE OF 122.72 FEET TO A 5/8" REBAR FOUND, THENCE A BEARING OF N 76°00'59" W, A DISTANCE OF 50.00 FEET TO A 5/8" REBAR SET; THENCE A BEARING OF N 13°58'01" E, A DISTANCE OF 700.27 FEET TO A 5/8" REBAR FOUND; THENCE A BEARING OF S 76°08'01" E, A DISTANCE OF 9.82 FEET TO A 5/8" REBAR FOUND; THENCE A BEARING OF N 14°00'00" E, A DISTANCE OF 306.59 FEET TO A PK NAIL FOUND AND POINT OF BEGINNING AND CONTAINING 49.793 ACRES ± (2,168,993 S.F.±)

H:\Client Folders\Inlet Square Mall (04265)\Gen Rep (000)\Docs\Memorandum of Lease Amendment-2.doc

**EXHIBIT "B"**

**THE SING LEASE EXTENSION**

Book 3192 Page 27

FILED
COUNTY, S.C.

STATE OF SOUTH CAROLINA)
                        )  SECOND AMENDMENT TO LEASE
COUNTY OF HORRY         )
REGISTRAR OF DEEDS

THIS SECOND AMENDMENT to the Lease Agreement dated July 1, 1983, as amended by the Amendment of Lease Agreement dated September 15, 1987, is hereby made and entered into this 31st day of October 2006, between Charlie James Sing ("Lessor") and Gerald A. Tadlock ("Lessee").

WHEREAS, Charlie Sing, Carrie W. Sing, and Charlie James Sing collectively as lessor by Lease Agreement dated July 1, 1983 recorded at Deed Book 815, Page 249 in the office of the Clerk of Court of Horry County, South Carolina, leased to Kenneth D. Anderson, as lessee, those parcels of land in the State of South Carolina, County of Horry, as more particularly described in the Lease Agreement, and

WHEREAS, Kenneth D. Anderson, by Assignment of Lease dated January 15, 1987, recorded at Deed Book 1109, Page 738, in the aforesaid records, assigned his interest in the Lease Agreement to Gerald A. Tadlock, and

WHEREAS, Carrie W. Sing died on March 10, 1985, and her interest in the Lease Agreement was devised to Charlie Sing and Charlie James Sing, and

WHEREAS, Charlie Sing and Charlie James Sing, collectively, as lessors, and Gerald A. Tadlock, as lessee, (hereinafter the "Lessee") modified the Lease Agreement by Amendment of Lease Agreement dated September 15, 1987 recorded in Deed Book 1173, page 341, in the aforesaid records (as amended , hereinafter the "Sing Lease Agreement"), and

WHEREAS, Charlie Sing died on August 19, 2003 and his interest in the Sing Lease Agreement was devised to Charlie James Sing (hereinafter the "Lessor"), and

WHEREAS, the Sing Lease Agreement currently expires December 31, 2047, and the Lessee has requested that the Sing Lease Agreement be amended to provide for an option to extend the term of the Sing Lease Agreement to July 14, 2067 and the Lessor has agreed to grant such an option in consideration of an increase in rent under the Lease to $3,500.04 beginning November 1, 2006 subject to the covenants and conditions set forth herein.

NOW, THEREFORE in consideration of the sum of Ten and 00/100s ($10.00) Dollars and the mutual covenants and conditions set forth herein, the parties agree as follows:

1.    The term of the Sing Lease Agreement may be extended, at the option of the Lessee, for a period commencing on January 1, 2048 and terminating on July 14, 2067. Such option to extend shall be exercised by the Lessee by giving written notice to the Lessor not more than one hundred twenty (120) days nor less than ninety (90) days prior to the expiration of the existing term.

2.    The extended term shall be upon the same terms, covenants, and conditions of the Sing Lease Agreement.

3.    Rent shall be payable in the amount of $3,500.04 per month commencing November 1, 2006. The cost of living increase provided by Paragraph 4 of the Sing Lease Agreement shall take place on January 1, 2007 and continue each January thereafter during the term of the Lease and, if exercised, during the Option term.

4.    It is hereby agreed between the parties that the aforesaid Sing Lease Agreement shall be, and the same hereby is ratified, confirmed and adopted in all respects and all particulars as to each and every provision thereof except as to those provisions expressly amended as set forth herein; and it is further agreed that this document shall, and does hereby constitute a Second Amendment to the aforesaid Sing Lease Agreement with regard to the matters and things set forth herein

5.    This Option to Extend shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors, and assigns

IN WITNESS HEREOF, the undersigned have executed this Second Amendment to the Lease dated October, 2006.

Witnesses:                              Lessor:

_____                _____
_____                Charlie James Sing

STATE OF        )
                )
COUNTY OF       )                       PROBATE

PERSONALLY appeared before me, the undersigned witness who, being duly sworn, says that s/he saw the within named Charlie James Sing sign, seal, and as his act and deed deliver the within written instrument, and that s/he with the other subscribing witness, witnessed the execution thereof

                                        _____
                                        First Witness signs here

SWORN to before me this
7  day of December 2006
_____  (L.S.)
Notary Public

My Commission Expires: 11/14/08

---

IN WITNESS HEREOF, the undersigned have executed this Second Amendment to the Lease dated October, 2006

Witnesses:                              Lessee:

_____                _____
                                        Gerald A. Tadlock

STATE OF        )
                )
COUNTY OF       )                       PROBATE

PERSONALLY appeared before me, the undersigned witness who, being duly sworn, says that s/he saw the within named Gerald A. Tadlock sign, seal, and as his act and deed deliver the within written instrument, and that s/he with the other subscribing witness, witnessed the execution thereof.

                                        _____
                                        First Witness Signs here

SWORN to before me this
31 day of Oct    2006.
_____
Notary Public

My Commission expires: 11-04-2008

EXHIBIT "C"

THE JORDAN LEASE EXTENSION

11/30/2006  18:57    184352/∧∧∧Z

11/30/2006  18:57    18435275692

STATE OF SOUTH CAROLINA    )
                                              ) AGREEMENT TO EXTEND LEASE
COUNTY OF HORRY              )

THIS AGREEMENT is made this _9_ day of _Nov_, 2006, by and among Dorothy Mason Jordan, Manan J. Thomson, Connie J. Kolodrich and Steven T. Jordan, individually and Dorothy Mason Jordan and Steven T. Jordan, as Trustees under the Jim T. Jordan Trust under Item V of the Last Will and Testament of Jim T. Jordan dated December 17, 1996 (collectively "Lessors") and Tad's Land and Development Company, Inc., a South Carolina Corporation, ("Lessee").

WHEREAS, the Lessors entered into a "Lease Agreement" dated January 27, 1983, recorded in the Horry County R.M.C office in Deed Book 793 at Page 776, as amended by a "First Amendment to Lease Agreement" dated July 8, 1987, recorded in the Horry County R.M.C. office in Deed Book 1153 at page 201 (collectively "Jordan Lease Agreement") by which they have leased to the Lessee those parcels of land in the State of South Carolina, County of Horry, more particularly described in the Jordan Lease Agreement ("Leased Premises"); and,

WHEREAS, INLET RETAIL ASSOCIATES, LLC, a South Carolina limited liability company, as successor-in-interest to Coastal Limited Partnership ("Mall Tenant") is the subtenant of the Lessee under that certain Ground Lease dated January 21, 1988, as amended by that certain Ground Lease Modification Agreement No. 1 dated November 4, 1988; and,

WHEREAS, the Jordan Lease Agreement currently expires July 14th, 2047 and Lessors have agreed to grant to the Lessee an option to extend the term of the Jordan Lease Agreement, subject to the following terms and conditions.

THEREFORE, in consideration of the covenants and agreements contained herein and the further Sum of Ten and no/100 ($10.00) Dollars in hand paid to the Lessors by the Lessee at and before the sealing of these presents, the receipt and sufficiency of which is hereby acknowledged by the Lessors, the Lessors and Lessee covenant and agree as follows:

1. OPTION: The Lessors grant, bargain, sell and release to the Lessee an option and right to extend the term of the Jordan Lease Agreement from July 15th, 2047 to July 14th, 2067 (the "Option Term") subject to the following:

1a The Option Term shall be according to the exact terms and provisions of the Jordan Lease Agreement, except as hereinafter specifically set forth.

2a. The Option to extend may only be exercised upon the Lessee paying to the Lessor, the following scheduled payments (hereinafter "Option Payments")

$155,000.00 paid on or before January 15th, 2007,
$ 50,000.00 paid on or before July 15th of each year beginning 2007 through 201:;
$ 40,000.00 paid on or before July 15th of each year beginning 2012 through 2016;
$ 15,000.00 paid on or before July 15th of each year beginning 2017 through 2021;
$ 15,000.00 paid on or before July 15th of each year beginning 2022 through 2026;
$ 15,000.00 paid on or before July 15th of each year beginning 2027 through 2031;
$ 15,000.00 paid on or before July 15th of each year beginning 2032 through 2036;
$ 15,000.00 paid on or before July 15th of each year beginning 2037 through 2041;
$ 15,000.00 paid on or before July 15th of each year beginning 2042 through 2046.

2. RENT DURING OPTION PERIOD

2a. Beginning July 15, 2047, the annual rental shall be $500,000.00, beginning in July 15, 2052 and every five (5) years thereafter, the annual rent shall be increased ten percent (10%) over and above the annual rent payable during the previous five year period

2b. Subject to the right to cure set forth in Section 3 below, in the event the Lessee shall fails to pay to the Lessors any scheduled option payment when the same is due and payable, and such payment remains unpaid thirty days (30) after written notification is given to, and received by the Lessee at the address set forth below, TIME BEING OF THE ESSENCE WITH RESPECT TO THIS PROVISION, this Agreement and all of the rights, entitlements, obligations and liabilities owed to each of the parties under of this Agreement shall cease and terminate and this Agreement shall become null and void and have no force and effect. Until notified in writing by the Lessee of a different address, all notices required hereunder shall be sent to the Lessee at 863 Bellamy Dr., Murrells Inlet, SC 29576.

3. AGREEMENT TO PROVIDE NOTICE AND RIGHT TO CURE :  The Lessors covenant and agree that in the event Lessee fails to make any payment owed hereunder, or if Lessee fails to take any other action or takes any action that would result in the termination of this Agreement, then, prior to any termination of this Agreement or termination of the Jordan Lease Agreement, Lessors shall give written notice of such event to Mall Tenant at the address set forth below and shall allow Mall Tenant thirty (30) days after the date of receipt of such written notice to cure said event, TIME BEING OF THE ESSENCE WITH RESPECT TO THIS PROVISION. Until notified in writing by the Mall Tenant of a different address, all notices required hereunder shall be sent to the Mall Tenant as follows:

11/30/2006  18:57    184352/∧∧∧&/

11/30/2006  18:57    184352/∧∧∂∂

Inlet Retail Associates, LLC
4199 Campus Drive, Suite 550
Irvine, CA  92612
Attn: Charles E. Fancher, Jr

and to

Inlet Retail Associates LLC
4663 Kenmore Drive
Washington, D.C.  20007
Attn: Mr. Nate Fishkin

All notices and other communications required under this Agreement shall be sent by US Mail, Certified, Return Receipt Requested and shall be deemed to have been given upon receipt or the expiration of three (3) business days after mailing, whichever is earlier.

It is understood and agreed that Inlet Retail Associates, LLC is a third party beneficiary of this provision and is vested with the right to enforce the same

It is further understood and agreed that the notice requirements and thirty (30) day right to cure periods set forth in paragraphs 2b. and 3. above, may be given at the same time to the Lessee and Mall Tenant and the time periods for cure may run contemporaneously.

4. SEPARATE AGREEMENT  It is understood and agreed by and between the parties hereto this Agreement and the rights, entitlements, obligations and liabilities hereunder are separate and independent from the Jordan Lease Agreement and any default or non-performance hereunder will not affect the rights, entitlements, obligation and liabilities under the Jordan Lease Agreement. Further, it is understood and agreed by and between the parties hereto if the Jordan Lease Agreement is terminated for any reason, all rights, entitlements, obligations and liabilities hereunder are terminated.

This Agreement shall bind, and inure to the benefit of, the parties hereto and their respective heirs, successors and assigns.

This Agreement shall be governed by the laws of the State of South Carolina.

The headings and captions of the sections, paragraphs and subdivisions of this Agreement are for convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof. The use of one gender includes all genders.

IN WITNESS WHEREOF, the undersigned has executed this Agreement this _9th_ day of _Nov_, 2006.

Signed, Sealed and Delivered
in the Presence of:

_____            _Dorothy Mason Jordan_
First witness signs here                          Dorothy Mason Jordan, individually
                                                          and as Trustee, as aforesaid
_____
Notary, as second witness, signs here

* * * * * * * * *

STATE OF SOUTH CAROLINA    )
                                              )              PROBATE
COUNTY OF _Horry_           )

PERSONALLY appeared before me, the undersigned witness who, being duly sworn, says that s/he saw the within named DOROTHY MASON JORDAN, individually and as Trustee, sign, seal, and as her act and deed deliver the within written instrument, and that s/he with the other subscribing witness, witnessed the execution thereof.

                                                          _____
                                                          First witness signs here

SWORN to before me this
_9th_ day of _November_, 2006.

_____
Notary Public for South Carolina
My Commission Expires: _4/28/06_

IN WITNESS WHEREOF, the undersigned has executed this Agreement this _9th_ day of _Nov_, 200_6_

Signed, Sealed and Delivered
in the Presence of:

_____        _____
First witness signs here                    Marian J. Thomson

_____
Notary, as second witness, signs here

* * * * * * * * *

STATE OF SOUTH CAROLINA    )
                                                    )        PROBATE
COUNTY OF _Horry_              )

PERSONALLY appeared before me, the undersigned witness who, being duly sworn, says that s/he saw the within named MARIAN J. THOMSON sign, seal, and as her act and deed deliver the within written instrument, and that s/he with the other subscribing witness, witnessed the execution thereof.

_____
First witness signs here

SWORN to before me this
_9th_ day of _November_, 200_6_.
_____
Notary Public for South Carolina
My Commission Expires: _4/24/07_

---

IN WITNESS WHEREOF the undersigned has executed this Agreement this _9th_ day of _Nov_, 200_6_

Signed, Sealed and Delivered
in the Presence of

_____        _____
First witness signs here                    Steven T. Jordan, individually
                                                    and as Trustee, as aforesaid

_____
Notary, as second witness, signs here

* * * * * * * * *

STATE OF SOUTH CAROLINA    )
                                                    )        PROBATE
COUNTY OF _Horry_              )

PERSONALLY appeared before me, the undersigned witness who, being duly sworn, says that s/he saw the within named STEVEN T. JORDAN, individually and as Trustee, sign, seal, and as his act and deed deliver the within written instrument, and that s/he with the other subscribing witness, witnessed the execution thereof.

_____
First witness signs here

SWORN to before me this
_9_ day of _November_, 200_6_
_____
Notary Public for South Carolina
My Commission Expires: _4/24/06_

---

IN WITNESS WHEREOF, the undersigned has executed this Agreement this _9th_ day of _Nov_, 200_6_

Signed, Sealed and Delivered
in the Presence of:

_____        _____
First witness signs here                    Connie J. Koloditch

_____
Notary, as second witness, signs here

* * * * * * * * *

                SOUTH
STATE OF ~~NORTH~~ CAROLINA    )
                                                       )    ACKNOWLEDGMENT
COUNTY OF _HORRY_                )

Due execution of the foregoing instrument was acknowledged before me this _9th_ day of _November_, 200_6_ by CONNIE J. KOLODITCH.

_____
Notary Public for ~~North Carolina~~ South Carolina
My Commission Expires: _4/24/07_

(affix seal)

---

IN WITNESS WHEREOF, the undersigned has executed this Agreement this _31_ day of _Oct_, 200_6_

Signed, Sealed and Delivered
in the Presence of:

_____
First witness signs here

_____
Notary, as second witness, signs here

TAD'S LAND AND DEVELOPMENT
COMPANY, INC., a South Carolina
Corporation

_____
By Gerald A. Tadlock
Its President

* * * * * * * * *

STATE OF SOUTH CAROLINA    )
                                                    )        PROBATE
COUNTY OF _Georgetown_       )

PERSONALLY appeared before me, the undersigned witness who, being duly sworn, says that s/he saw the within named Gerald A. Tadlock, as President of Tad's Land and Development Company, Inc. sign, seal, and as his act and deed deliver the within written instrument, and that s/he with the other subscribing witness, witnessed the execution thereof

_____
First witness signs here

SWORN to before me this
_31_ day of _Oct_, 200_6_.
_____
Notary Public for South Carolina
My Commission Expires: _11-24-2008_

### SECOND FORMAL AMENDMENT TO GROUND LEASE

This SECOND FORMAL AMENDMENT TO GROUND LEASE (this "Amendment") is entered into as of December 28, 2006 (the "Effective Date"), by and between TAD'S LAND AND DEVELOPMENT COMPANY, INC., a South Carolina corporation ("Tad's Land"), and GERALD A. TADLOCK, an individual ("Tadlock"; together with Tad's Land, "Landlord"), on the one hand, and INLET RETAIL ASSOCIATES, LLC, a South Carolina limited liability company ("Tenant"), on the other hand, with reference to the following facts:

A.    Landlord and Tenant, as successor-in-interest by mesne assignments to (i) SC Fund VI Properties, L.P., a Delaware limited partnership, (ii) Inlet Square Properties, L.L.C., (iii) Metropolitan Life Insurance Company, and (iv) Coastal Limited Partnership, a South Carolina limited partnership, are parties to that certain Ground Lease dated January 21, 1988, a Memorandum of which was recorded in the R.M.C. Office for Horry County, South Carolina in Deed Book 1193, at Page 250 on January 21, 1988, as amended by that certain (a) Ground Lease Modification Agreement No. 1 dated November 4, 1988 (the "First Formal Amendment"), in connection with which a First Amended Memorandum of Lease dated November 4, 1988, was recorded in the R.M.C. Office for Horry County, South Carolina, in Book 1266, at page 695 on November 18, 1988, (b) Estoppel, Modification of Ground Lease and Clarification of Landlord's Non-Disturbance Agreement dated April 27, 1990 (the "Sing Estoppel"), (c) Estoppel Certificate and Second Clarification of Landlord's Non-Disturbance Agreement (the "Second Sing Estoppel"), (d) Estoppel and Clarification of Landlord's Non-Disturbance Agreement dated April 26, 1990 (the "Jordan Estoppel"), and (e) Estoppel Certificate and Second Clarification of Landlord's Non-Disturbance Agreement dated as of December, 1998 (the "Second Jordan Estoppel"). Such Ground Lease, as amended by the First Formal Amendment, the Sing Estoppel, the Second Sing Estoppel, the Jordan Estoppel and the Second Jordan Estoppel, is referred to herein as the "Ground Lease." Pursuant to the Ground Lease, Tenant leases certain real property located in Murrells Inlet, State of South Carolina, known as "Inlet Square Mall" (the "Premises").

B.    The Ground Lease is, in part, a sublease of Landlord's rights, as "Lessee," under that certain (i) Lease Agreement dated July 1, 1983, between Charlie Sing, an individual, Carrie W. Sing, an individual, and Charlie James Sing, an individual, on the one hand, as the "Lessor" thereunder, and Landlord, as successor-in-interest to Kenneth D. Anderson, as the "Lessee" thereunder, as the same has been amended by that certain (a) Amendment of Lease Agreement dated September 15, 1987, (b) Landlord's Non-Disturbance Agreement dated September 15, 1987, and (c) Estoppel Certificate and Agreement dated October 3, 2005 (as amended, the "Sing Master Lease"), and (ii) Lease Agreement dated January 27, 1983, between Jim T. Jordan, an individual, Dorothy

1

Mason Jordan, an individual, Marion J. Thomson, an individual, Connie J. Koloditch, an individual, and Steven T. Jordan, an individual, on the one hand, as the "Lessor" thereunder, and Tad's Land, on the other hand, as the "Lessee" thereunder, as the same has been amended by that certain (a) First Amendment of Lease Agreement dated July 8, 1987, (b) Landlord's Non-Disturbance Agreement dated September 18, 1987, and (c) Estoppel Certificate and Agreement dated October 3, 2005 (as amended, the "Jordan Master Lease"). Charlie James Sing, an individual (the "Sing Master Lessor"), is currently the sole "Lessor" under the Sing Master Lease, and Dorothy Mason Jordan and Steven T. Jordan, as Trustees under the Jim T Jordan Trust under Item V of the Last Will and Testament of Jim T. Jordan dated December 27, 1996, Dorothy Mason Jordan, an individual, Marion J. Thomson, an individual, Connie J. Koloditch, an individual, and Steven T. Jordan, an individual (collectively, the "Jordan Master Lessors"), are currently the sole "Lessors" under the Jordan Master Lease. The term of the Sing Master Lease currently expires on December 31, 2047, and the term of the Jordan Master Lease currently expires on July 14, 2047. The Sing Master Lease and the Jordan Master Lease are collectively referred to herein as the "Master Leases." The Sing Master Lessor and the Jordan Master Lessors are collectively referred to herein as the "Master Lessors."

C.    The term of the Ground Lease currently expires on July 14, 2047 (the "Original Term").

D.    Landlord and Tenant now desire to amend the Ground Lease to provide that Tenant shall have the option, but not the obligation, to extend the expiration date of the term of the Ground Lease to July 14, 2067, on the terms and conditions set forth herein (the "Extension Option").

NOW, THEREFORE, in consideration of the foregoing facts and the mutual covenants and conditions set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.    Extension Option.    Tenant shall have the right, at Tenant's option, to extend the term of the Ground Lease (that is, the Extension Option) for one (1) option term of twenty (20) years (the "Option Term"), commencing on July 15, 2047 (the "Option Term Commencement Date") and expiring on July 14, 2067, upon and subject to the terms and conditions set forth herein. Tenant shall have the right, but not the obligation, to exercise the Extension Option by delivering written notice thereof to Landlord in the manner specified in Section 5 below by no later than July 14, 2045, subject to extension as provided in this Amendment (the "Option Exercise Deadline"), stating that Tenant is exercising the Extension Option. Notwithstanding the foregoing, if for any reason the "Initial Base Rent Figure" (as defined in Section 3.1 below), or the

2

"Subsequent Base Rent Figure" (as defined in Section 3.2 below), as applicable, has not been determined prior to the Option Exercise Deadline, the Option Exercise Deadline shall be extended to a date ninety (90) days after the date the Initial Base Rent Figure or the Subsequent Base Rent Figure, as applicable, has been determined. In the event Tenant exercises the Extension Option, each of the terms, covenants and conditions of the Ground Lease (as amended by this Amendment and as may be further amended from time to time) shall apply during the Option Term as though the expiration date of the Option Term was the date originally set forth in the Ground Lease as the expiration date of the term thereof, except that the minimum rent and net overage rentals payable by Tenant to Landlord under the Ground Lease during the Option Term shall be determined in accordance with Section 3 below. Notwithstanding the foregoing, in the event Tenant fails to exercise the Extension Option by the Option Exercise Deadline, Landlord shall give Tenant notice thereof and Tenant shall have until thirty (30) days after Tenant's receipt of such notice to exercise the Extension Option. In no event shall the Extension Option terminate under this Section until Landlord has provided Tenant with the notice provided in the immediately preceding sentence and the foregoing thirty (30) day period has expired; provided, however, that the Extension Option shall terminate if for any reason the same has not been exercised by no later than the end of the Original Term.

2.    Extension Option Payments.    In consideration of Landlord granting to Tenant the Extension Option described above and in consideration for the Extension Option remaining in effect, and provided Landlord has obtained the "Master Leases Extensions" (also as defined in Section 4.1 below), Tenant shall be required to pay to Landlord on or before January 12, 2007, the sum of Five Hundred Thousand U.S. Dollars (U.S. $500,000.00) in immediately available federal funds (the "Initial Option Payment"), and (b) on July 15, 2007, and on each July 15 thereafter throughout the remainder of the Original Term (the last such payment to be made on July 15, 2046), annual payments of One Hundred Thousand U.S. Dollars (U.S. $100,000.00) in immediately available federal funds, for an aggregate of forty (40) annual payments of One Hundred Thousand U.S. Dollars (U.S. $100,000.00) each (collectively, the "Option Payments" and individually an "Option Payment"). Except as to the Initial Option Payment, if Tenant fails to make any Option Payment when due hereunder, Landlord shall notify Tenant thereof in writing at Tenant's then current address for notice purposes and in the manner set forth in Section 6 below, and Tenant shall have fifteen (15) days after Tenant's receipt of Landlord's notice to pay the same. If Tenant fails to make such Option Payment within the foregoing fifteen (15) day period, Tenant shall not be in default under the Ground Lease; however, the Extension Option shall automatically terminate and be of no further force or effect whatsoever.

3

Provided Landlord has obtained the Master Leases Extensions by no later than the Contingency Deadline, Tenant acknowledges and agrees that the Initial Option Payment has been earned by Landlord and shall be due and payable to Landlord by no later than January 12, 2007. Should Tenant fail to pay the Initial Option Payment to Landlord by no later than January 12, 2007, TIME BEING OF THE ESSENCE, the Extension Option shall terminate and be of no further force or effect whatsoever and, in addition, Tenant shall remain liable to Landlord for the Initial Option Payment plus all of Landlord's actual and reasonable costs and expenses of collecting the same, including reasonable attorneys' fees.

3.    Determination of Minimum Rent and Net Overage Rentals.

3.1    Determination of Initial Base Rent Figure.    On or before January 15, 2037, each of Landlord and Tenant shall submit to the other such party's determination of the "fair market rental value" (as described below) of the Premises as of July 15, 2037 (the "Initial Determination Date"). Landlord and Tenant shall thereafter meet and use their best good faith efforts to agree upon the fair market rental value of the Premises (as of the Initial Determination Date) by the Initial Determination Date. If either party fails to submit in writing to the other party its initial determination of the fair market rental value of the Premises by the later to occur of (i) the date sixty (60) days after such party's receipt of the other party's determination of the fair market rental value of the Premises as of the Initial Determination Date, or (ii) January 15, 2037, then the other party's submitted determination of fair market rental value shall be the fair market rental value of the Premises for purposes of this Section 3.1. If, by no later than the Initial Determination Date, Landlord and Tenant cannot agree on the fair market rental value of the Premises as of the Initial Determination Date, or the same is not otherwise determined in accordance with the foregoing provisions, the same shall be submitted to arbitration in accordance with the provisions of Section 3.5 below. The fair market rental value of the Premises as of the Initial Determination Date, as determined in accordance with this Section 3.1, is hereinafter referred to as the "Initial Base Rent Figure." As used in this Amendment, the term "fair market rental value" shall mean the rental rate per year at which, as of the applicable determination date, landlords are leasing raw land comparable in size, quality and location to the Premises (excluding all improvements on the Premises, it being acknowledged and agreed that there have been no improvements to the Premises made by Landlord), as if such comparable land were then made available for rent to the general public for the uses permitted under the Ground Lease, assuming, however, that such land is unencumbered by the Ground Lease or the Master Leases (or similar leases), for a term comparable to the Option Term, taking into consideration all monetary concessions being granted in connection with such comparable land including, without limitation, the following: (a) rental abatement concessions, (b) improvements or allowances being

4

given in connection with such comparable land, and (c) all other monetary concessions being granted in connection with such land.

3.2    <u>Redetermination of Base Rent Figure</u>.   Notwithstanding the provisions of Section 3.1 hereof, either Landlord or Tenant (as applicable, the "<u>Electing Party</u>") may, by providing written notice ("<u>Redetermination Notice</u>") to the other party by no earlier than July 15, 2043, and by no later than January 15, 2044, elect to have the Initial Base Rent Figure redetermined as of July 15, 2044.  The Electing Party shall submit with such party's Redetermination Notice, such Electing Party's determination of the fair market rental value of the Premises as of July 15, 2044 (the "<u>Subsequent Determination Date</u>").  Following the non-Electing Party's receipt of the Electing Party's Redetermination Notice and the Electing Party's determination of the fair market rental value of the Premises as of the Subsequent Determination Date, the non-Electing Party shall, by no later than the later to occur of (i) sixty (60) days after the non-Electing Party's receipt of the Redetermination Notice, or (ii) March 15, 2044, submit such non-Electing Party's determination of the fair market rental value of the Premises as of the Subsequent Determination Date.  Landlord and Tenant shall thereafter meet and use their best good faith efforts to agree upon the fair market rental value of the Premises (as of the Subsequent Determination Date) by no later than the Subsequent Determination Date.  If the non-Electing Party fails to submit its determination of the fair market rental value of the Premises as of the Subsequent Determination Date by the applicable date set forth in this Section 3.2, then the Electing Party's submitted determination of the fair market rental value of the Premises shall be the fair market rental value of the Premises for purposes of this Section 3.2.  If, by no later than the Subsequent Determination Date, Landlord and Tenant cannot agree on the fair market rental value of the Premises as of the Subsequent Determination Date, or the same is not otherwise determined in accordance with the foregoing provisions, the same shall be submitted to arbitration in accordance with Section 3.5 below.  The fair market rental value of the Premises as of the Subsequent Determination Date, as determined in accordance with this Section 3.2, is hereinafter referred to as the "<u>Subsequent Base Rent Figure</u>."

3.3    <u>CPI Increase in Base Rent Figure; Determination of Minimum Rent</u>.  The amount of the minimum rent payable by Tenant to Landlord during the Option Term shall be determined by multiplying the Initial Base Rent Figure determined in accordance with Section 3.1 above or, if an election is made pursuant to Section 3.2 above, the Subsequent Base Rent Figure determined in accordance with Section 3.2 above (as applicable, the "<u>Established Base Rent Figure</u>"), by a fraction, the denominator of which shall be the Consumer Price Index figure published for the month and year in which the applicable Determination Date occurs (the "<u>Base Index Number</u>"), as the case may be, and the numerator of which shall be the Consumer Price Index figure published for April, 2047 (the "<u>Current Index Number</u>"); provided, however, that notwithstanding any redetermination of the Initial Base Rent Figure

5

under Section 3.2 hereof and notwithstanding any such "Index" (as defined below) adjustment under this Section 3.3, in no event shall the minimum rent payable during the Option Term exceed one hundred thirty percent (130%) of the Initial Base Rent Figure determined in accordance with Section 3.1 above.  As used herein, the term "<u>Consumer Price Index</u>" or "<u>Index</u>" shall mean the Consumer Price Index For All Urban Consumers (South Region All Items) as published by the United States Department of Labor, Bureau of Labor Statistics (1982-1984=100).  If for any reason the minimum rent payable for the Option Term has not been determined prior to the Option Term Commencement Date, Tenant shall continue to pay minimum rent in the amount payable immediately prior to such date.  As soon as the minimum rent has been determined, Tenant shall thereafter pay minimum rent to Landlord in the amount so determined.  Should the minimum rent for the period following such adjustment date up to the date of determination exceed the amount previously paid by Tenant for such period, Tenant shall within fifteen (15) calendar days pay the difference to Landlord.  If the Consumer Price Index is discontinued or revised during the Term, such other government index or computation with which it is replaced shall be used in order to obtain substantially the same results as would be obtained if the Consumer Price Index had not been discontinued or revised.

3.4    <u>Determination of Per Acre Valuation of Premises</u>.  On or before January 15, 2045, each of Landlord and Tenant shall submit to the other such party's determination of the per acre valuation of the land comprising the Premises (excluding all improvements on the Premises, it being acknowledged and agreed that there have been no improvements to the Premises made by Landlord) as of the original Option Exercise Deadline without extension (the "<u>Per Acre Valuation</u>").  Landlord and Tenant shall thereafter meet and use their best good faith efforts to agree upon the Per Acre Valuation of the Premises by no later than the Option Exercise Deadline.  If either party fails to submit in writing to the other party its initial determination of the Per Acre Valuation of the Premises by the later to occur of (i) the date sixty (60) days after such party's receipt of the other party's determination of the Per Acre Valuation of the Premises, or (ii) January 15, 2045, then the other party's submitted determination of the Per Acre Valuation of the Premises shall be the Per Acre Valuation of the Premises for purposes of this Section 3.4.  If, by no later than the Option Exercise Deadline, Landlord and Tenant cannot agree on the Per Acre Valuation of the Premises as of the original Option Exercise Deadline, or the same is not otherwise determined in accordance with the foregoing provisions, the same shall be submitted to arbitration in accordance with the provisions of Section 3.5 below.

3.5    <u>Arbitration of Determination of Base Rent Figures/Per Acre Valuation</u>.  As provided above, Landlord and Tenant shall attempt to agree upon the applicable Base Rent Figure and Per Acre Valuation of the Premises using their best good faith efforts by the applicable determination date.  If Landlord and Tenant fail to

6

reach agreement by no later than the applicable determination date specified in Section 3.1 above, with respect to the determination of the Initial Base Rent Figure, Section 3.2 above, with respect to the determination of the Subsequent Base Rent Figure, or Section 3.4 above, with respect to the determination of the Per Acre Valuation of the Premises, then such determination shall be forthwith submitted to "Night Baseball" arbitration under the rules of the American Arbitration Association and in accordance with the following provisions:

(a)    Landlord and Tenant shall each appoint one arbitrator who shall by profession be a certified real estate appraiser who shall have been active over the five (5) year period ending on the date of such appointment in the appraisal of unimproved land in the South Strand area of Myrtle Beach.  Neither Landlord nor Tenant shall disclose to such arbitrators any party's (that is, either Landlord's or Tenant's) determination of the applicable Base Rent Figure or Per Acre Valuation.  The determination of the arbitrators shall be limited solely to the issue of what is the actual fair market rental value or Per Acre Valuation of the Premises, as applicable, taking into account the requirements of this Section 3 above.  Each arbitrator shall be appointed within thirty (30) days after the applicable determination date.

(b)    The two arbitrators so appointed shall within fifteen (15) days of the date of the appointment of the last appointed arbitrator agree upon and appoint a third arbitrator who shall be qualified under the same criteria set forth hereinabove for qualification of the initial two arbitrators.

(c)    The three arbitrators shall within thirty (30) days of the appointment of the third arbitrator reach a decision as to the actual fair market rental value or Per Acre Valuation of the Premises, as applicable, and shall notify Landlord and Tenant thereof.  The determination of the arbitrators shall be limited solely to the issue of what is the actual fair market rental value or Per Acre Valuation of the Premises, as applicable, taking into account the requirements of this Section 3 above.

(d)    The decision of the majority of the three arbitrators shall be binding upon Landlord and Tenant.

(e)    If either Landlord or Tenant fails to appoint an arbitrator within thirty (30) days after the applicable determination date, the arbitrator appointed by one of them shall reach a decision, notify Landlord and Tenant thereof, and such arbitrator's decision shall be binding upon Landlord and Tenant.

(f)    The party's determination of fair market rental value or Per Acre Valuation of the Premises that is closest to that determined by the arbitrators shall

7

be the fair market rental value or Per Acre Valuation of the Premises, as applicable, hereunder.

(g)    Landlord shall be responsible for the cost of the arbitrator appointed by Landlord, Tenant shall be responsible for the cost of the arbitrator appointed by Tenant, and Landlord and Tenant shall equally share the cost of the third arbitrator and all other costs of the arbitration proceeding.

3.6    <u>Net Overage Rentals</u>.  As of the Option Term Commencement Date, Section 3(b) of the Ground Lease is hereby amended to provide that (a) the minimum threshold amount set forth in clause (i) thereof (that is, $1,100), shall instead be an amount equal to one percent (1%) of the Per Acre Valuation of the Premises as of the original Option Exercise Deadline, without extension, and (b) the five-year periods described therein shall commence on the Option Term Commencement Date rather than the commencement of the Original Term.  In furtherance of the foregoing, as of the Option Term Commencement Date, Section 3(b) of the Ground Lease shall be amended and restated to read in its entirety as follows:

"(b)    In addition to the minimum rent referred to above, Tenant shall pay to Landlord as additional rent hereunder, twenty percent (20%) of net overage rentals (as hereinafter defined) received by Tenant from the mall constructed on the Premises, such net overage rentals to be determined on an annual basis for each lease year of the Option Term, hereinafter called the "percentage rent year."  Tenant shall submit to Landlord within ninety (90) days after the end of each percentage rent year, a report showing the amount of any net overage rentals certified or attested to by an officer of Tenant, and Tenant shall accompany said report with payment to Landlord of all percentage rent then due and owing.  Landlord may upon fifteen (15) days' written notice, examine Tenant's books and records for the purpose of verifying any statements submitted within one year prior to such inspection.  Any dispute between the parties as to the calculation of net overage rentals shall be determined by arbitration.

The term "net overage rentals" as used herein shall mean all rentals paid by tenants or lessees of Tenant occupying the aforesaid mall on the Premises in excess of the minimum annual rentals set forth in their leases, except that payments provided for common area maintenance costs, insurance premiums, real property taxes, security deposits, merchants' association, advertising and marketing contributions, sprinklering charges, music charges, energy, heating, ventilating and air-conditioning charges, and opening promotion fund contributions, and other similar charges shall be excluded from any such excess rentals.

8

B6B (Official Form 6B) (12/07)

In re _INLET RETAIL ASSOCIATES, LLC_ ,                    Case No. _____
                    Debtor(s)                                                  (if known)

# SCHEDULE B-PERSONAL PROPERTY

Except as directed below, list all property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G-Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N o n e | Description and Location of Property | Husband--H Wife--W Joint--J Community--C | Current Value of Debtor's Interest, in Property Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1.  Cash on hand. | X | | | |
| 2.  Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | *Bank Account- BOA* *Location: In debtor's possession* | | $ 310.00 |
| | | *Bank Account-Escrow Account (security deposits)-Wells Fargo* *- ino RAIT Partnership LP, Inlet Square Mall Escrow* *Location: Property Managers* | | $ 12,000.00 |
| | | *Bank Account-Rental Collection Account-BOA* *-ino RAIT Partnership-Inlet Square Mall RCA* *Location: Property Managers* | | Unknown |
| | | *Bank Account-Operating Account-BOA* *-ino Urban Retail Properties LLC,S/F Inlet Square Mall* *Location: Property Managers* | | $ 20,000.00 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | | *Security deposit - Water-Grand Strand* *Location: In debtor's possession* | | $ 7,870.48 |
| | | *Security deposit - Electricity-Santee Cooper* *Location: In debtor's possession* | | $ 62,200.00 |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |

B6B (Official Form 6B) (12/07)

In re _INLET RETAIL ASSOCIATES, LLC_____ ,    Case No. _____

           Debtor(s)                                                          (if known)

# SCHEDULE B-PERSONAL PROPERTY

(Continuation Sheet)

| Type of Property | None | Description and Location of Property | Husband--H Wife--W Joint--J Community--C | Current Value of Debtor's Interest, in Property Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 6.  Wearing apparel. | X | | | |
| 7.  Furs and jewelry. | X | | | |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.  Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interest in an education IRA as defined in 26 U.S.C. 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 16. Accounts Receivable. | | *Accounts Receivable* *-Tenant Rents (excluding current)* *Location: In debtor's possession* | | $ 167,026.76 |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 20. Contingent and non-contingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |

B6B (Official Form 6B) (12/07)

In re **INLET RETAIL ASSOCIATES, LLC** ,  Case No. _____

Debtor(s)                                                          (if known)

# SCHEDULE B-PERSONAL PROPERTY

(Continuation Sheet)

| Type of Property | N o n e | Description and Location of Property | Husband--H Wife--W Joint--J Community--C | Current Value of Debtor's Interest, in Property Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as described in 11 U.S.C. 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | *Computers, FF&E. See attached.* *Location: In debtor's possession* | | *TBD* |
| 29. Machinery, fixtures, equipment and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | | *Security Deposits-Tenants* *-See attached.* *Location: Property Managers* *Tenant Leases* *-See Schedule G* *Location: In debtor's possession* | | *$ 11,584.16* *Unknown* |

Page __3__ of __3__

Total ➡        $ 280,991.40

(Report total also on Summary of Schedules.)
Include amounts from any continuation sheets attached.

| Quantity | Description | Brand | Location |
|---|---|---|---|
| **Computer Items** | | | |
| 5 | Computer Monitors | Dell | Mall Office |
| 1 | Computer Monitor | NEC | Server Room |
| 1 | Computer Monitor (Server) | CTX | Server Room |
| 5 | CPU's | Dell | Reception |
| 1 | CPU | Compaq | Server Room |
| 1 | CPU (Server) | IBM | Server Room |
| 1 | Printer | HP 842C | Reception |
| 1 | Printer | HP 2110 | Marketing |
| 1 | Printer | HP 940 | GM Office |
| 1 | Printer | HP 2100 | Accounting |
| 1 | Printer | Epson | Server Room |
| 4 | Keyboards | Dell | Mall Office |
| 1 | Keyboard | Dell | Server Room |
| 1 | Keyboard | Compaq | Server Room |
| **Office Equipment** | | | |
| 1 | Fax Machine | Panasonic | Copier Room |
| 1 | Copier | Minolta | Copier Room |
| 1 | Scanner | Dell | Copier Room |
| 1 | Binder Machine | | Copier Room |
| 1 | Paper Cutter | | Copier Room |
| 1 | Safe | | GM Office |
| 3 | Safes | | Storage |
| 1 | Cash Register | Royal 425 CX | GM Office |
| 1 | Cash Register | Royal Alpha 580 | Front Desk |
| **Furniture** | | | |
| 2 | Blue Reception Chairs | | GM Office |
| 7 | Blue Conference Chairs w/wheels | | Mall Office |
| 6 | Piece Matching Reception Desk | | Storage |
| 1 | Conference Table | | Storage |
| 1 | Blue Formica Conference Table | | Mall Office |
| 3 | Desk Lamps | | Mall Office |
| 4 | High Chairs for Carts | | Storage |
| 2 | Wood Stands used for Dell Printer & Fax Machine | | Mall Office |
| 1 | Wood Stand | | Mall Office |
| 5 | Office Chairs | | Mall Office |
| 1 | Cherry Entertainment Center | | GM Office |
| 3 | Wooden Credenzas | | Mall Office |
| 5 | Wooden Office Desks | | Mall Office |
| 4 | Wooden Book Shelves | | Mall Office |
| 3 | Wooden Filing Cabinets | | Mall Office |
| 7 | Metal Filing Cabinets | | Mall Office |
| 2 | 24" X 24" Wooden Tables | | Mall Office |
| **Electronics** | | | |
| 1 | Patch Phone | | Security |
| 7 | Two-Way Radios (New) | | Security/HK |
| 2 | Two-Way Radios (Old) | | Security/HK |
| 1 | Television | | Storage |
| 1 | VCR | | Storage |
| **Maintenance/Exterior Items/Interior Items** | | | |
| 22 | Black Trashcans | | Mall Commons |
| 36 | Indoor Benches | | Mall Commons |
| 31 | Interior Flower Pots | | Mall Commons |

| | | |
|---|---|---|
| 8 | Kiddie Strollers | Food Court Entr. |
| 5 | Outdoor Trashcans | Exterior |
| 2 | Stationary Kiosks | Mall Commons |
| 32 | Round Food Court Tables | Food Court |
| 61 | Square Food Court Tables | Food Court |
| 270 | Food Court Chairs | Storage |
| 3 | Display Carts | Storage |
| 11 | Kiosk Carts | Storage |
| 3 | Kiosk (Wagon Wheel) | Storage |
| 11 | Meeting Room Tables | Meeting Room |
| 60 | Meeting Room Chairs | Meeting Room |
| 6 | Highchairs | Storage |
| 1 | Bunny Barn | Storage |
| 1 | Christmas Set | Storage |
| 1 | Rolling Scaffolding | Maintenance |
| 1 | Golf Cart | Maintenance |
| 1 | 12' Ladder | Maintenance |
| 2 | 8' Ladder | Maintenance |
| 1 | 6' Ladder | Maintenance |
| 19 | Stanchions | Storage |
| 1 | Wet Saw | Maintenance |
| 1 | Palm Sander | Maintenance |
| 1 | B&D Jigsaw | Maintenance |
| 1 | Bench Grinder | Maintenance |
| 1 | Protech Table Saw | Maintenance |
| 1 | Porter Cable 135 PSI Compressor | Maintenance |
| 1 | Ryobi Compound Miter Saw | Maintenance |
| 3 | B&D Circular Saw | Maintenance |
| 1 | Pair Bolt Cutters | Maintenance |
| 1 | Ryobi Charger | Maintenance |
| 1 | Ryobi Flashlight | Maintenance |
| 2 | Ryobi Batteries | Maintenance |
| 1 | 6 Gallon Shop Vac | Maintenance |
| 1 | 2 Gallon Shop Vac | Maintenance |
| 1 | 1 Gallon Shop Vac | Maintenance |
| 1 | Cardboard Compactor | Maintenance |
| 1 | 18v Ryobi Drill | Maintenance |
| 1 | Heat Gun | Maintenance |
| 2 | Hand Trucks | Maintenance |
| 1 | Workforce Vice | Maintenance |
| 1 | Halogen Work Light | Maintenance |
| 1 | Lufkin Measuring Wheel | Maintenance |
| 1 | Sheetrock Cart | Maintenance |
| 3 | Flat Carts | Maintenance |
| 1 | Kenmore Refrigerator | Maintenance |
| 1 | Microwave | Maintenance |
| 2 | Corridor Gates | Maintenance |
| 2 | Bike Racks | Maintenance |
| 12 | Iron Men | Storage |
| 1 | Wheel Barrow | Maintenance |

### Miscellaneous

| | | |
|---|---|---|
| 1 | Train | Storage |
| 1 | Shoe Rack | Soft Play |
| 1 | Soft Play consisting of 24 pieces (Apple, Ruler, Milk Carton, Spinner Wheel, crayons, sectionals, etc.) & 9 benches | Soft Play |
| 1 | CPR Bag w/dummies | Mall Office |

```
 8/15/08  URP2                              URBAN RETAIL PROPERTIES          ARLAD04J   AR5321-B  Page    1
11:47:27  QPADEV001L                      Aged Deposits Report by Lease     URP2       V040520   DUNNEP
                                                 Lease Summary
                                             As of August 17, 2008
```

Project  ISM/    Inlet Square Mall

| Lease | Operating As Name | Amount Outstanding | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days |
|-------|-------------------|-------------------:|--------:|------------:|-------------:|-------------:|-------------:|
| A1/WI// | A1 Wireless | 1,500.00- | | | | | 1,500.00- |
| BATSA1/ | Bath Saver USA | 250.00- | | | | | 250.00- |
| BONWO1/ | Bon Worth | 20.00- | | | | | 20.00- |
| CARTR2/ | Carolina Treats | 200.00- | | | | | 200.00- |
| CAT//1/ | Cato | 20.00- | | | | | 20.00- |
| COLBR// | Cole Brothers Circus, Inc. | 500.00- | | | | | 500.00- |
| COLTH// | Collect This & Raceway | 1,000.00- | | | | | 1,000.00- |
| DAVGI// | David Gill Artwork | 500.00- | | | | | 500.00- |
| DIPDO// | Dippin' Dots | 200.00- | | | | | 200.00- |
| FLAWO11 | Flaming Wok | 20.00- | | | | | 20.00- |
| JLCLE// | JLC Leasing | 250.00- | | | | | 250.00- |
| LADCH// | Ladies Choice Fitness | 3,615.83- | | | | | 3,615.83- |
| NOBJE// | Noble Jewelers | 1,000.00- | | | | | 1,000.00- |
| PRO//1/ | Protocol | 250.00- | | | | | 250.00- |
| SUPNA1/ | Super Nails | 1,258.33- | | | | | 1,258.33- |
| XCL//// | Xclusives | 1,000.00- | | | | 1,000.00- | |
| **Total  Inlet Square Mall** | | 11,584.16- | .00 | .00 | .00 | 1,000.00- | 10,584.16- |
| **Total** | | 11,584.16- | .00 | .00 | .00 | 1,000.00- | 10,584.16- |

End of report

B6D (Official Form 6D) (12/07)

In re <u>INLET RETAIL ASSOCIATES, LLC</u>                                    ,          Case No. _____
                         **Debtor(s)**                                                                                    **(if known)**

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured claims will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| Creditor's Name and Mailing Address Including ZIP Code and Account Number *(See Instructions Above.)* | Co-Debtor | Date Claim was Incurred, Nature of Lien, and Description and Market Value of Property Subject to Lien H--Husband W--Wife J--Joint C--Community | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, If Any |
|---|---|---|---|---|---|---|---|
| Account No: *Creditor # : 1* Baker Roofing Company 517 Mercury St Raleigh NC 27603 | | *Mechanics Lien f/Apr 15-17 '08 Ground Lease* <br><br> Value: *$ 0.00* | X | X | X | *$ 554,183.70* | *$ 554,183.70* |
| Account No: *Representing:* Baker Roofing Company | | *Thompson & Henry PA PO Box 129 Myrtle Beach SC 29578* <br><br> Value: | | | | | |
| Account No: *Creditor # : 2* Carolina Cooling & Plumbing c/o Scott B Umstead PA 4226 Mayfair St, Ste 100 Myrtle Beach SC 29577 | | *Mechanics Lien f/Feb 7, 2008 Ground Lease* <br><br> Value: *$ 0.00* | X | X | X | *$ 0.00* | *$ 0.00* |

<u>2</u>   continuation sheets attached

|  | Subtotal $ (Total of this page) | *$ 554,183.70* | *$ 554,183.70* |
|---|---|---|---|
|  | Total $ (Use only on last page) | | |
|  | | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data) |

B6D (Official Form 6D) (12/07) - Cont.

In re INLET RETAIL ASSOCIATES, LLC                                    ,          Case No._____
                    **Debtor(s)**                                                                      **(if known)**

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

(Continuation Sheet)

| Creditor's Name and Mailing Address Including ZIP Code and Account Number (See Instructions Above.) | Co-Debtor | Date Claim was Incurred, Nature of Lien, and Description and Market Value of Property Subject to Lien  H--Husband W--Wife J--Joint C--Community | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, If Any |
|---|---|---|---|---|---|---|---|
| Account No: **Creditor # : 3**  *Cupkovic Architecture LLC 1500 Hamilton Ave PO Box 1509 Cleveland OH 44114* | | *Mechanics Lien f/Mar 12 2008 Ground Lease*  Value: *$ 0.00* | X | X | | *$ 84,189.48* | *$ 84,189.48* |
| Account No:  *Representing: Cupkovic Architecture LLC* | | *Parker Poe Adams & Bernstein PO Box 1509 Columbia SC 29202*  Value: | | | | | |
| Account No: **Creditor # : 4**  *MB Kahn Construction Co., Inc. PO Box 1745 Conway SC 29526* | | *Mechanics Lien f/Jun 4 2008 Ground Lease*  Value: *$ 0.00* | X | X | | *$ 25,235.50* | *$ 25,235.50* |
| Account No:  *Representing: MB Kahn Construction Co., Inc.* | | *Thompson & Henry PA PO Box 1290 Myrtle Beach SC 29578*  Value: | | | | | |
| Account No: **Creditor # : 5**  *Precision Walls Inc. c/o Robinson McFadden Moore PO Box 944 Columbia SC 29292* | | *Mechanics Lien f/Dec 14 2007 Ground Lease*  Value: *$ 0.00* | X | X | | *$ 189,053.00* | *$ 189,053.00* |
| Account No: **Creditor # : 6**  *RAIT PARTNERSHIP, LP Attn: Mike Beatty 2929 Arch St, 17th Floor Philadelphia PA 19104* | | *Mortgage, UCCs Ground Lease, Ground Lease for Signs, Tenant Leases (plus all assets), Accounts Receivable,*  Value: *$ 280,991.40* | | | | *$ 18,667,377.00* | *$ 18,386,385.60* |

Sheet no. 1 of 2  continuation sheets attached to Schedule of Creditors
Holding Secured Claims

Subtotal $  *$ 18,965,854.98* | *$ 18,684,863.58*
(Total of this page)
**Total $**
(Use only on last page)

(Report also on Summary of Schedules.)

(If applicable, report also on Statistical Summary of Certain Liabilities and Related Data)

B6D (Official Form 6D) (12/07)   - Cont.

In re *INLET RETAIL ASSOCIATES, LLC*                          ,        Case No._____
                    **Debtor(s)**                                                      **(if known)**

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

(Continuation Sheet)

| Creditor's Name and Mailing Address Including ZIP Code and Account Number *(See Instructions Above.)* | Co-Debtor | Date Claim was Incurred, Nature of Lien, and Description and Market Value of Property Subject to Lien H--Husband W--Wife J--Joint C--Community | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, If Any |
|---|---|---|---|---|---|---|---|
| Account No:  *Creditor # : 7 Vratsinas Construction Company 1000 Abernathy Rd NE Georgetown SC 29442* | | *Mechanics Lien f/Jan 4 2008 Ground Lease*  <br>Value: *$ 0.00* | X | X | X | *$ 4,590,441.00* | *$ 4,590,441.00* |
| Account No:  *Representing: Vratsinas Construction Company* | | *Parker Poe Adams & Bernstein PO Box 1509 Columbia SC 29202*  <br>Value: | | | | | |
| Account No: | | Value: | | | | | |
| Account No: | | Value: | | | | | |
| Account No: | | Value: | | | | | |
| Account No: | | Value: | | | | | |

Sheet no. 2 of 2 continuation sheets attached to Schedule of Creditors Holding Secured Claims

Subtotal $ (Total of this page) *$ 4,590,441.00*   *$ 4,590,441.00*
Total $ (Use only on last page) *$ 24,110,479.68*  *$ 23,829,488.28*
(Report also on Summary of Schedules.) (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data)

B6E (Official Form 6E) (12/07)

In re _INLET RETAIL ASSOCIATES, LLC_____,    Case No._____
            **Debtor(s)**                                                              (if known)

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts NOT entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☒ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS**    (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic Support Obligations**
Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**
Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**
Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,950* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**
Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**
Claims of certain farmers and fishermen, up to $5,400* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**
Claims of individuals up to $2,425* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

☐ **Taxes and Certain Other Debts Owed to Governmental Units**
Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**
Claims based on commitments to FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

☐ **Claims for Death or Personal Injury While Debtor Was Intoxicated**
Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

*Amounts are subject to adjustment on April 1, 2010, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

**No continuation sheets attached**

B6F (Official Form 6F) (12/07)

In re _INLET RETAIL ASSOCIATES, LLC_____ ,         Case No._____
                  **Debtor(s)**                                                                      (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed.  R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three  columns.)

Report total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedules. Report this total also on the Summary of Schedules, and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| Creditor's Name, Mailing Address including Zip Code, And Account Number *(See instructions above.)* | Co-Debtor | H--Husband W--Wife J--Joint C--Community | Date Claim was Incurred, and Consideration for Claim. If Claim is Subject to Setoff, so State. | Contingent | Unliquidated | Disputed | Amount of Claim |
|---|---|---|---|---|---|---|---|
| Account No: | | | | X | X | X | *Unknown* |
| *Creditor # : 1* *Ann M Archer* *c/o William A Bryan* *PO Box 14860* *Myrtle Beach SC 29587* | | | *Negligence Lawsuit, pending* | | | | |
| Account No: | | | | | | | $ 4,234.44 |
| *Creditor # : 2* *Charles E Fancher, Jr.* *4199 Campus Drive, Ste 550* *Irvine CA 92612* | | | *Unreimbursed expenses* | | | | |
| Account No: | | | | | | | $ 129,333.00 |
| *Creditor # : 3* *Charles E Fancher, Jr.* *4199 Campus Drive, Ste 550* *Irvine CA 92612* | | | *Development Fees from 2007-Present* | | | | |
| Account No: | | | | X | | X | $ 0.00 |
| *Creditor # : 4* *Charlie James Sing* *134 North Alabama Ave* *Deland FL 32720* | | | | | | | |

_8_ continuation sheets attached                                                                  **Subtotal $** | $ 133,567.44

**Total $**
(Use only on last page of the completed Schedule F. Report also on Summary of Schedules
and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data)

B6F (Official Form 6F) (12/07)    - Cont.

In re _INLET RETAIL ASSOCIATES, LLC_____,    Case No._____
        **Debtor(s)**    (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| Creditor's Name, Mailing Address including Zip Code, And Account Number *(See instructions above.)* | Co-Debtor | H--Husband W--Wife J--Joint C--Community | Date Claim was Incurred, and Consideration for Claim. If Claim is Subject to Setoff, so State. | Contingent | Unliquidated | Disputed | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Account No:** *Representing:* Charlie James Sing | | | J Jackson Thomas Esq Thompson & Henry PA PO Box 1290 Myrtle Beach SC 29578 | | | | |
| **Account No:** Creditor # : 5 Claire's Boutiques, Inc. Att Rent Dept 3 Southwest 129th Ave Pembroke Pines FL 33027 | | | Tenant | | | | $ 0.00 |
| **Account No:** Creditor # : 6 Collect This & Raceway LLC 841 Kings River Rd Pawleys Island SC 29585 | | | Tenant | | | | $ 0.00 |
| **Account No:** Creditor # : 7 Corrado's Pizza Shoppes, Inc. PO Box 487 Broomall PA 19008 | | | Tenant | | | | $ 0.00 |
| **Account No:** Creditor # : 8 Cybergraph Advertising 610 N Person St Raleigh NC 27604 | | | | | | | $ 381.06 |
| **Account No:** Creditor # : 9 David Gill Artwork 704 8th Ave North Myrtle Beach SC 29578 | | | Tenant | X | X | X | $ 0.00 |

Sheet No. _1_ of _8_ continuation sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal $      $ 381.06

Total $

(Use only on last page of the completed Schedule F. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data)

B6F (Official Form 6F) (12/07)   - Cont.

In re _INLET RETAIL ASSOCIATES, LLC_____ ,        Case No. _____
         **Debtor(s)**                                                                        **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| Creditor's Name, Mailing Address including Zip Code, And Account Number (See instructions above.) | Co-Debtor | H--Husband W--Wife J--Joint C--Community | Date Claim was Incurred, and Consideration for Claim. If Claim is Subject to Setoff, so State. | Contingent | Unliquidated | Disputed | Amount of Claim |
|---|---|---|---|---|---|---|---|
| Account No: | | | | | | | $ 15,976.25 |
| Creditor # : 10 DDC Engineers Inc 1298 Professional Dr Myrtle Beach SC 29577 | | | | | | | |
| Account No: | | | | | | | $ 0.00 |
| Creditor # : 11 Dollar Tree Stores Inc 500 Volvo Parkway Chesapeake VA 23320 | | | Tenant | | | | |
| Account No: | | | | X | X | X | $ 0.00 |
| Creditor # : 12 Dorothy Mason Jordan Indiv, Trustee, JT JordanTrust 1405 Laurel St Conway SC 29526 | | | Part owner of portion of the land for the Ground Lease | | | | |
| Account No: | | | | | | | |
| Representing: Dorothy Mason Jordan | | | J Jackson Thomas Esq Thompson & Henry PA PO Box 1290 Myrtle Beach SC 29578 | | | | |
| Account No: | | | | | | | $ 1,117.66 |
| Creditor # : 13 Estate Management Services Inc 305 Indigo Dri Brunswick GA 31525 | | | | | | | |
| Account No: | | | | | | | $ 0.00 |
| Creditor # : 14 First Vending 1869 Best Dr Walled Lake MI 48390 | | | Tenant | | | | |

Sheet No.  **2**  of  **8**  continuation sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

**Subtotal $**    $ 17,093.91

**Total $**

(Use only on last page of the completed Schedule F. Report also on Summary of Schedules
and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data)

B6F (Official Form 6F) (12/07)    - Cont.

In re INLET RETAIL ASSOCIATES, LLC                              ,            Case No. _____
            **Debtor(s)**                                                                              (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| Creditor's Name, Mailing Address including Zip Code, And Account Number *(See instructions above.)* | Co-Debtor | H--Husband W--Wife J--Joint C--Community | Date Claim was Incurred, and Consideration for Claim. If Claim is Subject to Setoff, so State. | Contingent | Unliquidated | Disputed | Amount of Claim |
|---|---|---|---|---|---|---|---|
| Account No: Creditor # : 15 General Landscape Maintenance 119 Winding Creek Dr Pawleys Island SC 29585 | | | | | | | $ 18,750.00 |
| Account No: Creditor # : 16 Georgetown Communications 615 Front Street Georgetown SC 29442 | | | | | | | $ 145.04 |
| Account No: Creditor # : 17 Hallmark Specialty Retail Grp Jaydeep Inc/Jay's Hallmark 21520 Gl Yorbalinda Blvd #555 Yorba Linda CA 92887 | | | Tenant | | | | $ 0.00 |
| Account No: Creditor # : 18 Harvest Recovery Services for ECK Supply Co 794 Penllyn Pike #130 Blue Bell PA 19422 | | | | | | | $ 4,041.53 |
| Account No: Creditor # : 19 Inlet Printing Co POB 369 Murrells Inlet SC 29576 | | | | | | | $ 468.66 |
| Account No: Creditor # : 20 IPC International Corp 2111 Waukegan Rd Deerfield IL 60015 | | | Security Services | | | | $ 78,627.53 |

Sheet No. _3_ of _8_ continuation sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal $    $ 102,032.76

Total $

(Use only on last page of the completed Schedule F. Report also on Summary of Schedules
and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data)

B6F (Official Form 6F) (12/07)    - Cont.

In re  INLET RETAIL ASSOCIATES, LLC _____,    Case No. _____
         **Debtor(s)**                                                            (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| Creditor's Name, Mailing Address including Zip Code, And Account Number (See instructions above.) | Co-Debtor | H--Husband W--Wife J--Joint C--Community | Date Claim was Incurred, and Consideration for Claim. If Claim is Subject to Setoff, so State. | Contingent | Unliquidated | Disputed | Amount of Claim |
|---|---|---|---|---|---|---|---|
| Account No: <br> Creditor # : 21 <br> JC Penney Company Inc <br> Attn: Real Estate Dept <br> 6501 Legacy DR <br> Plano TX 75024 | | | Tenant | | | | $ 0.00 |
| Account No: <br> Creditor # : 22 <br> Jeffcoat Pike Nappier LLC <br> 2024 Corporate Centre Drive <br> Ste 206 <br> Myrtle Beach SC 29578 | | | | | | | $ 365.25 |
| Account No: <br> Creditor # : 23 <br> Jones Lang LaSalle <br> PO Box 95661 <br> Chicago IL 60694 | | | Mgmt Fees, Lease Commissions | | | | $ 185,612.85 |
| Account No: <br> Creditor # : 24 <br> K Mart Sears Holding Co <br> 3333 Beverly Rd <br> Hoffman Estates IL 60179 | | | Tenant | | | | $ 0.00 |
| Account No: <br> Creditor # : 25 <br> Ladies Choice Fitness Cntr <br> 606 Old Trolley Rd, Ste 10 <br> Summerville SC 29485 | | | Tenant | | | | $ 0.00 |
| Account No: <br> Creditor # : 26 <br> Linda Dreyfus,Ron Dreyfus <br> c/o McCutchen Mumford Vaught <br> 4610 Oleander Dr,Ste 203 <br> Myrtle Beach SC 29577 | | | Negligence lawsuit pending | X | X | X | Unknown |

Sheet No.  4  of   8  continuation sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal $     $ 185,978.10

Total $

(Use only on last page of the completed Schedule F. Report also on Summary of Schedules
and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data)

B6F (Official Form 6F) (12/07)   - Cont.

In re _INLET RETAIL ASSOCIATES, LLC_____ ,          Case No._____
                          **Debtor(s)**                                                                      **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| Creditor's Name, Mailing Address including Zip Code, And Account Number *(See instructions above.)* | Co-Debtor | H--Husband W--Wife J--Joint C--Community | Date Claim was Incurred, and Consideration for Claim. If Claim is Subject to Setoff, so State. | Contingent | Unliquidated | Disputed | Amount of Claim |
|---|---|---|---|---|---|---|---|
| Account No: <br> Creditor # : 27 <br> Mall Media <br> PMB 4416 <br> 250 H St <br> Blaine WA 98230 | | | | | | | $ 675.19 |
| Account No: <br> Creditor # : 28 <br> MeagMel Wishing Wells <br> 4499 Southwood Pl <br> Montclair VA 22025 | | | Tenant | | | | $ 0.00 |
| Account No: <br> Creditor # : 29 <br> Nathan P Fishkin <br> 4663 Kenmore Drive <br> Washington DC 20007 | | | Unreimbursed expenses | | | | $ 6,957.72 |
| Account No: <br> Creditor # : 30 <br> Nathan P Fishkin <br> 4663 Kenmore Drive <br> Washington DC 20007 | | | Development Fees from 2007-Present | | | | $ 129,333.00 |
| Account No: <br> Creditor # : 31 <br> Next Media Radio Operations <br> PO Box 643579 <br> Cincinnati OH 45264 | | | | | | | $ 1,881.00 |
| Account No: <br> Creditor # : 32 <br> Noble Jewelers <br> POB 8775 <br> Myrtle Beach SC 29578 | | | Tenant | | | | $ 0.00 |

Sheet No. _5_ of _8_ continuation sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal $    $ 138,846.91
Total $

(Use only on last page of the completed Schedule F. Report also on Summary of Schedules
and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data)

B6F (Official Form 6F) (12/07)   - Cont.

In re _INLET RETAIL ASSOCIATES, LLC_____,        Case No. _____
         **Debtor(s)**                                                                    (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| Creditor's Name, Mailing Address including Zip Code, And Account Number (See instructions above.) | Co-Debtor | H--Husband W--Wife J--Joint C--Community | Date Claim was Incurred, and Consideration for Claim. If Claim is Subject to Setoff, so State. | Contingent | Unliquidated | Disputed | Amount of Claim |
|---|---|---|---|---|---|---|---|
| Account No: *Creditor # : 33 Rack Room Shoes Attn Lease Admin 8310 Technology DR Charlotte NC 28262* | | | *Upfit allowances Tenant/Litigant* | X | X | X | *Unknown* |
| Account No: *Representing: Rack Room Shoes* | | | *Ellis Lesemann, Esq. Parker Poe Adams & Bernstein L 200 Meeting St, Ste 301 Charleston SC 29401* | | | | |
| Account No: *Creditor # : 34 Regal Cinemas, Inc. Inlet Square Cinemas 7132 Regal Ln Knoxville TN 37918* | | | *Tenant* | | | | *$ 0.00* |
| Account No: *Creditor # : 35 Regis Corp (MasterCuts) ATTN: Mall Real Estate Officer 7201 Metro Boulevard Minneapolis MN 55439* | | | *Tenant* | | | | *$ 0.00* |
| Account No: *Creditor # : 36 Service Management Systems POB 643768 Cincinnati OH 45264* | | | *Housekeeping Services* | | | | *$ 98,950.00* |
| Account No: *Creditor # : 37 SiteStuff Inc POB 671033 Bldg D, Ste 550 Dallas TX 75267* | | | | | | | *$ 3,115.45* |

Sheet No.  _6_ of  _8_ continuation sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal $    *$ 102,065.45*

Total $

(Use only on last page of the completed Schedule F. Report also on Summary of Schedules
and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data)

B6F (Official Form 6F) (12/07)    - Cont.

In re  INLET RETAIL ASSOCIATES, LLC                                    ,        Case No. _____
                    **Debtor(s)**                                                                                    (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| Creditor's Name, Mailing Address including Zip Code, And Account Number (See instructions above.) | Co-Debtor | H--Husband W--Wife J--Joint C--Community | Date Claim was Incurred, and Consideration for Claim. If Claim is Subject to Setoff, so State. | Contingent | Unliquidated | Disputed | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Account No:** Creditor # : 38 *Steven T Jordan* *c/o J Jackson Thomas Esq* *PO Box 1290* *Myrtle Beach SC 29578* | | | | X | | | $ 0.00 |
| **Account No:** Creditor # : 39 *Sun Publishing/Sun News* *914 Frontage Rd* *Myrtle Beach SC 29577* | | | | | | | $ 7,458.33 |
| **Account No:** Creditor # : 40 *The Cato Corp* *8100 Denmark Road* *Charlotte NC 28273-5975* | | | *Tenant* | | | | $ 0.00 |
| **Account No:** Creditor # : 41 *Theisen Vending Co* *2335 Nevada Ave North* *Golden Valley MN 55427* | | | *Tenant* | | | | $ 0.00 |
| **Account No:** Creditor # : 42 *Thorson Baker & Associates* *3030 West Streetsboro Road* *Richfield OH 44286* | | | | | | | $ 30,814.75 |
| **Account No:** Creditor # : 43 *Voss Cook & Thel LLP* *895 Dove Street, Ste 450* *Newport Beach CA 92660* | | | | | | | $ 49,824.01 |

Sheet No.  7  of  8  continuation sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal $        $ 88,097.09

Total $

(Use only on last page of the completed Schedule F. Report also on Summary of Schedules
and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data)

B6F (Official Form 6F) (12/07)   - Cont.

In re _INLET RETAIL ASSOCIATES, LLC_____,     Case No._____
                    **Debtor(s)**                                                              **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| Creditor's Name, Mailing Address including Zip Code, And Account Number *(See instructions above.)* | Co-Debtor | H--Husband W--Wife J--Joint C--Community | Date Claim was Incurred, and Consideration for Claim. If Claim is Subject to Setoff, so State. | Contingent | Unliquidated | Disputed | Amount of Claim |
|---|---|---|---|---|---|---|---|
| Account No:<br><br>*Creditor # : 44*<br>*We Sweep*<br>*PO Box 919*<br>*Pawleys Island SC 29585* | | | *Parking Lot Sweeping* | | | | $ 2,950.00 |
| Account No:<br><br>*Creditor # : 45*<br>*West C Street Holdings LLC*<br>*John Grimes, Esq.*<br>*1112 Highmarket St*<br>*Georgetown SC 29440* | | | *Part owner of portion of the land for the Ground Lease* | X | X | X | $ 0.00 |
| Account No: | | | | | | | |
| Account No: | | | | | | | |
| Account No: | | | | | | | |
| Account No: | | | | | | | |

Sheet No. _8_ of _8_ continuation sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| **Subtotal $** | $ 2,950.00 |
| **Total $**<br><span style="font-size:small">(Use only on last page of the completed Schedule F. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data)</span> | $ 771,012.72 |

B6G (Official Form 6G) (12/07)

In re _INLET RETAIL ASSOCIATES, LLC_ _____ / Debtor    Case No. _____

                                                                                                            (if known)

# SCHEDULE G-EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State the nature of debtor's interests in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name.  See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if the debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract. | Description of Contract or Lease and Nature of Debtor's Interest. State whether Lease is for Nonresidential Real Property. State Contract Number of any Government Contract. |
|---|---|
| _Bath & Body Works, Inc._<br>_Limited Real Estate Services_<br>_P.O. Box 182799_<br>_Columbus OH  43218_ | Contract Type:_Lease_<br>Terms:<br>Beginning date:<br>Debtor's Interest:_Landlord_<br>Description: _Tenant_<br><br>Buyout Option: |
| _Belks Store Jacksonville NC_<br>_2801 West Tyvola Rd_<br>_Charlotte NC  28217-4500_ | Contract Type:_Lease_<br>Terms:<br>Beginning date:<br>Debtor's Interest:_Landlord_<br>Description: _Tenant_<br><br>Buyout Option: |
| _Bon Worth Inc_<br>_40 Francis Rd_<br>_Hendersonville NC  28792_ | Contract Type:_Lease_<br>Terms:<br>Beginning date:<br>Debtor's Interest:<br>Description: _Tenant_<br><br>Buyout Option: |
| _Books-A-Million Inc_<br>_Attn: Tammy Mountain_<br>_402 Industrial Lane_<br>_Birmingham AL  35211_ | Contract Type:_Lease_<br>Terms:<br>Beginning date:<br>Debtor's Interest:_Landlord_<br>Description: _Tenant_<br><br>Buyout Option: |
| _Claire's Boutiques, Inc._<br>_Att Rent Dept_<br>_3 Southwest 129th Ave_<br>_Hollywood FL  33027_ | Contract Type:_Lease_<br>Terms:<br>Beginning date:<br>Debtor's Interest:_Landlord_<br>Description:<br><br>Buyout Option: |

B6G (Official Form 6G) (12/07)

In re _INLET RETAIL ASSOCIATES, LLC_ _____ / Debtor    Case No. _____

<div align="right">(if known)</div>

# SCHEDULE G-EXECUTORY CONTRACTS AND UNEXPIRED LEASES

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract. | Description of Contract or Lease and Nature of Debtor's Interest. State whether Lease is for Nonresidential Real Property. State Contract Number of any Government Contract. |
|---|---|
| **Collect This & Raceway LLC**<br>**841 Kings River Rd**<br>**Pawleys Island SC   29585** | Contract Type: **Lease**<br>Terms:<br>Beginning date:<br>Debtor's Interest: **Landlord**<br>Description:<br><br>Buyout Option: |
| **Corrado's Pizza Shoppes, Inc.**<br>**PO Box 487**<br>**Broomall PA   19008** | Contract Type: **Lease**<br>Terms:<br>Beginning date:<br>Debtor's Interest: **Landlord**<br>Description:<br><br>Buyout Option: |
| **David Gill Artwork**<br>**704 8th Ave North**<br>**Myrtle Beach SC   29578** | Contract Type: **Lease**<br>Terms:<br>Beginning date:<br>Debtor's Interest: **Landlord**<br>Description:<br><br>Buyout Option: |
| **Dollar Tree Stores Inc**<br>**500 Volvo Parkway**<br>**Chesapeake VA   23320** | Contract Type: **Lease**<br>Terms:<br>Beginning date:<br>Debtor's Interest: **Landlord**<br>Description:<br><br>Buyout Option: |
| **First Vending**<br>**1869 Best Dr**<br>**Walled Lake MI   48390** | Contract Type: **Lease**<br>Terms:<br>Beginning date:<br>Debtor's Interest: **Landlord**<br>Description: **Tenant**<br><br>Buyout Option: |
| **Hallmark Specialty Retail Grp**<br>**Jaydeep Inc/Jay's Hallmark**<br>**21520 G1 Yorbalinda Blvd #555**<br>**Yorba Linda CA   92887** | Contract Type: **Lease**<br>Terms:<br>Beginning date:<br>Debtor's Interest: **Landlord**<br>Description:<br><br>Buyout Option: |

B6G (Official Form 6G) (12/07)

In re *INLET RETAIL ASSOCIATES, LLC* _____ / Debtor     Case No. _____
                                                                              (if known)

# SCHEDULE G-EXECUTORY CONTRACTS AND UNEXPIRED LEASES

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract. | Description of Contract or Lease and Nature of Debtor's Interest. State whether Lease is for Nonresidential Real Property. State Contract Number of any Government Contract. |
|---|---|
| *JC Penney Company Inc Attn: Real Estate Dept 6501 Legacy DR Plano TX   75024* | Contract Type: *Lease*<br>Terms:<br>Beginning date:<br>Debtor's Interest: *Landlord*<br>Description:<br><br>Buyout Option: |
| *JLC Leasing Inc 6105 Yucca Dr Douglasville GA   30135* | Contract Type: *Lease*<br>Terms:<br>Beginning date:<br>Debtor's Interest: *Licensor*<br>Description: *Tenant  (Vending Machines)*<br><br>Buyout Option: |
| *K Mart Sears Holding Co 3333 Beverly Rd Hoffman Estates IL   60179* | Contract Type: *Lease*<br>Terms:<br>Beginning date:<br>Debtor's Interest: *Landlord*<br>Description:<br><br>Buyout Option: |
| *Ladies Choice Fitness Cntr 10055 Dorchester Road Summerville SC   29485* | Contract Type: *Lease*<br>Terms:<br>Beginning date:<br>Debtor's Interest: *Landlord*<br>Description:<br><br>Buyout Option: |
| *MeagMel Wishing Wells 4499 Southwood Pl Dumfries VA   22025* | Contract Type: *Lease*<br>Terms:<br>Beginning date:<br>Debtor's Interest: *Landlord*<br>Description:<br><br>Buyout Option: |
| *Noble Jewelers POB 8775 Myrtle Beach SC   29578* | Contract Type: *Lease*<br>Terms:<br>Beginning date:<br>Debtor's Interest: *Landlord*<br>Description:<br><br>Buyout Option: |

B6G (Official Form 6G) (12/07)

In re _INLET RETAIL ASSOCIATES, LLC_ _____ / Debtor    Case No. _____
                                                                                                    (if known)

# SCHEDULE G-EXECUTORY CONTRACTS AND UNEXPIRED LEASES

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract. | Description of Contract or Lease and Nature of Debtor's Interest. State whether Lease is for Nonresidential Real Property. State Contract Number of any Government Contract. |
|---|---|
| _Pepsi Cola Bottling_<br>_2380 Highway 501_<br>_Conway SC  29528_ | Contract Type: _Contract_<br>Terms:<br>Beginning date:<br>Debtor's Interest: _Licensor_<br>Description: _Tenant (Vending machines)_<br><br>Buyout Option: _N/a_ |
| _Protocol LLC_<br>_2110 Cheshire Way, Ste A_<br>_Greensboro NC  27405_ | Contract Type: _Lease_<br>Terms:<br>Beginning date:<br>Debtor's Interest:<br>Description: _Tenant_<br><br>Buyout Option: |
| _Rack Room Shoes_<br>_Attn Lease Admin_<br>_8310 Technology DR_<br>_Charlotte NC  28262_ | Contract Type: _Lease_<br>Terms:<br>Beginning date:<br>Debtor's Interest: _Landlord_<br>Description: _Tenant_<br><br>Buyout Option: |
| _Regal Cinemas, Inc._<br>_Inlet Square Cinemas_<br>_7132 Regal Ln_<br>_Knoxville TN  37918_ | Contract Type: _Lease_<br>Terms:<br>Beginning date:<br>Debtor's Interest: _Landlord_<br>Description:<br><br>Buyout Option: |
| _Regis Corp (MasterCuts)_<br>_ATTN: Mall Real Estate Officer_<br>_7201 Metro Boulevard_<br>_Minneapolis MN  55439_ | Contract Type: _Lease_<br>Terms:<br>Beginning date:<br>Debtor's Interest: _Landlord_<br>Description:<br><br>Buyout Option: |
| _Smartlite Company_<br>_1700 Main Street NE_<br>_Palm Bay FL  32905_ | Contract Type: _Lease_<br>Terms:<br>Beginning date:<br>Debtor's Interest: _Client_<br>Description: _Tenant (Advertising)_<br><br>Buyout Option: |

B6G (Official Form 6G) (12/07)

In re *INLET RETAIL ASSOCIATES, LLC* _____ / Debtor     Case No. _____

(if known)

# SCHEDULE G-EXECUTORY CONTRACTS AND UNEXPIRED LEASES

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract. | Description of Contract or Lease and Nature of Debtor's Interest. State whether Lease is for Nonresidential Real Property. State Contract Number of any Government Contract. |
|---|---|
| *Stein Mart, Inc.*<br>*1200 Riverplace Boulevard*<br>*Jacksonville FL  32207* | Contract Type: *Lease*<br>Terms:<br>Beginning date:<br>Debtor's Interest: *Landlord*<br>Description: *Tenant*<br><br>Buyout Option: |
| *Super Nails*<br>*3685 Kingsley Dr*<br>*Myrtle Beach SC  29588* | Contract Type: *Lease*<br>Terms:<br>Beginning date:<br>Debtor's Interest: *Landlord*<br>Description: *Tenant*<br><br>Buyout Option: |
| *Tads Land & Development Co.*<br>*Gerald A Tadlock*<br>*Rt 1 Box 23A*<br>*Murrells Inlet SC  29576* | Contract Type: *Land Lease*<br>Terms:<br>Beginning date:<br>Debtor's Interest: *Lessee*<br>Description: *Land Lessor*<br><br>Buyout Option: |
| *The Cato Corp*<br>*8100 Denmark Road*<br>*Charlotte NC  28273-5975* | Contract Type: *Lease*<br>Terms:<br>Beginning date:<br>Debtor's Interest: *Landlord*<br>Description:<br><br>Buyout Option: |
| *Theisen Vending Co*<br>*2335 Nevada Ave North*<br>*Minneapolis MN  55427* | Contract Type: *Lease*<br>Terms:<br>Beginning date:<br>Debtor's Interest: *Landlord*<br>Description: *Tenant. Provides children's rides/amusements*<br><br>Buyout Option: |
| *Urban Retail Properties Inc*<br>*900 North Michigan Avenue*<br>*Ste 900*<br>*Chicago IL  60611* | Contract Type: *Contract*<br>Terms:<br>Beginning date:<br>Debtor's Interest: *Owner Ground Leases*<br>Description: *Property Management Agreement*<br><br>Buyout Option: *N/a* |

B6G (Official Form 6G) (12/07)

In re _INLET RETAIL ASSOCIATES, LLC_____ / Debtor          Case No. _____

(if known)

# SCHEDULE G-EXECUTORY CONTRACTS AND UNEXPIRED LEASES

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract. | Description of Contract or Lease and Nature of Debtor's Interest. State whether Lease is for Nonresidential Real Property. State Contract Number of any Government Contract. |
|---|---|
| _West C Street Holdings LLC_<br>_John Grimes, Esq._<br>_1112 Highmarket St_<br>_Georgetown SC   29440_ | Contract Type: _Land Lease_<br>Terms:<br>Beginning date:<br>Debtor's Interest: _Lessee_<br>Description: _Land Lessor, Ground Lease, part owner._<br><br>Buyout Option: |

**B6H (Official Form 6H) (12/07)**

In re __*INLET RETAIL ASSOCIATES, LLC*_____ / Debtor        Case No. _____

                                                                                                        (if known)

# SCHEDULE H-CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by the debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preeceding the commencement of the case, identify the name of the debtors spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if the debtor has no codebtors.

| Name and Address of Codebtor | Name and Address of Creditor |
|---|---|
| | |

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

In re:    **INLET RETAIL ASSOCIATES, LLC**

Case No.

Chapter    **11**

# BUSINESS INCOME AND EXPENSES

FINANCIAL REVIEW OF THE DEBTOR'S BUSINESS (NOTE:  ONLY INCLUDE information directly related to the business operation.)

| | | |
|---|---|---:|
| PART A - GROSS BUSINESS INCOME FOR PREVIOUS 12 MONTHS: | | |
|    1.  Gross Income For 12 Months Prior to Filing: | | $  2,401,641.19 |
| | | |
| PART B - ESTIMATED AVERAGE FUTURE GROSS MONTHLY INCOME: | | |
|    2.  Gross Monthly Income: | | $  0.00 |
| | | |
| PART C - ESTIMATED FUTURE MONTHLY EXPENSES: | | |
|    3.  Net Employee Payroll (Other Than Debtor) | $  0.00 | |
|    4.  Payroll Taxes | 0.00 | |
|    5.  Unemployment Taxes | 0.00 | |
|    6.  Worker's Compensation | 0.00 | |
|    7.  Other Taxes | 0.00 | |
|    8.  Inventory Purchases (Including raw materials) | 0.00 | |
|    9.  Purchase of Feed/Fertilizer/Seed/Spray | 0.00 | |
|   10.  Rent (Other than debtor's principal residence) | 0.00 | |
|   11.  Utilities | 0.00 | |
|   12.  Office Expenses and Supplies | 0.00 | |
|   13.  Repairs and Maintenance | 0.00 | |
|   14.  Vehicle Expenses | 0.00 | |
|   15.  Travel and Entertainment | 0.00 | |
|   16.  Equipment Rental and Leases | 0.00 | |
|   17.  Legal/Accounting/Other Professional Fees | 0.00 | |
|   18.  Insurance | 0.00 | |
|   19.  Employee Benefits (e.g., pension, medical, etc.) | 0.00 | |
| | | |
|   20.  Payments to Be Made Directly By Debtor to Secured Creditors For | | |
|       Pre-Petition Business Debts (Specify): | | |
| | $  0.00 | |
| | 0.00 | |
| | 0.00 | |
|   21.  Other (Specify) | | |
|      **See attached for Budget.** | $  0.00 | |
| | 0.00 | |
| | 0.00 | |
|   22.  Total Monthly Expenses | | $  0.00 |
| | | |
| PART D - ESTIMATED AVERAGE  NET MONTHLY INCOME: | | |
| | | |
|   23.  AVERAGE NET MONTHLY INCOME (Subtract Item 22 from Item 2) | | $  0.00 |

| In re: Inlet Retail Associates, LLC | BUDGET |
|---|---|

**INCOME (Averages)**

| | |
|---|---|
| Rental Income | 207,066.31 |
| Temporary Tenant Income | 11,970.14 |
| Percentage Rent | 3,555.02 |
| Common Area Recovery | 17,634.39 |
| Real Estate Taxes Recovery | 3,217.95 |
| Utilities Recovery | 6,881.77 |
| Miscellaneous Income | 789.66 |
| **TOTAL INCOME** | **251,115.24** |

**EXPENSES (Averages)**

| | |
|---|---|
| Cleaning | -19,790.00 |
| Fire/Life Safety | 0.00 |
| Landscaping | -3,228.62 |
| Parking & Walkways | 0.00 |
| Trash Removal | -1,227.55 |
| Repairs & Maintenance | -250.00 |
| HVAC | -9,683.69 |
| General Building Services | -275.00 |
| Security | -22,464.21 |
| Utilities | -23,500.00 |
| Insurance | -12,361.92 |
| Professional, Contract Services | -43,598.00 |
| On Site Expense | -11,402.12 |
| Travel | -51.57 |
| Property Taxes | -18,702.17 |
| Management Fees | -12,500.00 |
| Leasing | -1,448.52 |
| Bad Debt Expense | 0.00 |
| **TOTAL EXPENSES** | **-180,483.37** |

| **NET OPERATING INCOME** | **70,631.87** |
|---|---|

| | |
|---|---|
| Interest Expense | 0.00 |
| Mortgage Principal | 0.00 |
| Ground Rent (Base Amount) | -45,000.00 |
| **SUBTOTAL** | **-45,000.00** |

| **OPERATING CASH FLOW** | **25,631.87** |
|---|---|

**OTHER EXPENSES**

| | |
|---|---|
| Net Marketing Fund | 1,985.36 |
| Depreciation & Amortization | 0.00 |
| Tenant Improvements | 0.00 |
| Capital Additions | 0.00 |
| Lease Commissions | 0.00 |
| Redevelopment Costs | 0.00 |
| Other Capital Costs | 0.00 |

| **FINAL CASH FLOW** | **27,617.23** |
|---|---|

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

In re: **INLET RETAIL ASSOCIATES, LLC,**
    **a South Carolina LLC**

Case No.

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m).

Questions 1-18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19-25. If the answer to an applicable question is "None," mark the box labeled "None." If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

"In business." A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within the six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor my also be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

"Insider." The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporation debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. §101.

---

### 1. Income from employment or operation of business

None ☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the two years immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| 2009: $467,261.96 | Operations 09 |
| 2008: $2,275,551.14 | Operations 08 |
| 2007: $3,414,911.69 | Operations 07 |

---

### 2. Income other than from employment or operation of business

None ☒

State the amount of income received by the debtor other than from employment, trade, profession, operation of the debtor's business during the two years immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

### 3. Payments to creditors

None ☒

Complete a. or b., as appropriate, and c.

a. Individual or joint debtor(s) with primarily consumer debts: List all payments on loans, installment purchases of goods or services, and other debts to any creditor, made within 90 days immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

None ☐

b. Debtor whose debts are not primarily consumer debts: List each payment or other transfer to any creditor made within 90 days immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,475. If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filingunder chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|
| *Horry County Treasurer-taxes* | *12.24.08* | *$211,702.71* | *$0.00* |
| *Nelson Mullins* | *Over 90 day time period* | *$7,533.17* | *See schedules* |
| *Rack Room Shoes* | *Credits for Monthly Rents due for Dec 08, Jan 09, Feb 09* | *$26,872.77 (applied against claim; this figure represents c. 4 months of rents)* | *See Schedule F* |
| *CNA Insurance* | *11/12/08 - 02/12/09* | *$96,231.60* | |
| *Braker Roofing* | *Over 90 day time period* | *$5,815.40* | |
| *Service Management* | *Over 90 day time period* | *$79,160.00* | |
| *Waste Management* | *Over 90 day time period* | *$4,739.86* | |
| *Santee Cooper* | *Over 90 day time period* | *$44,396.41* | |
| *Gerald A Tadlock* | *Over 90 day time period* | *$138,215.00* | |

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|
| *General Landscaping* | *Over 90 day time period* | $9,375.00 | |
| *Grand Strand* | *Over 90 day time period* | $7,998.91 | |
| *IPC* | *Over 90 day time period* | $88,967.19 | |
| *URP* | *Over 90 day time period* | $92,806.14 | |

None ☒  c. All debtors: List all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

---

## 4. Suits and administrative proceedings, executions, garnishments and attachments

None ☐  a. List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| *See attached.* | | | |
| *Rack Room Shoes, Inc. v. Inlet Retail Associates LLC 4:09-CV-494-RBH* | *Contract* | *US District Court, Florence Division* | *Pending. Complaint filed, served.* |

None ☒  b. Describe all property that has been attached, garnished or seized under any legal or equitable process within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

---

## 5. Repossessions, foreclosures and returns

None ☒  List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

## 6. Assignments and receiverships

None ☒   a. Describe any assignment of property for the benefit of creditors made within 120 days immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

None ☒   b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

## 7. Gifts

None ☒   List all gifts or charitable contributions made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

## 8. Losses

None ☒   List all losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case or since the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

## 9. Payments related to debt counseling or bankruptcy

None ☐   List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYER IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| *Ivan N. Nossokoff*<br>*1470 Tobias Gadson Blvd*<br>*Suite 107*<br>*Charleston, SC 29407* | *Date of Payment: July 2008*<br>*Payor: INLET RETAIL*<br>*ASSOCIATES, LLC* | *$35,000.00*<br>*(includes filing fees, expenses)* |
| *Voss, Cook & Thel LLP*<br>*895 Dove Street, Ste 450*<br>*Newport Beach CA 92660* | *Date of Payment:Will Provide*<br>*Payor:Debtor* | *Will Provide* |

## 10. Other transfers

None ☐   a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|
| *RAIT (lender)* | *March 21, 2008* | *Via Collateral Assignment of Management Agreement dated May 29, 2008, effective March 21, 2008, debtor assigned management rights to RAIT and to Urban as property managers (under Property Management and Leasing* |

Statement of Affairs - Page 4

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|
| | | *Agreement).* |

---

None ☒  b. List all property transferred by the debtor within ten years immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

---

**11. Closed financial accounts**

None ☒  List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within one year immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is  not  filed.)

---

**12. Safe deposit boxes**

None ☒  List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is  not  filed.)

---

**13. Setoffs**

None ☐  List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within 90 days preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not  filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|
| *Rack Room Shoes* | *Over 90 days* | *See above* |

---

**14. Property held for another person**

None ☐  List all property owned by another person that the  debtor  holds  or  controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|
| *Various Tenants* | *Description: Misc Assets Value: Unknown and N/A.* | *Mall* |

---

**15. Prior address of debtor**

None ☒  If the debtor has moved within three years immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address  of  either spouse.

---

**16. Spouses and Former Spouses**

None ☒  If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within eight years immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

## 17. Environmental Information

None ☒

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to disposal sites.

"Hazardous Material" means anything defined as hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar termunder an Environmental Law:

a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

None ☒

b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

None ☒

c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law, with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

## 18. Nature, location and name of business

None ☐

a. If the debtor is an individual, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case

If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses       in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within six years immediately preceding the commencment of this case.

If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses       in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencment of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|------|------|------|------|------|
| *Inlet Retail Associates, LLC dba Inlet Square Mall* | *TaxPayer ID: 59-3801582* | *See Petition* | *Operates Inlet Square Mall* | *c. 2005 - Present* |

None ☐

b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

NAME                                        ADDRESS

*Inlet Square Mall*                         *Murrells Inlet, SC*

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within six years immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor, or self-employed in a trade, profession, or other activity, either full- or part-time.

(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case.  A debtor who has not been in business within those six years should go directly to the signature page.)

## 19. Books, records and financial statements

None  a. List all bookkeepers and accountants who within two years immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of
☐    account and records of the debtor.

NAME AND ADDRESS                                                DATES SERVICES RENDERED

*Urban Retail Properties, LLC (property managers)*              *March 21, 2008 to*
                                                               *Present*

*Robert Harrington CPA*                                        *Dates: Jan 2006 to*
*196 Technology Dr, Ste E*                                     *Present*
*Irvine, CA 92618*

None  b. List all firms or individuals who within two years immediately preceding the filing of this bankruptcy case have audited the books of account and records, or
☒    prepared a financial statement of the debtor.

None  c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of
☐    the books of account and records are not available, explain.

NAME                                        ADDRESS

*Urban Retail Properties,*                  *See schedules*
*LLC*

None  d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within
☐    two years immediately preceding the commencement of this case.

NAME                    ADDRESS                    DATES ISSUED

*RAIT*                  *See schedules*            *Dates: XX*

## 20. Inventories

None  a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and
☒    basis of each inventory.

None  ☒  b. List the name and address of the person having possession of the records of each of the inventories reported in a., above.

---

**21. Current Partners, Officers, Directors and Shareholders**

None  ☒  a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

---

None  ☐  b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|
| *Charles E Fancher Jr* | *Manager* | *See Equity form* |
| *Nathan P Fishkin* | *Manager* | *See Equity form* |
| *Westminster Inlet, LLC* | *Member* | *See Equity form* |

---

**22. Former partners, officers, directors and shareholders**

None  ☒  a. If the debtor is a partnership, list each member who withdrew from the partnership within one year immediately preceding the commencement of this case.

---

None  ☒  b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within one year immediately preceding the commencement of this case.

---

**23. Withdrawals from a partnership or distribution by a corporation**

None  ☐  If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during one year immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| *See attached / Will Provide* | *Date:* *Purpose:* | *Amount:* *Description:* |

---

**24. Tax Consolidation Group.**

None  ☒  If the debtor is a corporation, list the name and federal taxpayer-identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within six years immediately preceeding the commencement of the case.

**25. Pension Funds.**

None ☒

If the debtor is not an individual, list the name and federal taxpayer-identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within six years immediately preceding the commencement of the case.

*[If completed on behalf of a partnership or corporation]*

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information, and belief.

Date _3/16/2009_____            Signature _/s/ Nathan P Fishkin_____

_Nathan P Fishkin_____    _Manager____
Print Name and Title

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

_____continuation sheets attached

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years or both, 18 U.S.C. §§ 152 and 3571.*

| Inlet Retail Associates, LLC - Cases | | | | |
|---|---|---|---|---|
| CAPTION OF SUIT | CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY & LOCATION | STATUS OR DISPOSITION |
| MB Kahn Construction Inv. V. Inlet Retail Associates, LLC, et al. | 2008CP26-4702 | Breach of contract, mech lien foreclosure | Common Pleas, Horry County | Pending (*Served per website*) |
| Carolina Cooling and Plumbing Inc. v. Wells Fargo Bank, NA, et al. | 2008CP26-3610 | Breach of contract, foreclosure mech lien | Common Pleas, Horry County | Pending |
| Vratsinas Construction Corporation dba VCC v. Inlet Retail Associates, LLC, et al. | 2008CP2602769 | Breach of contract, foreclosure mech lien, quantum meruit | Common Pleas, Horry County | Pending |
| Baker Roofing Company Inc. v. Inlet Retail Associates LLC, et al. | 2008CP26-4703 | Breach of contract, foreclosure mech lien | Common Pleas, Horry County | Pending (*Served per website*) |
| Ann M Archer v. Inlet Retail Associates LLC | 2008CP26-0732 | Negligence (*Premises liability per website*) | Common Pleas, Horry County | Pending (*Scheduling Conflict per website*) |
| Linda Dreyfus and Ron Dreyfus v. Inlet Retail Associates LLC et al. | 2008CP26-7373 | Premises liability | Common Pleas, Horry County | Pending |
| Cupkovic Architecture LLC v. Inlet Retail Associates LLC, et al. | 2008CP26-2948 | Breach of contract, foreclosure mech lien | Common Pleas, Horry County | Pending |
| Precision Walls Inc. v. Inlet Retail Associates LLC et al. | 2008CP26-1951 | Foreclosure mech lien | Common Pleas, Horry County | Pending |
| Inlet Retail Associates, LLC v. Inlet Nutrition et al. | 2006CP2602792 | Breach of contract | Common Pleas, Horry County | Judgment 6/15/07 |
| Carolina Cooling and Plumbing Inc. v. Wells Fargo Bank, NA, et al. | 2008CP2603620 (*note there is also a 3610 case above*) | Foreclosure | Common Pleas, Horry County | Dismissed per Rule 41(a) |
| Inlet Retail Associates, LLC v. Pita Rolz Inc. et al. | 2008CP2605080 | Breach of contract | Common Pleas, Horry County | Pending |
| Inlet Retail Associates, LLC v. Corrados Pizza Shoppes Inc. | 2008CP2609504 | Breach of contract | Common Pleas, Horry County | Pending |
| Inlet Retail Associates, LLC v. Sizzling Wok International Inc. et al. | 2008CP2609505 | Breach of contract | Common Pleas, Horry County | Pending |
| Precision Walls Inc. v. Inlet Retail Associates LLC et al. | 2008LP2600692 | Lis Pendens | Common Pleas, Horry County | Pending |
| Cupkovic Architecture LLC v. Inlet Retail Associates LLC, et al. | 2008LP2600756 | Lis Pendens | Common Pleas, Horry County | Pending |
| Vratsinas Construction Corporation dba VCC v. Inlet Retail Associates, LLC, et al. | 2008LP2600757 | Lis Pendens | Common Pleas, Horry County | Pending |
| Carolina Cooling and Plumbing Inc. v. Wells Fargo Bank, NA, et al. | 2008LP2601333 | Lis Pendens | Common Pleas, Horry County | Pending |
| MB Kahn Construction Inv. V. Inlet Retail Associates, LLC, et al. | 2008LP2601705 | Lis Pendens | Common Pleas, Horry County | Pending |
| Baker Roofing Company Inc. v. Inlet Retail Associates LLC, et al. | 2008LP2601706 | Lis Pendens | Common Pleas, Horry County | Pending |

# SMS asset list for Inlet Square Mall

Dell Computer
Lexmark All in one printer
16 Hp Hot water pressure washer
Advance Advenger riding floor machine
Roper washing machine
Roper dryer
4 Rubbermaid trash carts
Betco chemical dispensing system
Advance CMAX 34ST walk behind floor machine
3 maid carts
2 vacuum cleaners
4 gas cans
3 50' water hoses
Advance 30 gallon wet/dry vac

## IPC Property Inventory

| | | |
|---|---|---|
| 1.) | **(1) Golf Cart** | |
| 2.) | **(1) Computer CPU** | **IPC Asset Tag # 028538** |
| 3.) | **(1) KDS Computer Monitor** | **IPC Asset Tag # 028552** |
| 4.) | **(1) HP DeskJet Printer Model D2430** | **IPC Asset Tag # 028528** |
| 5.) | **(1) Insignia TV/DVD/VCR Combo** | |
| | **Model F20TR** | **SN T14726825** |
| 6.) | **(1) Black Fabric Desk Chair** | |
| 7.) | **(1) Small Double Pedestal Desk** | |
| 8.) | **Miscellaneous Uniform Inventory** | |

## Huey J. Cole
## Security Director Property List

1.) **(1) Dell Computer CPU**
2.) **(1) CTX 17" Monitor**
3.) **(1) Keyboard**
4.) **(1) Set Multimedia Speakers**
5.) **(1) Lexmark All in one Printer Model X5250**
6.) **(1) Fellows Paper Shredder Model SC5+**
7.) **(1) Small Refrigerator**
8.) **(1) Microwave**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

In re *INLET RETAIL ASSOCIATES, LLC,*
  *a South Carolina LLC*

Case No.
Chapter  *11*

_____ / Debtor

Attorney for Debtor:  **Ivan N. Nossokoff**

## LIST OF EQUITY SECURITY HOLDERS

| Number | Registered Name of Holder of Security | Number of Shares | Class of Shares, Kind of Interest |
|--------|---------------------------------------|------------------|-----------------------------------|
| *1* | *Charles E Fancher, Jr.*<br>*4199 Campus Drive, Ste 550*<br>*Irvine CA 92612* | | *10% Percentage Interest*<br>*25% Residual Percentage Interest* |
| *2* | *Nathan P Fishkin*<br>*4663 Kenmore Drive*<br>*Washington DC 20007* | | *10% Percentage Interest*<br>*25% Residual Percentage Interest* |
| *3* | *Westminster Inlet, LLC*<br>*9665 Wilshire Blvd*<br>*Suite M-10*<br>*Beverly Hills CA 90212* | | *80% Percentage Interest*<br>*50% Residual Percentage Interest* |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

LIST OF EQUITY SECURITY HOLDERS

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A CORPORATION

I, *Nathan P Fishkin*_____, *Manager*_____ of the *corporation*_____ named as

debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that they are true and correct to the best of my knowledge, information and belief.

Date: *3/16/2009*_____          Signature: */s/ Nathan P Fishkin*_____

                                    Name: *Nathan P Fishkin*
                                    Title: *Manager*

## EXHIBIT "B"

## Members; Percentage Interests

| Members | Percentage Interests | Residual Percentage Interests | Initial Capital Contribution Credit | Accrued Preferred Return Credit |
|---|---|---|---|---|
| Charles E. Fancher, Jr., as a Class A Member 4199 Campus Drive, Suite 550 Irvine Ca, 92612 | 10% | 25% | $247,500 | $2,755.59 |
| Nathan P. Fishkin, as a Class A Member 4663 Kenmore Drive Washington, D.C. 20007 | 10% | 25% | $247,500 | $68,631.01 |
| Westminster Inlet, LLC, a Delaware limited liability company | 80% | 50% | $1,980,000 | Ø |
| | 100% | 100% | $2,475,000 | $71,386.60 |

B-1

Form B203 Disclosure of Compensation of Attorney for Debtor (12/94)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

In re *INLET RETAIL ASSOCIATES, LLC, a South Carolina LLC*

Case No.
Chapter    *11*

# DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

1. Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

For legal services, I have agreed to accept . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____*35,000.00*_____

Prior to the filing of this statement I have received . . . . . . . . . . . . . . . . . . . . . . . .$ _____*35,000.00*_____

Balance Due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ _____*0.00*_____

2. The source of the compensation paid to me was:
   ☒ Debtor        ☐ Other (specify)

3. The source of compensation to be paid to me is:
   ☒ Debtor        ☐ Other (specify)

4. ☒  I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐  I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

   b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;

   c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearing thereof;

   d.  Representation of the debtor in adversary proceedings and other contested bankruptcy matters;

   e.  [Other provisions as needed].

   *All data and valuations provided by debtor. No guarantees or warranties as to case outcome. Hourly rate: $360 plus costs. After prepetition earned fees and*

Form B203 Page Two - Disclosure of Compensation of Attorney for Debtor (12/94)

*costs, the approximate retainer balance remaining is c. $8500.00. Counsel reserves the right to withdraw in the event additional fees are not paid when bills are rendered or representation agreement is not approved by the court. Excluded from services are: representation in state or federal lawsuits, adversary proceedings, tax court, labor law matters, tax advice.*

6.    By agreement with the debtor(s), the above-disclosed fee does not include the following services:

   *None*

---

# CERTIFICATION

   I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.


3/16/2009                                    /s/ Ivan N. Nossokoff
_____                          _____
Date                                         Signature of Attorney


                                             Ivan N. Nossokoff, LLC
                                             _____
                                             Name of Law Firm

Rule 2016(b) (8/91)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

In re   *INLET RETAIL ASSOCIATES, LLC, a South Carolina LLC*

Case No.

Chapter *11*

_____ / Debtor

Attorney for Debtor:   *Ivan N. Nossokoff*

# STATEMENT PURSUANT TO RULE 2016(B)

The undersigned, pursuant to Rule 2016(b), Bankruptcy Rules, states that:

1. The undersigned is the attorney for the debtor(s) in this case.

2. The compensation paid or agreed to be paid by the debtor(s), to the undersigned is:
   a) For legal services rendered or to be rendered in contemplation of and in connection with this case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____*35,000.00*
   b) Prior to the filing of this statement, debtor(s) have paid . . . . . . . . . . . . . . $_____*35,000.00*
   c) The unpaid balance due and payable is . . . . . . . . . . . . . . . . . . . . . . . . . $_____*0.00*

3. $_____*1,039.00*_____of the filing fee in this case has been paid.

4. The Services rendered or to be rendered include the following:
   a) Analysis of the financial situation, and rendering advice and assistance to the debtor(s) in determining whether to file a petition under title 11 of the United States Code.
   b) Preparation and filing of the petition, schedules, statement of financial affairs and other documents required by the court.
   c) Representation of the debtor(s) at the meeting of creditors.

5. The source of payments made by the debtor(s) to the undersigned was from earnings, wages and compensation for services performed, and
   *None other*

6. The source of payments to be made by the debtor(s) to the undersigned for the unpaid balance remaining, if any, will be from earnings, wages and compensation for services performed, and
   *None other*

7. The undersigned has received no transfer, assignment or pledge of property from debtor(s) except the following for the value stated:
   *None*

8. The undersigned has not shared or agreed to share with any other entity, other than with members of undersigned's law firm, any compensation paid or to be paid except as follows:
   *None*

Dated: *3/16/2009*                          Respectfully submitted,

                              X */s/ Ivan N. Nossokoff*_____
Attorney for Petitioner: *Ivan N. Nossokoff*
                         *Ivan N. Nossokoff, LLC*
                         *1470 Tobias Gadson Blvd*
                         *Suite 107*
                         *Charleston SC  29407*
                         *843-571-5442*