**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: ) | Case No. 09-02083-jw |
| ) | Chapter 11 |
| **INLET RETAIL ASSOCIATES, LLC,** ) | |
| ) | |
| **Debtor.** ) | |

**PLAN OF REORGANIZATION BY DEBTOR IN POSSESSION**

The Debtor proposes the following Plan of Reorganization pursuant to Chapter 11 of the United States Bankruptcy Code, 11 USC § 1101, et seq. (the "Code").

1. **DEFINITIONS.**

In addition to the definitions provided in the Code, the following definitions are applicable to this Plan:

**ACCEPTANCE.**  A specific class of claims has accepted the Plan when it has been approved by those voting individual creditors in that class that hold at least two-thirds (2/3) in amount ($'s) and more than one-half (l/2) in number (greater than 50%) of the voting individual allowed claims of that class of creditors.  A class of interests has accepted the Plan if it is approved by equity holders holding at least two-thirds [2/3 in amount of the allowed interests of such class held by equity holders of such interest (i.e., number of shares held by shareholders or partners)] that have voted in confirmation of such Plan.  It is important to note that computation in the confirmation voting process is based upon the total amount of claims actually voting, rather than on claims proven and allowed. Notwithstanding any other provision of this section, any class that is unimpaired under this Plan is deemed by law to have accepted this Plan, and solicitation of acceptances with respect to such class is not otherwise required.

**ADMINISTRATIVE EXPENSE CLAIM.**  Any claim or expense arising or accruing on or after the filing date, which is entitled to priority under § 503(b) and § 507(a)(2) of the Code, including without limitation, all expenses of administration. The Debtor will move the Court to set a deadline date for the filing of Administrative Claims in this case, which date shall not be later than thirty (30) days after confirmation of the Plan.

**ADVANCES.**  Payments made other than by the Debtor directly to the Debtor or to another party which ultimately benefit the Debtor's operating status, including but not limited to payments under guarantees by an obligation primarily of the Debtor.

**ALLOWED AMOUNT.**  The amount of a claim that has been allowed by a final order; or the amount of a claim timely filed with the Clerk of the Court or that is listed by the Debtor in its schedules filed with the Bankruptcy Court (as they may be amended or supplemented) as undisputed, non-contingent or liquidated, as to which claim (i) no objection to the allowance of which has been interposed within any period of limitation fixed by the Code, the Bankruptcy Rules or final order, or (ii) an objection has been interposed and the amount of the claim has been determined by a final order; or the amount of an administrative claim (i) as to which no objection has been interposed within any period of limitation fixed by the Court, applicable Bankruptcy Rules or final order, or (ii) as to which an objection has been interposed and the amount of the claim has been determined by a final order, or (iii) with respect to fees and expenses of professional persons, the amount of such fees and expenses as allowed by a final order.

**ALLOWED CLAIM.**  Each creditor's claim or claim of interest whose validity is accepted by the Debtor for payment or, if challenged by the Debtor, a claim which is ultimately proved by that claimant and approved by a final Order of the Court after notice.

**THE BUSINESS.**   The Debtor's business operations (regardless of title, filings or other indicia of ownership).

**BANKRUPTCY CODE or CODE**. The Bankruptcy Reform Act of 1978, as amended (11 U.S.C. § 101, et seq.).

**BANKRUPTCY RULES  or RULES**. The Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court that became effective on August 1, 1991, as amended.  To the extent applicable, Bankruptcy Rules also means the Local Rules of the U.S. District Court for the District of South Carolina, as amended and the Local Bankruptcy Rules for the District of South Carolina, as amended.

**THE CASE.**  This proceeding under Chapter 11.

**CHAPTER 7.**  A hypothetical case which is administered under 11 USC § 701, et seq., whereby an estate, identical to that of the Debtor, has its assets liquidated.

**CHAPTER 11.**  A case being administered under 11 USC § 1101, et seq., for the reorganization of the indebtedness of the Debtor.

**CLAIM.**  A right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**CLASS.**  One or more holders of claims or interests, which are substantially similar to one another, as classified pursuant to the Plan.

**COMMITTEE**. An Official Committee of Unsecured Creditors established by the office of the United States Trustee pursuant to § 1102 of the Bankruptcy Code.  There is no Committee appointed in the present case.

**CONFIRMATION DATE.**  The date of entry of the confirmation order.

**CONFIRMATION OR CONFIRMATION ORDER.**  The Order of the Bankruptcy Court confirming the Plan, after the Court has found that the Plan: (i) has been accepted by the requisite number of creditors and parties in interest eligible to vote; (ii) is feasible; (iii) is fair and equitable; (iv) does not unfairly discriminate; and (v) meets all of the other requirements of 11 USC §§ 1123, 1126, 1129.

**CONTESTED CLAIM.**  Any Claim as to which the Debtor or any other party in interest objected or commenced an adversary proceeding in accordance with the Bankruptcy Code, Bankruptcy Rules and the Plan, which objection has not been determined by a Final Order.

**THE COURT.**  United States Bankruptcy Court for the District of South Carolina.

**DEBTOR or DEBTOR IN POSSESSION**. Inlet Retail Associates, LLC.

**DISBURSEMENT ORDER**. Any Order providing for the distribution of proceeds from the sale of Debtor's assets.

**DISBURSING AGENT.** Person designated to make monetary disbursements to claimants under a plan. Unless otherwise stated in this Plan, the designated person will be Nathan P. Fishkin who will have the authority to delegate or assign his duties as Disbursing Agent to other persons or agencies as he deems appropriate.

**EFFECTIVE DATE.** Ten (10) business days after the date when both the Confirmation Order becomes a Final Order.

**EXECUTORY CONTRACTS.** All contracts or agreements not completed and to be performed or satisfied in the future.

**FINAL ORDER.** An order or judgment of the Bankruptcy Court which shall not have been reversed, stayed, modified or amended, and the time to appeal from or to seek review or rehearing of such order shall have expired; and includes final resolution of all claims issues, if any.

**GROUND LEASES.** The Debtor owns leasehold interests in real property in Murrells Inlet, South Carolina, on which the commercial property operated and generally known as the Inlet Square Mall is located, pursuant to two Ground Leases, which are more particularly discussed and described in the Disclosure Statement filed with this Plan. The Ground Leases are also referenced as the Sing Lease, the Jordan Lease and the Sign Lease.

**INTERESTS / EQUITY INTERESTS.** The rights of the holders and owners of issued and outstanding equity holdings in the Debtor.

**INTEREST / INTEREST RATE.** Interest rate, as applicable, based on simple interest and not compounded.

**INTEREST ON TAX CLAIMS.** The Interest Rate on the payment of a tax claim or on an administrative expense tax, or to enable an appropriate creditor to receive the present value of the allowed amount of a tax claim, which shall be determined under applicable nonbankruptcy law. For taxes paid under a confirmed plan, the Interest Rate first shall be determined in the calendar month in which the plan is confirmed (§ 511).

**IMPAIRED CLASS.** A class of claims given under this Plan less than the full amount of their filed and approved individual claim(s) where contract rights are modified or compromised by the Plan.

**JORDAN LEASE.** One of the Ground Leases is the Jordan Lease, which is described in the Disclosure Statement filed with this Plan.

**LIEN**. Any security interest, lien, tax lien, mortgage, encumbrance, common law or statutory charge or lien of any kind or nature whatsoever.

**MALL LEASE**. A reference to the Ground Lease and/or the Sign Lease, and their respective components, which is described in the Disclosure Statement filed with this Plan.

**PETITION DATE.** March 19, 2009 (and changed to March 20, 2009 by the Court, due to a technical issue).

**PLAN**.  This Plan of Reorganization of the Debtor, as it may be altered, amended, supplemented or modified from time to time.

**PREPETITION CLAIMS.**  Any claim arising or accruing prior to the Petition Date.

**PRIORITY.**  The priority in distribution afforded to certain claims pursuant to § 507(a) of the Code.

**PROOF OF CLAIM.**   A proof of claim or interest which is deemed filed under § 501 of the Code or interest that appears in the schedules, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.

**PROPERTY.**   The Property consists of all real property rights and interests, and the personalty owned and associated with such real property, which collectively comprise the commercial property operated and generally known as the Inlet Square Mall in Murrells Inlet, South Carolina.

**SALE ORDER**. Any Order entered by the Court approving a sale of any or all of the Debtor's assets to a purchaser.

**SECURED CLAIM.**   A claim completely or partially secured by real estate mortgages, security agreements, assignments, consignments, chattel mortgages, financing statements, liens or other legal encumbrance, which is entitled to secured status under Title 36 of the Code of Laws of South Carolina (UCC provisions) or applicable South Carolina law.

**SIGN LEASE.**   One of the Ground Leases is the Sign Lease, which is described in the Disclosure Statement filed with this Plan.

**SING LEASE.**   One of the Ground Leases is the Sing Lease, which is described in the Disclosure Statement filed with this Plan.

**SUBSTANTIAL CONSUMMATION.**  The date and time on which the transfer of all or substantially all of the property proposed by the Plan to be transferred has been achieved; the assumption by the Debtor under the Plan of the business or management of all or substantially all of the property dealt with by the Plan has been achieved; and the commencement of some payments under the Plan has begun.

**UNSECURED CLAIM.**  A claim other than secured claims, priority claims, administrative expense claims, or claims of interest holders.

**UNSECURED CREDITOR**. The holder of an Allowed Unsecured Claim which is not a Secured Claim and is not an Administrative Expense Claim or a Priority Claim.

**UNIMPAIRED CLASS.**  A class of claims whose rights are not affected by this Plan and which is entitled to and shall receive full satisfaction of its filed and approved claims as required by the Code. This Class is deemed to have accepted this Plan without voting.

## 2.  THE PLAN AND ITS BASICS.

### 2.1 Plan Overview

The Plan provides for the sale of the Property and the payment of the net sale proceeds (i.e., gross sale proceeds minus closing costs, commissions, prorations and other usual and customary charges to a seller of real estate) to creditors with allowed claims.  The Property, which includes the Ground Lease, the Sign Lease and the Debtor's interest in the improvements on the Property (and as much of the personal

assets of the Debtor as is necessary, but excluding computers, software and other firmware needed for the Debtor's records and bookkeeping), will be (and has been) marketed for sale by CB Richard Ellis, Inc. ("CBRE"), which was authorized by the Court to provide such services. The Property shall be sold "AS-IS," at such highest and best price as the market will bear. The final deadline for obtaining contracts for the sale of the Property shall be August 17, 2009 (such period of time through August 17, 2009 being the "Sale Period").

**2.2  Sale Process**

RAIT Partnership, L.P. ("RAIT") holds a lien on the Property securing a debt to RAIT in the approximate amount of $19 million. RAIT has agreed that it will consent to a cash sale of the Property by the Debtor at a sale price of $3,500,000.00 (the "Minimum Acceptable Price") or higher. In the event that the Debtor is unable to obtain a contract for a cash sale of the Property at the Minimum Acceptable Price or higher within the Sale Period, RAIT or its designee (RAIT and its designee, if any, are collectively referred to throughout this Plan as "RAIT") shall purchase the Property. The RAIT purchase offer is made a provision of this Plan and RAIT need not file or submit any other document restating it.

In conjunction with these Plan provisions, the Debtor may also file motions seeking authorization for the sale of the Property and for entry of a bidding procedures order, defining the procedure applicable to the sale. In the event that no offers to purchase the Property are received within the Sale Period other than RAIT's offer, the Debtor may elect not to file a separate motion for authorization of the sale, and confirmation of this Plan by the Court shall serve as authorization for the sale of the Property to RAIT upon its credit bid, as provided below.

RAIT's offer to purchase the Property shall be deemed to be in the amount of the Minimum Acceptable Price. In the event that RAIT is the purchaser of the Property, its purchase shall be made by credit bid (the "Credit Bid") under Section 363(k) of the Code. RAIT's purchase of the Property shall be free and clear of all liens, claims, encumbrances and interests under Section 363(f) of the Code, as provided in section 2.4 below. In its sole discretion, RAIT may elect to accept the conveyance of the Property subject to its existing liens and the balance of indebtedness secured by those liens (but free and clear of all other liens, claims, encumbrances and interests), such that its mortgage indebtedness will remain intact post-consummation of a sale to it. However, even if RAIT elects during the Sale Period to purchase the Property by accepting the Property subject to its existing liens, RAIT's Credit Bid offer, for purposes of competing offers/bids for the purchase of the Property, shall be deemed to be in the amount of the Minimum Acceptable Price. A sale to any purchaser other than RAIT shall be for cash only.

Notwithstanding anything to the contrary contained herein, and notwithstanding RAIT's Credit Bid purchase offer, if a prospective good faith purchaser (other than RAIT) makes a firm offer to purchase the Property (such offeror being a "Bidder") upon terms higher (and better) than RAIT's Credit Bid, i.e., at the Minimum Acceptable Price or higher, then this Bidder shall become the primary purchaser (the "Successful Bidder") with RAIT remaining only as a backup Bidder (any Bidder approved for the purchase of the Property as a stand-by or backup purchaser in the event the Successful Bidder fails to close its purchase hereinafter being a "Backup Bidder"). Bidders shall have conducted their due diligence investigation of the Property **prior** to making offers to purchase the Property, and must close on the sale with five (5) business days after an Order of the Court approving the sale is entered.

If two or more good faith purchasers or Bidders make offers to purchase the Property upon terms higher (and better) than RAIT's Credit Bid, i.e., at the Minimum Acceptable Price or higher, then an auction will be conducted to determine which of the Bidders shall be the Successful Bidder for the purchase of the Property. Subject to the Court's schedule, the auction to determine the Successful Bidder shall be conducted on the earliest possible date following the end of the Sale Period, in a hearing before the Court; provided, however, that the Debtor and RAIT may jointly determine that a date other than the first

available date for the auction and hearing is better suited for the sale and seek to have the auction and sale scheduled on that other date.  The Bidder with the second best purchase offer shall become the Backup Bidder, and RAIT shall remain as an additional Backup Bidder.

Any acceptable and qualifying purchase contract(s) for the sale of the Property must be approved by the Court, in accordance with Sections 363(b) and (f) of the Code, which allow for sales free and clear of liens, claims, encumbrances and interests. If a contract for the purchase of the Property is received during the Sale Period from a Bidder other than RAIT at the Minimum Sale Price or higher, then the Debtor, with the advice and consent of RAIT, and the advice of CBRE, will determine if the contract is an acceptable contract.  If the contract is acceptable, the Debtor will file a motion seeking authorization for the sale of the Property under the contract.  If a bidding procedures order has not already been entered by that time, the Debtor may also file a motion to establish bidding procedures and, if applicable, bid protections.  The proposed sale will be noticed to creditors and parties in interest, and the proposed sale will be subject to higher and better offers.   Any motion to sell (or auction) the property will ask the Court to determine the purchaser to be a good faith purchaser under Section 363(m) of the Code.  The sale of the Property, once authorized by the Court, is incorporated into this Plan.

In the event of an auction among Bidders, the Debtor will obtain an order of the Court confirming the Successful Bidder at the auction as the successful purchaser of the Property.  In the event no offer is received at the Minimum Acceptable Price within the Sale Period, the Debtor will obtain an order of the Court confirming the sale of the Property to RAIT pursuant to RAIT's Credit Bid.  If a Bidder other than RAIT is the Successful Bidder and the proposed sale of the Property to the Successful Bidder fails to close within five business days after entry of the Order authorizing the sale (which time may be extended upon the consent of the Debtor and RAIT), then the Debtor will convey the Property (i) to the Backup Bidder, if any, within seven business days thereafter, or (ii) to RAIT, if there be no Backup Bidder other than RAIT or if the Backup Bidder fails to close the purchase of the Property within the seven day period. If RAIT is the successful purchaser of the Property, then the fees-commissions due CBRE will be limited to the break-up fee described in the Listing Agreement previously approved by the Court.

Whether the sale of the Property occurs by motion for authorization upon a contract of sale or by auction, the Debtor reserves the right to request approval of Back-Up Bids for the purchase of the Property, which Back-Up Bids would close in the event that the primary approved sale of the Property does not close.  In such event, the Debtor will be authorized to close the sale of the Property to the next-in-line Back-Up Bidder without further authorization from the Court.

## 2.3  The Carve-Out

Upon any sale event (with a third-party purchase contract, with RAIT or via auction), assuming the sales price is below the $19,000,000 lien to RAIT, there would be no dividends payable to other creditors. However, RAIT has agreed to allow a "carve-out" of the sales price (the "Carve-Out") to be earmarked for the allowed claims of general unsecured creditors.. The Carve-Out will be fixed at $120,000.00 for a sale at a price of up to $7,000,000.00; it will increase to the fixed amount of $200,000.00 for a sale at a price between $7,000,001.00 and $10,000,000.00; and it will be fixed at $300,000.00 for a sale at a price over $10,000,001.00.  The Carve-Out will be due and payable only upon the closing of a sale, based upon the price of that closed sale.  If the Property is sold to RAIT or its designee pursuant to its Credit Bid under Section 363(k), the Carve-Out shall be fixed in the amount of $120,000.00, and the purchaser (RAIT or its designee) will be required to pay cash to the estate in the amount of $120,000.00 upon that sale.  The Carve-Out will be set aside into a separate non-interest-bearing escrow account and will not be used for the general or administrative claims of this case.

RAIT has consented to allow use of cash collateral for the payment of administrative expenses in this case, as approved in the cash collateral budget, for approved professional fees and expenses, and for

payment of filing fees to the Court and quarterly fees due to the United States Trustee. The income from the Property is expected to be sufficient to fund these administrative expenses; however, in the event that the income from the Property is not sufficient to cover these administrative expenses, RAIT has agreed that the Carve-Out will be increased by an amount sufficient to cover the amount of the administrative expenses in excess of the Property income, except upon a sale of the Property at a price in excess of $10,000,000.00.

**2.4  Sale of the Property Free and Clear**

The sale of the Property under the provisions of this Plan shall be a sale free and clear of all liens, claims, encumbrances and other interests pursuant to Section 363(f) of the Code, with the limited exception of a sale to RAIT (or its designee) by RAIT's Credit Bid in which RAIT determines to accept the Property subject to its existing liens. If RAIT is the Successful Bidder as a result of its Credit Bid and it elects to accept the Property subject to its existing liens, RAIT (or its designee) shall receive the Property subject to the existing RAIT lien(s) but free and clear of all other liens, claims, encumbrances and interests.

In the absence of timely filed objections to the sale of the Property, the sale of the Property under the provisions of this Plan shall be deemed to be a sale made with the consent of all entities possessing an interest in the Property pursuant to Section 363(f)(2) of the Code. In the event of an objection to the sale of the Property by an entity asserting a lien on or interest in the Property, the sale of the Property under the provisions of this Plan will be made pursuant to Sections 363(f)(3) and/or (4). The objecting entity shall have the burden of proving the validity, priority and extent of its asserted interest in the Property pursuant to Section 363(p)(2).

The sale of the Property under the provisions of this Plan also shall be deemed authorized upon confirmation of the Plan pursuant to Section 363(b)(1) of the Code, as a sale other than in the ordinary course of business.

**2.5  Settlement of Pending Litigation and Release of All Parties to Such Litigation**

All contested litigation with mechanics lien holders will cease against all parties to such litigation with general and mutual releases, with the holders' claims being established in this Court and moved from secured status (due to the recognized insufficiency of collateral value to support such claims over and above the RAIT lien) to the class of general unsecured creditors. Confirmation of this Plan shall be binding in the settlement and release of all parties to such litigation.

**2.6  Distributions to Creditors**

The sale proceeds due to RAIT for its compromised secured claim (i.e., the sale proceeds less normal closing costs, and less the Carve-Out) will be paid to RAIT or its designee at the closing of the sale of the Property. The Debtor anticipates distribution of funds from the Carve-Out as soon as the claims review process becomes final. If additional funds are made available to the Debtor (through successful prosecution of collection litigation, for example, net of applicable fees and costs), they will be distributed to the class of general unsecured creditors as soon as possible. For that reason, the Debtor's legal status will remain active for the foreseeable future. The designated Disbursing Agent will make the appropriate payments to the classes of creditors in accordance with their priorities.

**2.7  Post-Confirmation Matters**

The Debtor's responsibilities after consummation of the Sale will include: the final administrative activities involving a Chapter 11 case, which include but are not limited to claims review and objections, preference

payment (including avoidance actions) investigations and/or collections, and final disbursements to parties in interest.

Unless otherwise stated in this Plan, after confirmation, the Debtor will not be required to obtain Court approval for any of its activities including settlements of claims or otherwise.

Any inconsistencies between the Plan and other Court Orders involving the Debtor's interests in properties, assets, or the payment of debts will be resolved in favor of the Plan, which shall govern such rights, interests and obligations.

(Continued on next page)

## 3. CLASSES OF CREDITORS AND THEIR TREATMENT UNDER THE PLAN.

The Debtor has created several classes of creditors as described in the following CLASS CHART.

| CLASS CHART ||
|---|---|
| **CLASS DESCRIPTION:** | **_TREATMENT:_** |
| **Class 1.** **Administrative expense claims.** This Class includes Debtor's attorneys' fees (primary and/or special counsel if applicable), accounting fees, applicable consultant fees, US Trustee fees (pending closure of this case), Secured Lender's legal fees, and any other allowed claims which may be approved by the Court and which are payable from the estate. The claims in this Class are for services provided during the pendency of this case, as well as for assisting the Debtor in complying with this Plan and for later ordinary-course services post-confirmation and, potentially, post-closure of this case. Estimated fees for the Debtor's legal services are $50,000. Estimated Secured Lender's legal fees are $45,000. Estimated US Trustee charges are $18,000. | _Unimpaired. Each holder of a Class 1 claim shall be paid the allowed amount thereof in full on the Effective Date of the plan, or in the ordinary course of business as such claim matures, or upon such other terms as may be agreed upon by a holder of such claim and the Debtor. The payment of quarterly fees to the Office of the US Trustee will continue after confirmation and until the case is closed by the Court._ |
| **Class 2.** **Unsecured priority wage/vacation claims pursuant to §507(a)(4) of the Code.** This Class includes prepetition claims for unpaid wages or unpaid, accrued vacations. There are no claimants in this Class. | _Unimpaired. The Debtor is informed and believes there are no claims in this Class._ |
| **Class 3.** **Unsecured priority prepetition federal tax claims of governmental units pursuant to §507(a)(8) of the Code (IRS).** This class includes income and/or payroll tax liabilities due the Internal Revenue Service. The amount of taxes due in this Class is c. $0. | _Unimpaired. The Debtor is informed and believes there are no claims in this Class._ |

| | |
|---|---|
| **Class 4.**<br>**Unsecured priority state tax claims of governmental units pursuant to §507(a)(8) of the Code (SC DOR).** This Class includes income and/or payroll tax liabilities and/or applicable sales tax liabilities due the South Carolina Department of Revenue. The amount of taxes due in this Class is $0. | *Unimpaired. The Debtor is informed and believes there are no claims in this Class.* |
| **Class 5.**<br>**Unsecured priority state tax claims of governmental units pursuant to §507(a)(8) of the Code (SC ESC).** This Class includes personal tax liabilities due the South Carolina Employment Security Commission. The amount of taxes due in this Class is $0. | *Unimpaired. The Debtor is informed and believes there are no claims in this Class.* |
| **Class 6.**<br>**Unsecured priority property tax claims of governmental units to Horry County, SC.** This Class includes applicable ad valorem taxes. The amount of the priority claim due is $0. | *Unimpaired. The Debtor is informed and believes there are no claims in this Class.* |
| **Class 7.**<br>**RAIT Partnership, L.P.** This Class includes the lien of RAIT Partnership, L.P. The approximate claim balance is approximately $19,000,000. | *Impaired. This claim will receive funds from the sale of the Debtor's assets. RAIT will not participate in the class of general unsecured creditors, even if the assets sell for less than RAIT's total claim. RAIT also will retain its right to credit bid pursuant to Section 363(k) of the Code in any sale of the Property, as provided in Section 2 of this Plan.* |
| **Class 8.**<br>**Ground Lease.** This Class includes the Ground Lease with West C Holdings, LLC and the underlying Ground Lessors/Fee Owners, namely : West C Street Holdings, LLC, Charlie Sing, Marian J. Thomson, Connie J. Koloditch, Dorothy Mason Jordan, Steven T. Jordan, Dorothy Mason Jordan, Trustee, and Steven T. Jordan, Trustee. | *Unimpaired. The Ground Lease has been or will be assumed by the Debtor and, as applicable, assigned to the purchaser of the Property without recourse to the Debtor.* |

Document      Page 11 of 19

| | |
|---|---|
| **Class 9.**<br>**Sign Lease.**  This Class includes the Sign Lease with West C Holdings, LLC and the underlying Ground Lessors/Fee Owners, namely: West C Street Holdings, LLC, Charlie Sing, Marian J. Thomson, Connie J. Koloditch, Dorothy Mason Jordan, Steven T. Jordan, Dorothy Mason Jordan, Trustee, and Steven T. Jordan, Trustee. | *Unimpaired. The Sign Lease has been or will be assumed by the Debtor and, as applicable, assigned to the purchaser of the Property without recourse to the Debtor.* |
| **Class 10.**<br>**Mechanics Lien Claims.**  This Class includes various claimants who filed mechanics lien lawsuits prepetition against the Debtor, et al. Included in this Class are the claims of Precision Walls, Inc.; Cupkovic Architecture, LLC; Baker Roofing Company, Inc.; M.B. Kahn Construction Co., Inc.; Carolina Cooling and Plumbing, Inc.; and Vratsinas Construction Corporation, d/b/a VCC. The total of the various liens and lease included in this Class and their approximate claim amounts are included on the attached Plan Exhibit 1. | *Impaired. These claims are treated within Class 13.* |
| **Class 11.**<br>**Negligence Litigation Claims.**  This Class includes the claims of Linda Dreyfus and Ron Dreyfus for premises liability; and of Ann M. Archer, for negligence. These claimants were plaintiffs in prepetition lawsuits, and their claims are disputed. | *Impaired. The automatic stay will be modified to allow the lawsuits to proceed forward but recovery to the plaintiffs, if any, will be strictly limited to the proceeds of available insurance coverage only, and no additional claims will be allowed in this case for this Class.* |
| **Class 12.**<br>**Mall Tenants and Contract Vendors.**  This Class includes the remaining Tenants at the Mall, as well as vendors with a continuing contractual relationship with the Debtor. The parties included in this Class are set forth on the attached Plan Exhibit 2. | *Unimpaired.  The Debtor is informed and believes there are no claims against the Debtor in this Class, and the leases and contracts are assumed.* |

| **Class 13.**<br>**General Unsecured Claims.** Participants in this Class include all claimants with unsecured claims not treated specifically within other above Classes. Total claims are c. $4,000,000. See attached Plan Exhibit 3. | *Impaired. Claimants in this Class will include those with unliquidated claims. This Class will be paid prorata out of the <u>Carve Out fund</u>, which equates to <u>approximately 2% to 3%</u> of their allowed claims under the Plan on the Effective Date, without interest. Payments will be made as a lump sum only.* |
|---|---|
| **Class 14.**<br>**Equity Security Holders of the Debtor.** Participants in this Class include all claimants with preferred and/or common stock interests in the Debtor. | *Impaired. Claimants in this Class will not receive any distributions under the Plan.* |

### 4. FEASIBILITY OF PROPOSED PLAN, AND STATUS OF THE DEBTOR AFTER CONFIRMATION.

It is provided in §1129(a)(11) that in order for a Plan of Reorganization to be confirmed, it must be demonstrated that it is not likely to be followed by a liquidation or the need for further reorganization of the Debtor or any successor of the Debtor under the Plan, unless the liquidation or reorganization is proposed in the Plan of Reorganization itself.

This Plan finalizes the complete liquidation of the assets of the Debtor (except as specifically excluded herein). The Plan offers the best and most reasonable method of payment to the classes of creditors, as the Debtor cannot feasibly continue operations due to lack of funding. It further eliminates continuing and protracted litigation involving the Mall.

### 5. PROOFS OF CLAIM IN THE ESTATE.

The Debtor retains the right to file objections to Proofs of Claim or other scheduled claims up to 90 days after entry of the Confirmation Order**.** The Debtor may accept claims listed in its Schedules if not contingent, unliquidated or disputed. The Debtor otherwise shall object to any claims for which no Proof of Claim was filed. Claims will be allowed as filed or as scheduled unless otherwise ordered by the Court. However, any claim scheduled as secured but not specifically treated in this Plan is in fact not secured, and no further action will be required on such claim. The Debtor anticipates objecting to claims to be identified.

### 6. EXECUTORY CONTRACTS, UNEXPIRED LEASES AND RETIREMENT 401K PLAN.

Certain executory contracts and leases have been assumed as set forth above in the chart of classes. Unless accepted or otherwise accorded specific treatment in the Plan under the classes of creditors or by separate motion(s), upon the date of confirmation of this Plan, all existing executory contracts, agreements, and leases except those addressed by this Plan are rejected.

### 7. GENERAL LITIGATION.

In addition to the prepetition lawsuits filed by the mechanic's lien claimants (whose claims are resolved in this Plan), there are two potential lawsuits which the Debtor will address as part of this case. The first deals with a rent collection matter with a former tenant, Pita Rolz, which was in state court litigation pre-petition. This matter may be contested, and accordingly may be removed to the Court for adjudication or remanded back to state court for a final determination. If for any reason Pita Rolz does obtain an award

in its favor which exceeds the Debtor's claim against it, Pita Rolz's claim is limited to such recovery as may be allowed under the Class of General Unsecured Creditors.

The other matter involves the lease of Regal Cinemas, which was in discussions with the Debtor about continuing to operate in the Mall. The issues involved may require litigation with an adversary proceeding in this Court.

For both of the above tenant and rent matters, attorney Robert Jordan of Nelson Mullins Riley & Scarborough, LLP, has been retained as special litigation counsel to represent the Debtor's interests. The Debtor will rely on his recommendations and advice with regard to the handling of the matters.

The Debtor will review all claims and file an objection to claims as appropriate. The Debtor is aware of claims to be adjusted as stated above, and reserves its right to do so as it deems appropriate.

The Debtor will review prepetition activities for potential preferential and avoidance actions, and is authorized to file adversary proceedings for any payments qualifying in that category. At this time, the Debtor does not recognize any such payments.

**8. JURISDICTION.**

**Retention of Jurisdiction**. The Court shall retain jurisdiction over the reorganized Debtor, its property, and all other parties appearing in the reorganization proceeding as provided by this Plan or by Order of the Court. The Court may authorize the Debtor to examine, copy and produce the Debtor's books, records and papers for the purposes of (i) determining all claims that have been asserted against the Debtor, or the Debtor's estate; and (ii) carrying out and giving effect to any and all provisions of the Plan and the Order Confirming Plan; and the Court shall retain jurisdiction as provided in the Bankruptcy Code until entry of the final decree discharging the Debtor in the reorganization proceeding. In addition, the Court retains jurisdiction to consider any modifications of the Plan under § 1127 of the Code; to hear and determine any and all objections to the allowance of claims and/or interests; to determine any and all applications for compensation and/or reimbursement of expenses for periods prior to (or, as needed) after the Confirmation Date; to determine any and all controversies, suits and disputes arising under or in connection with the Plan, its interpretation or enforcement, and such other matters as may be provided for in the final order confirming the Plan; to effectuate all payments and distributions under, and performance of the provisions of the Plan; and to determine any applications, adversary proceedings and litigated matters pending on the Confirmation Date.

**Prosecution and Defense of Claims**. The Debtor, through the Disbursing Agent, shall retain full power after the Effective Date to prosecute and defend any causes of action or proceedings existing on the Effective Date on behalf of the Debtor, or resulting from the administration of the estate of the Debtor or resulting from any other claim by or against the Debtor or its assets, or arising prior to or existing before Substantial Consummation. The Debtor may use the services of its attorneys and accountants in the prosecution or defense of such claims, and shall have full power, subject to the approval of the Court, to employ, retain, compensate and replace counsel including special counsel to represent it in the prosecution or defense of any action, and to discontinue, compromise, or settle any action or proceeding, or adjust any claim. The net proceeds received from any such litigation by the Debtor shall be deposited with the Debtor's estate for payment of the claims of the Debtor's estate.

**Amendments to Plan.** The Debtor may propose amendments or modifications of this Plan prior to its confirmation without leave of the Court. Any amendments or modifications made prior to the Confirmation Date shall be made with notice of such amendments and modifications to RAIT Partnership, L.P. and to any adversely affected Creditor and are hereby ratified and approved. Any amendments made pursuant to the Confirmation Order shall be disclosed on the record at the Confirmation Hearing.

### 9. DISCHARGE OF THE DEBTOR AND INJUNCTIONS.

The entry of an Order Confirming Plan acts as a discharge of any and all liabilities of the Debtor that are dischargeable under § 1141 of the Bankruptcy Code.

Unless otherwise provided in the Plan or the Confirmation Order all injunctions and stays which apply in the Case pursuant to §105 and §362 of the Bankruptcy Code or otherwise, in effect on the Confirmation Date, remain in full force and effect until Substantial Consummation.  Except as may be explicitly set forth in the Plan or in the Confirmation Order, from and after entry of the Confirmation Order, all persons are permanently enjoined from, and restrained against, commencing or continuing in court, any suit, any action, or other proceeding or otherwise asserting any Claim, Liens, or Interests, seeking to hold (a) the Debtor, (b) the property of the Debtor, or (c) any property or assets sold under this Plan liable for any Claim, Lien or Interest, or liability that has been discharged or released under the Plan.  The discharge granted pursuant to the Plan acts as an injunction against any person commencing or continuing any action, employment of process, or act to collect, offset or recover any Claim, Lien or Interest, or cause of action against any of the foregoing parties which has been discharged under the Plan to the fullest extent authorized by, or provided in, the Bankruptcy Code.

### 10. DESTRUCTION OF RECORDS.

The Debtor will destroy books and records affecting this case after one (1) year following the Confirmation Date.  In the event a party in interest or an employee wishes to retrieve his/her/its records, they will be made available by the Disbursing Agent.  If no such requests are received, then the Disbursing Agent is authorized to destroy those records, and the Debtor shall not be liable for any further responsibility or liability to the party in interest or the employee, for retention of the records or for any causes of action as a result of the employment with Debtor or otherwise.

### 11. POST-CONFIRMATION ACTS.

The Disbursing Agent will maintain proper records of all funds and distributions, and will provide such records to any parties in interest upon advance written request in accordance with the terms of this Plan.

The Debtor and its agents shall perform all acts necessary to complete and consummate this Plan, including:

> Prosecution of all causes of action against third parties and challenge appropriate claims; defending any actions brought against the Debtor, as may be allowed by the Court; executing and filing all required legal documents; and performing any and all functions required by the Code**.** The Disbursing Agent is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, bills of sale, and other agreements or documents, and take such other actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 12. MISCELLANEOUS.

In the event any provision in the Plan is determined to be unenforceable following the Confirmation Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.  All actions of the Debtor and its agents during the course of this case to date are reaffirmed.

With regard to any Class of creditors impaired but not accepting the Plan by the required majority in number and two-thirds (2/3) in amount, the Debtor requests the Bankruptcy Court to find that the Plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interest that is impaired under the Plan, so that the Court may confirm ("cram-down") the Plan without such acceptances by the impaired classes.

The Disbursing Agent is exonerated from any claims of liability or responsibility for his or its actions, provided those actions are in substantial compliance with the term of this Plan as duly exercised in a fiduciary capacity.

Any sales shall be free of any transfer taxes or similar taxes as allowed by §1146 of the Code.

Any and all rejections of contracts, purchase orders, leases or other agreements with customers, as well as any modification or amendment of any and all purchase orders, agreements or leases performed since the Petition Date are hereby ratified and approved.

From and after confirmation of this Plan, the Debtor is exonerated and released from any and all claims. The Debtor will, from and after confirmation of the Plan, be indebted for and obligated to pay _only_ those obligations and liabilities as set forth herein.

Any defaults whatsoever, with respect to any indebtedness or obligation, or in the terms and conditions thereof, which are or may be based on events, facts or occurrences taking place on or before the date of confirmation, lapse of time, or both, would take place or be deemed to take place on or before such date and shall be deemed to have been waived and shall not thereafter be a basis for the exercise by any person for any right or remedy whatsoever, as a creditor or claimant against the Debtor.

RESPECTFULLY SUBMITTED on June 25, 2009, at Charleston, South Carolina.

      **/s/ Ivan N. Nossokoff**
      **Ivan N. Nossokoff, Esq.**
**District Court No. 2556**
**IVAN N. NOSSOKOFF, LLC**
**1470 Tobias Gadson Blvd, Suite 107**
**Charleston, SC 29407**
**843-571-5442**
**Email: inn@nosslaw.com**
**Attorney for Debtor**

# PLAN EXHIBIT 1

### Class 10-Mechanics Lien Claims

| *Plaintiff* | *Defendants* | *Case No.* | *Claim (Complaint)* | *Disputed* | ***ALLOWED CLAIM*** |
|---|---|---|---|---|---|
| **Baker Roofing Company, Inc.** | Inlet Retail Associates, LLC; Wells Fargo Bank, N.A.; RAIT CRE CDO 1, LLC; Precision Walls, Inc.; Vratsinas Construction Corporation d/b/a VCC; Cupkovic Architecture, LLC | 2008CP264703 | 199,243.00 | | 199,243.00 |
| **Carolina Cooling & Plumbing, Inc.** | Wells Fargo Bank, N.A. …; RAIT CRE CDO 1, LLC; Cupkovic Architecture, LLC; Vratsinas Construction Corporation d/b/a VCC; Precision Walls, Inc.; Baker Roofing Company; Inlet Retail Associates, LLC; Inlet Square Mall Out-parcel Association, Inc.; West C Street Holdings, LLC; Dorothy Mason Jordan, Individually and as Trustee of the Jim T. Jordan Trust…; Steven Thomas Jordan, Individually and as Trustee of the Jim T. Jordan Trust…; Charlie Sing | 2008CP263620 | 45,686.00 | | 45,686.00 |
| **Cupkovic Architecture LLC** | Inlet Retail Associates, LLC; Inlet Square Mall Outparcel Association, Inc.; West C Street Holdings, LLC; Dorothy Jordan, Individually and as Trustee of the Jim T. Jordan Trust…; Steven Thomas Jordan, Individually and as Trustee of the Jim T. Jordan Trust…; Charlie Sing; Wells Fargo Bank, N.A….; RAIT | 2008CP262948 | 71,689.48 | | 67,723.34 |

| | | | | | |
|---|---|---|---|---|---|
| | CRE CDO 1, LLC; Precision Walls, Inc.; Baker Roofing Company | | | | |
| **M.B. Kahn Construction Co., Inc.** | Inlet Retail Associates, LLC; Wells Fargo Bank, N.A.; RAIT CRE CDO 1, LLC; Precision Walls, Inc.; Vratsinas Construction Corporation d/b/a VCC; Cupkovic Architecture, LLC; RAIT Financial Trust | | 25,235.50 | | 25,235.50 |
| **Precision Walls Inc.** | Inlet Retail Associates, LLC; VCC Construction, Inc. | 2008CP261951 | 189,053.00 | | 189,053.00 |
| **Vratsinas Construction Company** | Inlet Retail Associates, LLC; Inlet Square Mall Outparcel Association, Inc.; West C Street Holdings, LLC; Dorothy Jordan, Individually and as Trustee of the Jim T. Jordan Trust…; Steven Thomas Jordan, Individually and as Trustee of the Jim T. Jordan Trust…; Charlie Sing; Wells Fargo Bank, N.A….; RAIT CRE CDO 1, LLC; Precision Walls, Inc.; Baker Roofing Company | 2008CP262769 | 2,675,704.43 | | 2,675,704.43 |
| | | | | | |
| **TOTAL:** | | | $3,206,611.41 | | $3,202,645.27 |

## PLAN EXHIBIT 2

**Class 12-Mall Tenants and Contract Vendors**

| *Tenant*: | *Assumed or Rejected:* |
|---|---|
| **Belks Store Jacksonville NC** | **Assumed** |
| **Bath and Body Works, Inc.** | **Assumed** |
| **Bon Worth Inc** | **Assumed** |
| **Books-A-Million, Inc.** | **Assumed** |
| **Claire's Boutiques, Inc.** | **Assumed** |
| **Collect This & Raceway LLC** | **Assumed** |
| **Corrado's Pizza Shoppes, Inc.** | **Assumed** |
| **David Gill Artwork** | **Rejected/Ended** |
| **Dollar Tree Stores Inc.** | **Assumed** |
| **First Vending** | **Assumed** |
| **Hallmark Specialty Retail Grp** | **Assumed** |
| **Jaydeep Inc./Jay's Hallmark** | |
| **JC Penney Company Inc.** | **Assumed** |
| **JLC Leasing Inc.** | **Assumed** |
| **K Mart Sears Holding Co.** | **Assumed** |
| **Ladies Choice Fitness Center** | **Assumed** |
| **MeagMel Wishing Wells** | **Assumed** |
| **Noble Jewelers** | **Assumed** |
| **Pepsi Cola Bottling** | **Assumed** |
| **Protocol LLC** | **Assumed** |
| **Rack RoomShoes** | **Terminated During Course of Case/Rejected** |
| **Regal Cinemas, Inc. dba Inlet Square Cinemas** | **Assumed** |
| **Regis Corp (Mastercuts)** | **Assumed** |
| **Smartlite Company** | **Assumed** |
| **Stein Mart, Inc.** | **Assumed** |
| **Super Nails** | **Assumed** |
| **The Cato Corp** | **Rejected/Terminated** |
| **Theisen Vending Co.** | **Assumed** |
| **Urban Retail Properties Inc.** | **Assumed** |

Case 09-02083-jw    Doc 45    Filed 06/25/09    Entered 06/25/09 16:14:31    Desc Main
Document      Page 19 of 19

## PLAN EXHIBIT 3

### Class 13 – General Unsecured Creditors

| Claimant | Scheduled Claim | Disputed | POTENTIAL ALLOWED CLAIM (Based on Proof of Claim)(Subject to Claims Review) |
|---|---|---|---|
| Charles E. Fancher, Jr. | 4,234.44 | | 4,234.44 |
| Charles E. Fancher, Jr. | 129,333.00 | | 129,333.00 |
| Cybergraph Advertising | 381.06 | | 459.13 |
| DDC Engineers Inc | 15,976.25 | | 15,976.25 |
| Estate Management Services Inc. | 1,117.66 | | 1,117.66 |
| General Landscape Maintenance | 18,750.00 | | 18,750.00 |
| Georgetown Communications | 145.04 | | 145.04 |
| Harvest Recovery Services | 4,041.53 | | 4,041.53 |
| Inlet Printing Co | 468.66 | | 468.66 |
| IPC International Corp | 78,627.53 | | 78,627.53 |
| Jeffcoat Pike Nappier LLC | 365.25 | | 365.25 |
| Jones Lang LaSalle | 185,612.85 | | 185,612.85 |
| Mall Media | 675.19 | | 675.19 |
| Nathan P Fishkin | 6,957.72 | | 6,957.72 |
| Nathan P Fishkin | 129,333.00 | | 129,333.00 |
| Next Media Radio Operations | 1,881.00 | | 1,881.00 |
| Service Management Systems | 98,950.00 | | 98,950.00 |
| SiteStuff Inc | 3,115.45 | | 3,115.45 |
| Sun Publishing/Sun News | 7,458.33 | | 7,901.46 |
| Thorson Baker & Associates | 30,814.75 | | 63,502.49 |
| Voss Cook & Thel LLP | 49,824.01 | | 49,824.01 |
| We Sweep | 2,950.00 | | 2,950.00 |
| | | | |
| SUB-TOTAL: | $771,012.72 | | $804,221.66 |
| | | | |
| CLASS 10 Claims: | | | 3,202,645.27 |
| | | | |
| TOTAL FOR CLASS: | | | $4,006,866.93 |