# U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number: 09-02083

_____

The relief set forth on the following pages, for a total of 5 pages including this page, is hereby **ORDERED**.

_____

FILED BY THE COURT ON

8/12/09

John E. Waites, Chief Judge
US Bankruptcy Court
District of South Carolina

ENTERED: _____

**ENTERED**

AUG 1 4 2009

**A.M.**

**FILED**
at____O'clock &____min____M

AUG 1 2 2009

United States Bankruptcy Court
Columbia, South Carolina (23)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| In re:                       | Case No. 09-02083-jw |
|------------------------------|----------------------|
| Inlet Retail Associates, LLC, | Chapter 11           |
| Debtor.                      |                      |

## ORDER ESTABLISHING BIDDING AND OTHER PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE ESTATE

This matter came before the Court upon the motion of Inlet Retail Associates, LLC ("IRA"), the debtor and debtor-in-possession in this case, made pursuant to 11 U.S.C. §§ 105(a) and 363(b) and (f), and Rule 6004 of the Federal Rules of Bankruptcy Procedure, filed on July 8, 2009 (the "Motion"), seeking entry of an Order establishing bidding and other procedures in connection with the sale of property of the bankruptcy estate. This motion is filed in conjunction with IRA's Plan of Reorganization by Debtor-in-Possession (the "Plan") filed on June 25, 2009, which provides for the sale of substantially all assets of the estate.

IRA owns certain leasehold interests in real property, improvements and associated personalty which comprise a shopping mall known and operated as the "Inlet Square Mall", which is located in Murrells Inlet, South Carolina (the "Property"). The Plan provides for the sale of the Property free and clear of all liens, claims, encumbrances, and other interests pursuant to 11 U.S.C. §§ 363(b)(1) and (f), except for Assumed Liabilities (as such term is defined in the form Asset Purchase Agreement (the "APA") attached to the motion and incorporated herein by reference) and any and all easements, covenants, conditions, restrictions and other matters of record relating to the real property included in the sale. The Property is subject to liens held by RAIT Partnership, L.P. ("RAIT"), securing indebtedness to RAIT in the approximate amount of $19 million. The Plan provides that RAIT or its designee (RAIT and its designee, collectively, "RAIT") will purchase the Property by credit bid under 11 U.S.C. § 363(k) for the price deemed for purposes of competitive bidding to be in the amount of $3,500,000.00 (the "Minimum Acceptable Price"). IRA has employed the services of CB Richard Ellis, Inc. ("CBRE") to market the Property, and the proposed sale to RAIT is subject to cash offers from other prospective purchasers at the Minimum Acceptable Price or higher within the allowed sale period, such that if a cash offer at the

2                                                          NPCOL1:1717569.1

Minimum Accpetable Price or higher is received for the Property within the prescribed time, IRA will be authorized to sell the Property to that offerer.  IRA filed the Motion in support of the sale under the Plan.

In the Motion, IRA seeks to establish a procedure by which offers from prospective buyers other than RAIT (such offers from other prospective buyers being referred to as "competing bids", and such other prospective buyers being referred to as "bidders") may be made for the Property. Accordingly, IRA seeks an Order establishing bidding procedures governing the sale process (this Order is referred to hereinbelow as the "Bidding Procedures Order").

It appears that the proposed bidding procedures in the Motion are commercially reasonable, will facilitate the sale process and are likely to maximize the value of the Property for the estate, and that the relief requested in the Motion is in the best interest of the estate.

Therefore, it is hereby ORDERED, ADJUDGED AND DECREED that the following bidding procedures are approved and established:

1. Any bid from any persons or entity other than RAIT to purchase the Property, in order to be a qualifying bid (a "Qualified Competing Bidder" and a "Qualified Competing Bid"), shall:  (A) be in the form of the APA executed by the bidder; (B) contain terms and conditions that are substantially similar to or otherwise more beneficial to the estate than the APA; (C) be accompanied by a written acknowledgement and agreement that the terms of the bid are substantially similar to or more beneficial to the estate than the APA, and that the bidder, should it be declared the winning bidder, will enter into an asset purchase agreement with IRA confirming the terms of such winning bid; (D) equal or exceed the Minimum Acceptable Price; (E) include satisfactory evidence of the financial ability of the bidder to consummate the purchase for cash; (F) include a deposit of ten percent (10%) of the competing bid amount in certified funds payable to CB Richard Ellis, Inc. as agent for IRA; and (G) be received by CBRE no later than the close of business on August 17, 2009. Upon receipt, CBRE shall promptly deliver copies of any competing bids to IRA and RAIT. No competing bid shall be considered by IRA or the Court unless it is a Qualified Competing Bid and no bidder shall be permitted to participate in the auction process unless it is a Qualified Competing Bidder. IRA and RAIT reserve the right to object to any bid being deemed a "Qualified Competing Bid." If there is a dispute as to a bidder, the same shall be permitted to participate in the Sale Hearing (defined in paragraph 2 below) and the Court will resolve the dispute.

2. In the event CBRE receives one or more Qualified Competing Bids, IRA shall promptly file a report of the Qualified Competing Bids and the Court shall conduct hearing (the "Sale Hearing") on the Qualified Competing Bids on August 24, 2009 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom located at 145 King Street, Room 225, Charleston, South Carolina. At that time, IRA will report to the Court on the status of the Qualified Competing Bids, and the Court shall conduct an auction for the sale of the Property. Only parties who submit Qualified Competing Bids in compliance with the provisions of paragraph 1 above shall be permitted to participate in the auction at the Sale Hearing.  The bidding at the Sale Hearing shall proceed as provided in paragraph 3 below.

3. If more than one Qualified Competing Bid is received, each Qualified Competing Bidder shall have the right to increase their bids at the Sale Hearing. However, any higher bid of Qualified Competing Bidders shall be subject to the acceptance of a still higher and better bid ("overbid") submitted during the Sale Hearing in compliance with this section; provided, however, that such overbid shall equal the sum of: (i) the higher of the Minimum Acceptable Price or the highest Qualified Competing Bid immediately preceding the overbid, plus (ii) an additional amount of at least One Hundred Thousand and 00/100 Dollars ($100,000.00) (a "Yet Higher Offer"). In the event of a Yet Higher Offer, the process set forth in the immediately proceeding sentence shall continue, with each Qualified Competing Bidder having the continuing right to submit an overbid, unless and until such time as Qualified Competing Bidders elect not to make further overbids. The highest or otherwise best offer at the Sale Hearing shall be deemed the winning bid (the "Winning Bid", made by the "Winning Bidder").

4. At the conclusion of the Sale Hearing, the Court will determine the Winning Bidder, and determine authorization for the sale of the Property. As set forth in paragraph 6 below, IRA may also seek authorization to make the sale to a "back-up" bidder in the event the Winning Bidder at the Sale Hearing does not consummate the purchase of the Property.

5. In the event that no Qualified Competing Bids are received, RAIT will be deemed the Winning Bidder and IRA will be authorized to convey the Property to RAIT pursuant to the Plan.

6. In the event that a Qualified Competing Bid is received, IRA will request that the Court approve a "back-up" bid (the "Back-up Bid", and the "Back-up Bidder"). As provided in the Plan, RAIT's credit bid under § 363(k) shall be deemed a Back-up Bid; in addition the second highest Qualified Competing Bid (if any) at the Sale Hearing shall be the Back-up Bid, and RAIT's credit bid shall be a final Back-up Bid. If the Winning Bidder is unable to close the sale within the time required for the closing by the asset purchase agreement, the Winning Bidder shall forfeit its deposit made pursuant to paragraph 1(F) above, and IRA shall close the sale of the Property to the next-in-line Back-Up Bidder without the necessity of obtaining another order from this Court. No Qualified Competing Bidder whose Bid is not deemed to be the successful bid at the conclusion of the Sale Hearing shall be required to act as a Back-Up Bidder; however, unless and until the unsuccessful Qualified Competing Bidder notifies IRA of its unwillingness to be a Back-Up Bidder, CBRE may hold the deposit until the deposit is due for return under paragraph 7 below.

7. The deposit made by any Qualified Competing Bidder, pursuant to paragraph 1(F) above, who is not either the Winning Bidder or the Back-Up Bidder shall be returned to such Qualified Competing Bidder within three (3) business days after the Sale Hearing. The deposit made by any Qualified Competing Bidder that is designated as a Back-Up Bidder shall be returned to such Qualified Competing Bidder within three (3) business days after the closing of the sale of the Property to the Winning Bidder.

8. Acceptance by IRA of a Qualified Competing Bid as a Winning Bid or a Back-Up Bid shall, in all respects, be subject to the entry of the sale order by the Court authorizing IRA to consummate the sale.

9. If a Qualified Competing Bid is accepted by IRA as the Winning Bid or Back-Up Bid, the Qualified Competing Bid shall remain open and irrevocable through closing of the sale of the Property.

10. Any dispute regarding any aspect of the foregoing bidding procedures shall be resolved by the Court.

11. The Bidding Procedures Order may be amended by the Court at any time prior to the conclusion of the Sale Hearing upon a finding that its terms are not in the best interest of the estate.

AND IT IS SO ORDERED.

NPCOL1:1717569.1